**No. 23-15605**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

KEKAI WATANABE,

*Plaintiff-Appellant,*

v.

ESTELA DERR, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Hawai'i
No. 22-00168 JAO-RT
Hon. Jill A. Otake

_____

**APPELLANT'S OPENING BRIEF**

_____

Samuel Weiss
Sophie Angelis
Rights Behind Bars
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
202-455-4399
sophie@rightsbehindbars.org

*Attorneys for Plaintiff-Appellant Kekai
Watanabe*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION .................................................................. 1

JURISDICTIONAL STATEMENT .................................................. 2

ISSUES PRESENTED ............................................................. 2

STATEMENT OF THE CASE .................................................... 3

SUMMARY OF THE ARGUMENT .................................................. 7

STANDARD OF REVIEW ......................................................... 8

ARGUMENT .......................................................................... 8

I.   The District Court Erred in Concluding that Watanabe Lacked a Cause of
Action Under Bivens. ......................................................... 8

a) Watanabe's claim falls within an established Bivens context. ..................... 9

b) The district court erred in finding a new context ......................... 13

I.   The District Court Erred in Concluding that Watanabe Could Not State a
Claim for Injunctive Relief. ................................................. 20

CONCLUSION .................................................................. 20

CERTIFICATE OF COMPLIANCE .......................................... 1

CERTIFICATE OF SERVICE .................................................. 1

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton*, 521 U.S. 203 (1997) ................................................................. 19

*Arellano v. Sedighi*, No. 15-CV-02059, 2020 WL 5877832 (S.D. Cal. Oct. 1, 2020) ............................................................................................................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 8

*Carlson v. Green*, 446 U.S. 14 (1980) ............................................................. *passim*

*Chambers v. C. Herrera*, No. 20-55004, 2023 WL 5211040 (9th Cir. Aug. 15, 2023) ...................................................................................................................... 16

*Egbert v. Boule*, 142 S. Ct. 1793 (2022) .................................................... 7, 9, 13, 14

*Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175 (9th Cir. 2002) .................... 17

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ............................................... 15

*Green v. Carlson*, 581 F.2d 669 (7th Cir. 1978) .................................................... 12

*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) ........................................................ 8

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) ...................................................... 14, 19

*Hicks v. Ferreyra*, 64 F.4th 156 (4th Cir. 2023) ............................................... 11, 12

*Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988) .................................. 17

*Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) ...................................................... 17

*McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991) ............................................... 17

*McRae v. Dikran*, 776 F. App'x 412 (9th Cir. 2019) ............................................. 15

*Palm v. L.A. Dep't of Water & Power*, 886 F.3d 1081 (9th Cir. 2018) ................... 8

*Snowden v. Henning*, 72 F.4th 237 (7th Cir. 2023) ............................... 8, 10, 11, 14

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) ................................................. 17

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ........................................................... *passim*

## Statutes

28 U.S.C. § 1291 ....................................................................................................... 2

28 U.S.C. § 1331.................................................................................................. 1

**Rules**

Fed. R. App. P. 4(a) ........................................................................................... 2

**Constitutional Provisions**

U.S. Const. amend. VIII ...................................................................................... 2

**INTRODUCTION**

Kekai Watanabe is a federal prisoner housed at FDC Honolulu. In July 2021, he was beaten up by a prisoner from a rival gang, leaving him with a fractured coccyx. Watanabe asked a prison employee, Nurse Nielsen, for medical treatment after the injury. Nielsen told him to "to stop being a cry baby" and refused to send him to a hospital. Prison staff ignored Watanabe's medical needs entirely, providing him no treatment, for months.

Watanabe sued under the Eighth Amendment, alleging that Nielsen and the FDC Honolulu chief physician were deliberately indifferent to his serious medical needs. In *Carlson v. Green*, the Supreme Court held that a prisoner who suffered from an asthma attack because of prison officials' deliberate indifference had a *Bivens* remedy. 446 U.S. 14 (1980). But the district court dismissed Watanabe's claim, concluding that his case presented a "new context" from *Carlson*, because Watanabe had a fractured coccyx instead of asthma, and because Watanabe did not die.

The district court was incorrect. Watanabe's case is not meaningfully different from *Carlson* for purposes of the *Bivens* analysis, and so falls into an established *Bivens* context. He may use the courts to vindicate his constitutional rights.

## JURISDICTIONAL STATEMENT

Watanabe appeals the district court's judgment dismissing his case on March 10, 2023. The district court had jurisdiction under 28 U.S.C. § 1331. Watanabe brought claims under the Eighth Amendment of the United States Constitution, U.S. Const. amend. VIII. Watanabe filed a timely notice of appeal on April 4, 2023. ER–118. *See* Fed. R. App. P. 4(a). This Court has jurisdiction over the appeal of the district court's final judgement under 28 U.S.C. § 1291.

## ISSUES PRESENTED

I.  Whether Watanabe's allegation that federal prison officials were deliberately indifferent to his medical care arises in the same context as *Carlson v. Green*.

II. Whether Watanabe could state a claim for injunctive relief related to his medical care.

2

## STATEMENT OF THE CASE

### I.    Factual History.

Kekai Watanabe is a pre-sentence federal prisoner at FDC Honolulu, where he is housed to Unit 5A. ER–80. Watanabe has a history of affiliation with the Uso gang, which BOP and FDC Honolulu staff know about. *Id*. Despite that fact, Watanabe was (and still is) held in Unit 5A, where people from rival gangs are housed all together, including, "in some cases, in the same cells." *Id*.; ER–82. People in the unit range from minimum through high security designations, and some have "pending orders for civil commitment due to psychiatric issues." ER–80.

Housing prisoners from rival gangs together creates an "obvious" danger to prisoners' safety, and FDC Honolulu staff are personally aware of that risk. ER–82. Predictably, on July 12, 2021, a fight erupted between members of rival gangs in Unit 5A. ER–81. Watanabe was sitting at a table in the unit when "four members of the Mexican gang the Paisa's" started to attack him. *Id*. The fight escalated, and eventually over 35 "combatants" were involved. *Id*. "During the fight, several of the Paisa's returned to their cells for weapons and rejoined the riot." *Id*. One of the weapons they brought back was "a combination lock that was placed in a sock"—a weapon colloquially known as a "lock in a sock," that is so dangerous that "many inmates have been killed when beaten with [it]." *Id*.

3

The Paisa's used the "lock in a sock" to beat Watanabe and other "[l]ocal Hawaiian inmates." *Id*. When the fight finally ended, Watanabe and the other prisoners were sent to solitary confinement. *Id*. Watanabe was suffering from "known or visible" injuries. *Id*. Staff documented these injuries and told him that he would be placed on "Sick Call." *Id*.

But Watanabe was not sent to the hospital. *Id*. And later that evening, "suffering from severe pain and headaches," he asked to go to the medical unit. *Id*. Eventually, Watanabe met with Nurse Nielson. But Nielson did not offer any treatment, and instead told Watanabe "to stop being a cry baby"; when Watanabe asked to go to the hospital, Nielsen said: "[Y]ou are not going to the hospital." *Id*. (internal quotations omitted).

While he was in solitary confinement, Watanabe "submitted multiple sick call and 'COP OUT' requests for medical attention." *Id*. He received only "over the counter pain medication," and "no actual treatment." *Id*. Some months later, he was "eventually diagnosed … with a fractured coccyx with bone chips in soft tissue around his tailbone causing severe pain." *Id*. At that point, Watanabe was scheduled to see a specialist; over a year after his injury, Watanabe had still not seen one. ER–73; ER–83; ER–113.

Watanabe was released from solitary confinement after two months—and moved straight back to Unit 5A, along with "all of the combatants of the July 12,

2021 riot." ER–81. Since his injury, Watanabe has sent Dr. Kwon, the chief physician, "no less than 11 emails and COP OUTS seeking medical attention." ER–82. Dr. Kwon has ignored all of them. *Id.*

## II. Procedural History.

Watanabe, operating *pro se*, filed this action in federal court on April 14, 2022, alleging two violations of his Eighth Amendment rights. He claimed that Warden Derr and K. Robl failed to protect him from rival gang members, ER–109, and sought damages as well as an injunction against those defendants to stop housing prisoners from rival gangs together. ER–117. He also claimed that Nurse Nielson and Dr. Kwon provided him with constitutionally inadequate medical treatment. ER–115.

On May 19, 2022, the district court screened the complaint under § 1915. The court denied Watanabe's injunctive claims as unactionable under *Bivens*. ER–105. It also dismissed without prejudice Watanabe's failure to protect claim, reasoning that Watanabe had failed to allege either a credible threat of violence or that Defendants were aware of a risk. ER–98–101. The court also dismissed without prejudice Watanabe's claim against Dr. Kwon, because Watanabe had failed to allege personal knowledge and acknowledged that he eventually received some care—i.e., the pain medication, diagnosis, and approval to see a specialist. ER–103. The court allowed the claim against Nielsen to proceed. ER–22.

5

On July 7, 2022, Watanabe filed an amended complaint, which included additional allegations about the risk of gang violence and Defendants Derr and Robl's knowledge of that risk. ER–82. To support his medical care claim, Watanabe also added allegations that Dr. Kwon had personally rejected or ignored his requests for treatment. *Id*. Watanabe again requested damages but did not renew his claim for injunctive relief. ER–85.

The district court screened Watanabe's amended complaint on August 2, 2022. Again, the court dismissed his failure to protect claim and his medical care claim against Dr. Kwon, citing the same reasons as in the first screening order. ER–64–67; ER–69–70. The court allowed the medical care claim to proceed against Nielsen only. ER–69.

On January 13, 2023, Nielsen moved to dismiss, arguing that Watanabe's claim was not cognizable under *Bivens*, and also that he had qualified immunity. ER–29. As to *Bivens*, Nielsen argued that Watanabe's claim presented a new context from *Carlson*, because his claim was not about "a specific incident of gross or fatal incompetence during a medical emergency," but rather a failure to "send Plaintiff off-site for evaluation." ER–38.

The district court granted Nielsen's motion to dismiss on March 10, 2022, reasoning that Watanabe's claim presented a new *Bivens* context and declining to extend the *Bivens* remedy to include it. The court determined that, "although

6

Watanabe's claim has some parallels to the claims in *Carlson*, the specifics of Watanabe's allegations are dissimilar in both their 'nature and severity' from the facts in *Carlson*." ER–14. Specifically, the court held Watanabe's claim presented a new *Bivens* context because, unlike in *Carlson*, he sought treatment at an outside hospital, not inside the facility, for an injury that, while "certainly regrettable," was not a "medical emergency." ER–16. Watanabe timely appealed. ER–118.

## SUMMARY OF THE ARGUMENT

I.   Watanabe's claim arises in a familiar, well-established *Bivens* context: *Carlson v. Green*, 446 U.S. at 14. In *Carlson*, the Supreme Court recognized a cause of action under the Eighth Amendment for claims that a prison official was deliberately indifferent to a prisoner's serious medical needs. Nothing in *Ziglar*, *Hernandez*, or *Egbert* has undermined that holding, and in fact those recent cases have expressly declined to "dispense with *Bivens*" remedies in contexts where the Court has already recognized them. *See Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). Here, Watanabe alleges that FDC Honolulu officials were aware that he had a fractured coccyx and failed to provide any treatment. For the simple reason that Watanabe's claim is the same as the one in *Carlson*, he has a *Bivens* remedy. Any differences between Watanabe's case and *Carlson* are not "meaningful," when evaluated according to factors that the Supreme Court

listed in *Ziglar*, and in light of the separation-of-powers concerns that animate the Court's rollback of the *Bivens* remedy. *Ziglar v. Abbasi*, 582 U.S. 120, 139–140 (2017); *Snowden v. Henning*, 72 F.4th 237, 244 (7th Cir. 2023). The district court erred in concluding otherwise, and its other reasons for distinguishing Watanabe's case from *Carlson* are unpersuasive.

II.   Watanabe stated a claim for injunctive relief related to his medical care, and the district court erred in dismissing that claim with prejudice.

## STANDARD OF REVIEW

An order granting a motion to dismiss for failure to state a claim is reviewed *de novo*. *See Palm v. L.A. Dep't of Water & Power*, 886 F.3d 1081, 1085 (9th Cir. 2018). In reviewing a motion to dismiss, this Court must take all factual allegations in the complaint as true, and deny the motion to dismiss if the complaint contains sufficient factual allegations to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Pro se* complaints like Watanabe's are construed liberally at the motion to dismiss stage and are "held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curium)).

## ARGUMENT

**I.   The District Court Erred in Concluding that Watanabe Lacked a Cause of Action Under *Bivens*.**

*a) Watanabe's claim falls within an established* Bivens *context.*

In recent years, the Supreme Court has emphasized that the extension of *Bivens* remedies to "new" contexts is "a disfavored judicial activity." *Ziglar*, 582 U.S. at 135 (quotation marks omitted). But at the same time, the Court has declined to "dispense with *Bivens* altogether." *Egbert*, 142 S. Ct. at 1803. The result is that a *Bivens* remedy remains viable mostly for suits that fit into one of the several *Bivens* contexts that the Court has recognized previously. *See id.* at 1802–03; *see also Ziglar*, 582 U.S. at 134–35.[1]

Among those contexts are cases about a prisoner's Eighth Amendment right to medical care. The apposite case is *Carlson v. Green*, where the Court recognized that a prisoner had a claim for damages against federal prison officials who were deliberately indifferent to his medical needs. 446 U.S. at 16 n.1, 24. Referring to *Carlson*, the Court has continued to reaffirm that a *Bivens* remedy is available "for a federal prisoner's inadequate-care claim under the Eighth Amendment," even while cautioning against further extensions of *Bivens*. *Egbert*, 142 S. Ct. at 1802–03 (citing *Carlson*, 446 U.S. 14); *see also Ziglar*, 582 U.S. at 131 (same). Watanabe's claim, like the claim in *Carlson*, is about Eighth Amendment deliberate indifference

---

[1] *Bivens* remedies may be available in "new contexts" too. But as this appeal does not involve a new context, the circumstances that warrant an extension of *Bivens* are not discussed here.

to medical needs. *See Carlson*, 446 U.S. at 24. For this simple reason, his case falls into an established *Bivens* context.

The Supreme Court's decision in *Ziglar* supports this conclusion. Given that no two cases are identical, *Ziglar* provided lower courts with guidance on how to determine whether a case falls into an existing *Bivens* context, or else "differ[s] in a meaningful way." 582 U.S. at 139–40. The Court explained:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. These factors guide courts in determining whether a case would require extending *Bivens* or if a remedy is already available.

Decisions from other circuits illuminate the proper method for applying the *Ziglar* factors, and counsel against parsing the factual differences between new cases and established *Bivens* contexts too finely. For example, the Seventh Circuit recently rejected a federal officer's argument that a *Bivens* action against him presented a "new context" based on various factual distinctions between the case and *Bivens* itself. *Snowden*, 72 F.4th at 240. There, a plaintiff alleged that a federal drug enforcement officer used excessive force against him while making an arrest in the hotel lobby. *Id*. The court charted "the Court's evolving *Bivens* guidance" and

10

interpreted the line of cases "to suggest that a difference is 'meaningful' if it might alter the policy balance that initially justified the causes of action recognized in *Bivens, Davis*, and *Carlson*," with "special solicitude to the separation-of-powers concerns identified by the Court." *Id*. at 244. Applying that principle, the Seventh Circuit concluded that though there were "narrow factual differences" between the new case and *Bivens*—including that "the alleged Fourth Amendment [excessive force] violations took place in different locations (a hotel lobby here, a home in *Bivens*); that he had a warrant (the officers in *Bivens* did not); and that he was the only officer involved (six officers participated in the arrest at issue in *Bivens*)"— none of those raised new kinds of policy or separation-of-powers concerns, and so were not meaningful. *Id*. at 247.

In another post-*Egbert* decision, the Fourth Circuit recently rejected a similar argument from federal officials for the same reasons. *Hicks v. Ferreyra*, 64 F.4th 156 (4th Cir. 2023). In that case, officials argued that, unlike in *Bivens*, the case involved a prolonged car stop rather than a search of a home, did not involve a custodial arrest or excessive force, and arose from a "bizarre, inter-agency squabble within the Executive Branch." *Id*. at 166. As the Fourth Circuit explained, the case was not "meaningfully different" than *Bivens* itself, as "[b]oth cases involved allegations of unjustified, warrantless seizures in violation of the Fourth Amendment committed by federal 'line' officers conducting routine police work." *Id.* at 162; *see*

*also id.* at 166–69. Those minor factual distinctions did not make the case a new context from *Bivens*.

Applying the *Ziglar* factors to Watanabe's facts leads to the obvious conclusion that his claim falls into the same *Bivens* context as *Carlson*. For one, like the plaintiff-respondent in *Carlson*, Watanabe sued prison officials that he alleges were personally deliberately indifferent to his serious medical need. *See Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978) (defendants included prison doctor and nonlicensed nurse), *aff'd*, 446 U.S. 14. Watanabe also invokes the same constitutional right (the Eighth Amendment's protection against cruel and unusual punishments), which he alleges was violated in the same way (by deliberate indifference to his serious medical need). *See Carlson*, 446 U.S. at 16 n.1. Third, Watanabe challenges the specific acts and omissions of particular prison officials, rather than mounting any broad or programmatic challenge to the policies of the Bureau of Prisons or even his specific prison. *See id.*; *Green*, 581 F.2d at 671; *cf. Ziglar*, 582 U.S. at 140 (challenge to confinement conditions imposed "pursuant to a high-level executive policy" presented new context from more individualized *Bivens* claims previously approved by the Court). And "judicial guidance" that prison officials should not be deliberately indifferent to inmates' serious medical needs has only accumulated in the more than 40 years since *Estelle v. Gamble* and *Carlson* were decided. *See Ziglar*, 582 U.S. at 148 ("The Court has long made clear

the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" (quoting *Estelle v. Gamble*, 427 U.S. 97, 104 (1976)). Finally, this case poses no greater "risk of disruptive intrusion by the Judiciary into the functioning of other branches," given that it has long been well-established that *Bivens* remedies are available in prison medical care cases. *See id.* at 140.

In sum, both *Carlson* and Watanabe's case involved an Eighth Amendment suit against prison staff for deliberate indifference to a longstanding and serious medical need. Watanabe's case, which is about individual bad acts by federal officials providing medical care, does not present a different kind of policy analysis from *Carlson* nor does it implicate distinct separations-of-powers concerns. Any factual differences are thus not "meaningfully different" and so do not implicate a "new" context where a court would have to extend *Bivens* in order for it to apply. *See Egbert*, 142 S. Ct. at 1803 (quotation marks omitted).

*b) The district court erred in finding a new context.*

The district court briefly presented four reasons why, despite the weight of authority presented above, Watanabe's allegations present a "new context" and so no *Bivens* remedy is available. None of these reasons are persuasive.

First, the court held this context was new because of the "nature" and "severity" of Watanabe's allegations compared with the plaintiff in *Carlson*. ER–

15–16. This formulation derives from other district court cases and appears nowhere in binding precedent on *Bivens*. It also ignores the *Ziglar* factors, which aim to indicate the kinds of facts that would reveal new separation-of-powers concerns that animate the rollback of the *Bivens* remedy. *See Snowden*, 72 F.4th at 244. In other words, a constitutional injury that causes death is certainly more "severe" than an identical one that only fractures one's coccyx, but the district court failed to explain how this would change the policy analysis in *Carlson* or implicate new separation-of-powers concerns.

*Ziglar* also never suggested that *Carlson* is limited to medical deliberate indifference that causes death. *See Ziglar*, 582 U.S. at 131 (describing *Carlson* as holding that "the Eighth Amendment Cruel and Unusual Punishments Clause gave [Green] a damages remedy for failure to provide adequate medical treatment"); *id.* at 138 ("a *Bivens* action under the Eighth Amendment against federal prison officials for failure to provide medical treatment"); *id.* at 147 ("the Court did allow a *Bivens* claim for prisoner mistreatment—specifically, for failure to provide medical care."). Nor did the subsequent cases that interpreted it. *Egbert*, 142 S. Ct. at 1813 (describing *Carlson* as "an Eighth Amendment deliberate indifference claim for failure to provide proper medical attention"); *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (describing *Carlson* as "a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment"); *id.* at 743

("allowing *Bivens* remedy for an Eighth Amendment claim for failure to provide adequate medical treatment").

Indeed, this Court, from immediately following *Carlson* to post-*Ziglar*, has characterized the scope of *Carlson* the same way. In *Gillespie v. Civiletti*, the plaintiff was "not given any medical items or medical care" and therefore developed "a severe skin disease." 629 F.2d 637, 639 (9th Cir. 1980). This Court concluded that the "application of ... *Carlson* appears to be equally appropriate in the present case," because *Carlson* "established that a violation of the Eighth Amendment proscription against cruel and unusual punishment could be the basis for a *Bivens*-type action." *Id.* at 641–42.

More recently, in *McRae v. Dikran*, this Court allowed a plaintiff to proceed with a *Bivens* claim because "defendants [had] performed surgery on [the inmate's] back without his consent." 776 F. App'x 412, 413 (9th Cir. 2019). Just like in *Gillespie* and just like this case, the prisoner did not have asthma and did not die from his medical ailment. But those distinctions did not matter: *Carlson* "recogniz[ed] a *Bivens* claim for deliberate indifference to serious medical needs under the Eighth Amendment," not a claim limited strictly to *Carlson*'s facts. *Id.*

And in *Chambers v. C. Herrera*, this Court considered a prisoner's Eighth Amendment deliberate indifference claim based on allegations that a guard broke his arm and wrist, and then a medical staff person did not diagnose or treat those

injuries for six weeks in order to cover up the assault. No. 20-55004, 2023 WL 5211040, at *2 (9th Cir. Aug. 15, 2023). While noting that, since *Egbert*, this Court has "declined to extend *Bivens* to any new contexts," this Court held that the plaintiff—who also did not have asthma and did not die—still "could plead a viable claim" under *Bivens*, and remanded to the district court to allow the plaintiff to amend his complaint in order to add more facts. *Id.* at *1, 7.

Given this line of authority, the fact that the "nature and severity" of Watanabe's injury differed from the one in *Carlson* does not matter. That is, the fact that Watanabe suffers from fractured bones and remains alive, while the victim in *Carlson* suffered from asthma and died, does not make the cases "different in a meaningful way," and so does not mean Watanabe's claim arises in a new *Bivens* context. *Ziglar*, 582 U.S. at 149.

Second, the district court suggested that "allowing Watanabe's claim to proceed risks transforming [the court] into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury." ER–17–18. In two ways, this conclusion is plainly wrong. For one, in terms of simple number of cases, an Eighth Amendment claim for deliberate indifference to medical care is one of the most litigated constitutional rights in the federal courts.[2] A vast majority of these cases are brought

---

[2] *See* Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1571 n.48 (2003).

by plaintiffs in state or local custody under 42 U.S.C. § 1983, and these claims will continue regardless of this or any other court's treatment of *Bivens*. For that reason, judicial guidance available to government defendants is voluminous. *See, e.g.*, *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004); *Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1187 (9th Cir. 2002); *McGuckin v. Smith,* 974 F.2d 1050 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc); *Hutchinson v. United States,* 838 F.2d 390, 392 (9th Cir. 1988). The standard for a constitutional claim under *Estelle v. Gamble* also explicitly does not turn courts into an *ad hoc* medical review board, as it contains a very demanding constitutional standard. *See, e.g.*, *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."). Indeed, people in federal prison have less access to a judiciary purportedly turned *ad hoc* medical review board than the general population, as the standard from *Estelle* and *Carlson* requires more than medical malpractice, which is the usual standard for practitioners. *See, e.g.*, *Hutchinson*, 838 F.2d at 394 ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); *Gamble,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is

17

a prisoner … only such indifference that can offend 'evolving standards of decency'"). The district court's concerns are unfounded.

Third, the district court attempts to distinguish *Carlson* from Watanabe's case factually, but it misstates those facts. According to the district court, *Carlson* was about failing to provide treatment on-site, whereas Watanabe's case is about the failure of staff to bring him to a hospital. Even were this distinction a "meaningful" one under *Ziglar*, the court misconstrues the facts of both cases: *both* plaintiffs challenged both on-site treatment and the failure to be taken to a hospital. In *Carlson*, the plaintiff's estate challenged his on-site treatment but also that staff "delayed for too long a time his transfer to an outside hospital." 446 U.S. at 17 n.1. Watanabe challenges both the failure to take him to a hospital and also that, despite repeatedly requesting medical treatment, "he received no actual treatment" at the prison itself. ER–81; *see also* ER–83 (writing that the defendant "falsely states" in a grievance response "that the Plaintiff has received treatment" at the prison "which he has not.")[3] Even at this level of granularity, the two cases are on all fours.

Fourth and finally, the district court reasoned that "the existence of the Federal Bureau of Prisons' administrative remedy program is another reason that Watanabe's

---

[3] Even were this Court to read any ambiguity into Watanabe's complaint as to this point, he is owed all inferences in his favor as the nonmoving party. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).

claim arises in a new context" because "this factor was not considered by the Court in *Carlson*." ER–18. This argument conflates the "new context" (step 1) and extension (step 2) analyses of the *Bivens* question. The identical program does not make the context "new" from *Carlson*; it makes the context the same. The conclusion also proves too much, because the district court's holding would bar every deliberate indifference claim, no matter how precisely it mirrors *Carlson*'s facts. Indeed, if similarity to *Carlson* required that no administrative grievance process existed, then *Carlson* would have been implicitly overturned—and that cannot be, because *Ziglar* expressly held that *Carlson* remains good law. The Supreme Court has directed lower courts to "follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

Individual Supreme Court Justices have criticized the *Bivens* doctrine and suggested that the Court "consider discarding the *Bivens* doctrine altogether." *Hernandez*, 140 S. Ct. at 750 (J. Thomas, concurring). The controlling majority, however, has continued to explicitly reject this tack, confirming *Bivens* and *Carlson* as good law while sharply curtailing their extension to new contexts. *See Ziglar*, 582 U.S. at 134 ("*Bivens* does vindicate the Constitution by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers

going forward. The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere."). This is a case that requires no such extension. So long as *Carlson* remains good law, Watanabe has a claim.

## I.   The District Court Erred in Concluding that Watanabe Could Not State a Claim for Injunctive Relief.

The district court also erred in dismissing Watanabe's injunctive claim with prejudice. Watanabe's original complaint sought relief from the medical defendants in their official capacity, i.e., equitable relief. ER–109–10. The district court held that Watanabe could not bring an equitable claim under *Bivens*, ER–105, which is true but tautological: his complaint included official capacity claims, which he therefore was not bringing under *Bivens*. The court then held that Watanabe did not state a claim about his on-going medical care because "Watanabe acknowledges that he is now receiving medical care for his fractured coccyx." ER–103. But Watanabe alleged that he had received "no actual treatment." ER–114; *see also* ER–115. The court's decision to dismiss Watanabe's injunctive claim with prejudice at the § 1915 screening stage was premature, given the inferences he was owed, and that he is a *pro se* plaintiff. In sum, Watanabe stated a claim for injunctive relief and he should be allowed to pursue that claim.

## CONCLUSION

20

This Court should reverse the district court's dismissal of Watanabe's *Bivens* claim and remand to the district court for further proceedings.

Date:  August 23, 2023

*/s/ Samuel Weiss*
Samuel Weiss

Samuel Weiss
Sophie Angelis
Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001

*Attorneys for Appellant Kekai Watanabe*

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,753 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: August 23, 2023

*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001

*Attorney for Appellant Kekai Watanabe*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

The undersigned filer also certifies that this paper copy of the brief is identical to the version submitted electronically.


Date: August 23, 2023


*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
*Attorney for Appellant Kekai Watanabe*