**No. 23-15605**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

KEKAI WATANABE,

*Plaintiff-Appellant,*

v.

ESTELA DERR, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Hawai'i
No. 22-00168 JAO-RT
Hon. Jill A. Otake

---

**APPELLANT'S EXCERPTS OF RECORD**

---

Samuel Weiss
Sophie Angelis
Rights Behind Bars
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
202-455-4399
sophie@rightsbehindbars.org

*Attorneys for Plaintiff-Appellant Kekai
Watanabe*

**TABLE OF CONTENTS**

| D. Ct. Dkt. No. | Document | Pg. No. |
|---|---|---|
| 23 | Judgment | ER–3 |
| 22 | Order Granting Motion to Dismiss | ER–5 |
| 20-1 | Defendant's Memorandum in Support of Motion to Dismiss | ER–23 |
| 9 | Order Dismissing First Amended Complaint In Part | ER–52 |
| 8 | First Amended Complaint | ER–75 |
| 5 | Order Dismissing Complaint in Part with Partial Leave Granted to Amend | ER–86 |
| 1 | Original Complaint | ER–108 |
| 24 | Notice of Appeal | ER–118 |
| | District Court Docket | ER–120 |

AO 450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

KEKAI WATANABE,
#94102-022,

      Plaintiff,

      V.

ESTELA DERR, et al.,

      Defendants.

JUDGMENT IN A CIVIL CASE

Case: CV 22-00168 JAO-RT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

March 10, 2023

At 12 o'clock and 15 min p.m.
PAM HARTMAN BEYER, CLERK

[ ] **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[✔] **Decision by Court**. This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

      On March 10, 2023, the Court issued its ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, ECF NO. 22, (March 10, 2023 Order).

      IT IS ORDERED AND ADJUDGED that the First Amended Complaint is hereby DISMISSED without leave to amend, pursuant to and in accordance with the March 10, 2023 Order. Further, the Clerk of Court is directed to close the case and enter judgment in favor of Defendants.

| March 10, 2023 | PAM HARTMAN BEYER |
|---|---|
| Date | Clerk |
| | /S/ PAM HARTMAN BEYER by JI |
| | (By) Deputy Clerk |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEKAI WATANABE, #94102-022, | CIVIL NO. 22-00168 JAO-RT |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| vs. | |
| ESTELA DERR, et al., | |
| Defendants. | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pro se Plaintiff Kekai Watanabe ("Watanabe") brought this suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendant Francis Nielsen ("Nielsen"), a paramedic at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"), violated the Eighth Amendment's prohibition against cruel and unusual punishment by declining Watanabe's request to visit a hospital after he was injured during a gang riot.[1] *See* ECF No. 8 at 6–9. Nielsen filed a Motion to Dismiss First Amended

---

[1] Watanabe also asserted claims against the warden, a unit manager, and a doctor at FDC Honolulu, but those claims were previously dismissed by the Court. *See* ECF No. 9 at 11–16, 18–19.

Complaint ("Motion") arguing, among other things, that Watanabe's claim is not cognizable under *Bivens*.[2]  *See* ECF No. 20; ECF No. 20-1 at 10–23.  The Court agrees that Watanabe cannot pursue his claim against Nielsen under *Bivens* and, for the reasons stated below, GRANTS the Motion.

## I.    BACKGROUND

On July 12, 2021, Watanabe was severely beaten during a gang riot at FDC Honolulu with an improvised weapon, called a "lock in a sock."  ECF No. 8 at 7. After order was restored, prison officials documented Watanabe's known and visible injuries, and they told Watanabe that he would be put on sick call.  *Id.* Later the same night, Watanabe asked to be seen by medical staff.  *Id.*  Watanabe discussed his severe pain and headaches with two correctional officers who are not parties to this action.  *Id.*

At some point, Watanabe also described his medical condition to Nielsen.[3] *Id.*  Nielsen told Watanabe "to stop being a cry baby."  *Id.*  Nielsen also denied

---

[2] Even assuming that Watanabe's claims were cognizable, Nielsen argues that qualified immunity shields him from personal liability.  *See* ECF No. 20; ECF No. 20-1 at 23–28.  Because no *Bivens* remedy is available to Watanabe, the Court does not reach Nielsen's qualified immunity argument.  *See Pettibone v. Russell*, 59 F.4th 449, 457 (9th Cir. 2023) ("Because [plaintiff] has no cause of action under *Bivens*, we need not consider whether [defendant] would be entitled to qualified immunity.").

[3] Citing Watanabe's medical records, Nielsen asserts that this meeting took place on July 16, 2021—that is, four days after the riot.  *See* ECF No. 20-1 at 8; ECF No. 20-3 at 5.  Under Federal Rule of Civil Procedure 12(b)(6), however, this Court's

2

Watanabe's request to be taken to the hospital. *Id.* Watanabe does not describe any further interactions with Nielsen.

According to Watanabe, he remained in FDC Honolulu's special housing unit for two months after the riot. *Id.* During this period, Watanabe submitted numerous requests for medical attention. *Id.* Although prison officials provided Watanabe with over-the-counter pain medication, he received no "actual treatment." *Id.*

Sometime in February 2022, Watanabe was diagnosed with a fractured coccyx, with bone chips in the surrounding soft tissue. *Id.* at 7, 9. Prison officials then agreed to send Watanabe to a specialist. *Id.* at 9. As of July 2, 2022, Watanabe was still waiting to see a specialist. *Id.* at 6.

On July 7, 2022, the Court received the operative pleading in this suit—that is, the First Amended Complaint ("FAC"). *Id.* In the FAC, Watanabe alleges that

---

review is generally limited to the contents of the complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although "[a] court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), Watanabe did not attach his medical records to the First Amended Complaint, he does not refer to them in that pleading, and the Court is currently unable to take judicial notice of those documents. *See Dillingham v. Garcia*, No. 1:19-cv-00461-AWI-GSA-PC, 2019 WL 2577196, at *2 (E.D. Cal. June 24, 2019) ("The court shall not take judicial notice of prison medical records absent a showing that the medical records were matters of public record.").

3

Nielsen violated the Eighth Amendment's prohibition against cruel and unusual punishment by "denying him proper medical treatment that would have properly diagnosed and treated his injury." *Id.* at 9. Watanabe seeks three million dollars in damages. ECF No. 8 at 11.

Nielsen filed the Motion on January 13, 2023, arguing that the FAC should be dismissed because Watanabe's constitutional tort claim presents a new context, which is not cognizable under the Supreme Court's current *Bivens* framework. *See* ECF No. 20 at 2; *see also* ECF No. 20-1 at 10–23. Watanabe filed neither an opposition to the Motion nor a statement setting forth his position on the Motion. *See* LR7.2. The Court will decide the Motion without a hearing pursuant to Local Rule 7.1(d). *See* ECF No. 21.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). Conclusory allegations of law, unwarranted

4

deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell*, 266 F.3d at 988; *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

Watanabe is appearing pro se; thus, the Court liberally construes his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam*); Eldridge*

*v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). The Court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Rowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

## III.   ANALYSIS

Watanabe brought this suit pursuant to *Bivens* alleging that Nielsen violated the Eighth Amendment's prohibition against cruel and unusual punishment by "denying him proper medical treatment that would have properly diagnosed and treated his injury." *See* ECF No. 8 at 9. Before the merits of this claim can be reached, the Court must first decide whether a *Bivens* remedy is available to Watanabe. *See, e.g.*, *Manansingh v. United States*, Case No. 2:20-cv-01139-DWM, 2021 WL 2080190, at *8 (D. Nev. May 24, 2021) ("In a constitutional action against a federal officer, a threshold consideration is whether a plaintiff may bring a *Bivens* suit in the first place."). Because no such remedy exists, the FAC and this action must be dismissed.

### A.   Legal Framework for Determining Whether a *Bivens* Remedy Exists

While "Congress has made a cause of action available to any person who has suffered 'the deprivation of any rights, privileges, or immunities secured by the

6

Constitution and laws' at the hands of someone acting under color of state law," it "has not created a general cause of action to redress violations of the Constitution by *federal* officers." *Pettibone*, 59 F.4th at 454 (quoting 42 U.S.C. § 1983).

In three cases decided between 1971 and 1980, however, "the Supreme Court held that the Constitution contains an implied cause of action through which plaintiffs can seek damages from federal officers who violate their constitutional rights." *Id.* In *Bivens*, the Court held that a plaintiff could seek damages from Federal Bureau of Narcotics agents who allegedly violated the Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. at 397. The Court extended the *Bivens* remedy in *Davis v. Passman*, where a plaintiff alleged that her employer, a Member of Congress, had discriminated against her because of her sex, in violation of the Due Process Clause of the Fifth Amendment. 442 U.S. 228, 230–31 (1979). Finally, in *Carlson v. Green*, the Court held that the estate of a deceased inmate could seek damages from federal prison officials who allegedly violated the inmate's Eighth Amendment right to be free from cruel and unusual punishment by failing to treat severe asthma that ultimately resulted in the prisoner's death. 446 U.S. 14, 16–18 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at 135 (citation omitted); *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) ("At bottom, creating a cause of action is a legislative endeavor."). Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Id*. at 1809. Since 1980, therefore, the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[4] *Abbasi*, 582 U.S. at 135 (citation omitted).

---

[4] The Supreme Court has declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. at 155; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *see Egbert*, 142 S. Ct. at 1793.

8

Now, when asked to imply a *Bivens* remedy, courts must use "caution." *Egbert*, 142 S. Ct. at 1803. If there is even a "single sound reason" to think that Congress might doubt the efficacy or necessity of a damages remedy, courts must refrain from creating it. *Id.* Thus, "'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?'" *Id.* (citation omitted). In "most every case," the answer will be Congress. *Id.*

In deciding whether a *Bivens* remedy is available in a particular case, courts apply a two-step framework. *Pettibone*, 59 F.4th at 454. At step one, courts "ask whether the case presents 'a new *Bivens* context.'" *Egbert*, 142 S. Ct. at 1803. If the answer to this question is "no," then no further analysis is required, and the claim may proceed. *See Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018). If the answer is "yes," then the court proceeds to step two. At step two, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[5] *Pettibone*, 59 F.4th at 454 (citation omitted).

---

[5] In *Egbert*, the Supreme Court noted that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. At least one court of appeals has suggested in dicta that this sentence "appear[s] to alter the existing two-step *Bivens* framework." *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022). The Ninth Circuit, however, has stated that *Egbert* only "reiterate[d] the longstanding first step of the *Bivens* question" and "clarified" the second step.

9

## B.  Watanabe's Claim Against Nielsen Presents a New Context

The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743.  A case presents a new context if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 139.  The Supreme Court has provided a non-exhaustive list of differences that may be "meaningful" including the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, the statutory or other legal mandate under which the officer was operating, the risk of disruptive intrusion by the Judiciary into the functioning of other branches of government, and the presence of potential special factors that previous *Bivens* cases did not consider.  *Id.* at 139–40.

The Supreme Court has stated that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Thus, even where a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases, it can present a new context.  *Abbasi*, 582 U.S. at 147.  In

---

*Mejia v. Miller*, No. 21-56282, 2023 WL 2350630, at *4 (9th Cir. Mar. 2, 2023); *see also Pettibone*, 59 F.4th at 454 ("Before affording a plaintiff a cause of action under *Bivens*, a court must go through two steps[.]").  The Court therefore applies the two-step framework, as clarified in *Egbert*, to analyze Watanabe's claim.

10

other words, "even a modest extension is an extension." *Id.*; *see Mejia*, 2023 WL 2350630, at *5 ("[R]arely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly.").

The Supreme Court's analysis in *Egbert* illustrates these principles. In *Egbert*, a bed-and-breakfast operator and Border Patrol confidential informant alleged, among other things, that a Border Patrol agent used excessive force on him while trying to conduct a search on the plaintiff's property. 142 S. Ct. at 1801. While noting that *Egbert* and *Bivens* involved "similar allegations of excessive force and thus arguably present[ed] 'almost parallel circumstances' or a similar 'mechanism of injury,'" the Supreme Court stated that these "superficial similarities [were] not enough to support the judicial creation of a cause of action." *Id.* at 1805.

Here, although Watanabe's claim has some parallels to the claims in *Carlson*, the specifics of Watanabe's allegations are dissimilar in both their "nature and severity" from the facts in *Carlson*. *Martinez v. United States Bureau of Prisons*, Case No. 5:15-cv-02160-TJH (AFM), 2019 WL 5432052, at *9 (C.D. Cal. Aug. 20, 2019), *report and recommendation adopted*, 2019 WL 5424414 (C.D. Cal. Oct. 22, 2019), *aff'd*, 830 F. App'x 234 (9th Cir. 2020).

In *Carlson*, an inmate was diagnosed as a "chronic asthmatic" when he entered the federal prison system. *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir.

1978), *aff'd*, 446 U.S. 14 (1980). The inmate was later hospitalized for eight days because of symptoms associated with this condition, and the treating physician recommended that the inmate be transferred to a different facility. *Id.* Despite the doctor's recommendation, the inmate remained in the same facility. *Id.* Then, when the inmate was admitted to the prison hospital with an asthmatic attack, he was not seen by a doctor for eight hours. *Id.* As the inmate's breathing became more difficult, a non-licensed nurse in charge of the prison hospital deserted the inmate to distribute medication elsewhere. *Id.* When the nurse returned, he attempted to use a respirator on the inmate. *Id.* The nurse did this despite being told two weeks earlier that the respirator was broken. *Id.* When the inmate told the nurse that the respirator was making his breathing worse, the nurse administered two doses of a drug contraindicated for someone suffering an asthmatic attack. *Id.* A half-hour after the second injection, the inmate suffered a respiratory arrest. *Id.* The nurse and another prison official then brought emergency equipment to administer an electric jolt to the inmate, but neither man knew how to operate machine. *Id.* Only at that point was the inmate taken to a hospital, where he was pronounced dead. *Id.*

Watanabe's claim against Nielsen differs from the claims in *Carlson* in several important ways. First, the nature of Watanabe's claim differs from those in *Carlson* because it does not relate to a course of medical treatment provided to him

12

at FDC Honolulu. Instead, Watanabe alleges that, sometime after the riot ended, Nielsen interfered with the proper diagnosis and treatment of his injuries by denying his request to be taken to the hospital. ECF No. 8 at 9. Although it is well settled that state prisoners can establish deliberate indifference in the context of an Eighth Amendment claim by showing that officials "intentionally interfered with . . . medical treatment," *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000), that was not the basis for the claims in *Carlson*. Again, the claims in *Carlson* were largely based on treatment provided to a federal inmate during a medical emergency. Thus, Watanabe seeks an extension of *Bivens* to an area not addressed in *Carlson*. *See Donaldson v. Garland*, No. 2:21-cv-1178 TLN KJN P, 2022 WL 10189084, at *3 (E.D. Cal. Oct. 17, 2022) (finding new context where plaintiff alleged that prison officials interfered with medical care by cancelling surgery), *report and recommendation adopted*, 2022 WL 17722326 (E.D. Cal. Dec. 15, 2022).

Second, the severity of Watanabe's claim does not compare to the seriousness of the claims in *Carlson*. While the pain that Watanabe experienced because of his fractured coccyx and bone chips is certainly regrettable, it is not akin to the medical emergency faced by the inmate in *Carlson* that ultimately resulted in that inmate's death. *See Washington v. Fed. Bureau of Prisons*, Civil Action No. 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022)

13

(noting that "[p]laintiff's *Bivens* claims do not involve a medical emergency, as did *Carlson*, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition" in concluding that case presented a new context); *Peguero v. Quay*, No. 1:22-CV-00057, 2023 WL 2410882, at *11 (M.D. Pa. Mar. 8, 2023) (concluding that chronic pain caused by two herniated discs, scoliosis, and nerve damage was a new context because it did not involve a "medical life-threatening emergency").

These differences in the "nature and severity" of Watanabe's claims compared to those in *Carlson* are meaningful. *See Martinez*, 2019 WL 5432052, at *9; *see also Prescott v. United States*, Case No. 2:20-cv-2740-SB (SK), 2022 WL 18859316, at *2 (C.D. Cal. Dec. 21, 2022) (concluding that assigning a federal prisoner to an inhospitable bed and refusing to move him even after a doctor's order presented a new context), *report and recommendation adopted*, 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023); *Davis v. Fed. Bureau of Prisons*, Case No. 5:21-cv-1475-CAS (SK), 2022 WL 18460704, at *2 (C.D. Cal. Dec. 8, 2022), *report and recommendation adopted*, 2023 WL 405319 (C.D. Cal. Jan. 24, 2023) (concluding that federal prisoner's claim that defendant performed an unauthorized surgical procedure presented a new context). Indeed, allowing Watanabe's claims to proceed risks "transforming [the court] into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if

14

any, cross the threshold into constitutional injury."[6] *Washington*, 2022 WL 3701577, at *5.

Furthermore, the Supreme Court has stated that "the presence of potential special factors that previous *Bivens* cases did not consider" is a relevant consideration in deciding whether a case presents a new context. *See Abbasi*, 582 U.S. at 140; *see also Egbert*, 142 S. Ct. 1793 ("[W]e have explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.") (citation omitted). As explained in the following section, special factors weigh against recognizing a *Bivens* remedy for Watanabe's claim, including the existence of the Federal Bureau of Prisons' administrative remedy program. Because this factor was not considered by the Court in *Carlson*, this is

---

[6] A few courts have allowed to proceed claims involving "medical treatment." *See, e.g.*, *Ibuado v. Fed. Prison Atwater*, 2023 WL 2312395, at *4 (E.D. Cal. Mar. 1, 2023) (claims based on side effects of medication); *Dinkins v. United States*, 2022 WL 16735362, at *6 (C.D. Cal. Aug. 19, 2022) (claims based on failure to treat sinus blockage), *report and recommendation adopted*, 2022 WL 15525746 (C.D. Cal. Oct. 27, 2022). These decisions are not instructive here, where Watanabe's claim is based on interference with medical care, not a course of medical treatment. Moreover, the Court does not find the analyses in these decisions persuasive. Neither decision addresses the Supreme Court's statement that "similar allegations," "'almost parallel circumstances,'" or a "similar 'mechanism of injury'" are only "superficial similarities," and they are "not enough to support the judicial creation of a cause of action." 142 S. Ct. at 1805. Nor do these decisions address the Supreme Court's warning that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances with . . . *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 1809.

another reason that Watanabe's claim arises in a new context. *See Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished) ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original).

For all these reasons, Watanabe's claim is meaningfully different from the claims in *Carlson*, and the court must proceed to step two.

### C. Special Factors Counsel Against Recognizing a *Bivens* Remedy

"[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (citation omitted). Thus, at step two, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (citation omitted). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citation omitted). In conducting this analysis, courts must ask "'broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.' *Id.* (citation omitted). If

16

there is such a reason "or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 1805–06 (citation omitted). This will be the outcome in "most every case." *Id.* at 1803.

For example, "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* at 1804. It does not matter whether a *Bivens* remedy would disrupt the remedial scheme, nor does it matter whether the court should provide a remedy for a wrong that would otherwise go unaddressed. *Id.* Likewise, "it does not matter that 'existing remedies do not provide complete relief.'" *Id.* (citation omitted). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

Here, the Court cannot recognize a *Bivens* remedy because alternative remedies are available to Watanabe. First, the Executive, through the Federal Bureau of Prisons, has an alternative remedial program for federal prisoners like Watanabe. *See* 28 C.F.R. § 542.10 ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *see also Malesko*, 534 U.S. at 74 (concluding that *Bivens* remedy was unavailable, in part, because "[i]nmates . . .

17

have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program"); *Taylor v. Kobayashi*, No. 22-16017, 2023 WL 2400879, at *1 (9th Cir. Mar. 8, 2023) (unpublished) (concluding that "the Bureau of Prisons' formal review process for inmate complaints" foreclosed the availability of a *Bivens* remedy). Second, Congress has provided an alternative remedy through the Federal Tort Claims Act ("FTCA"). *See Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the FTCA as an alternative process available to federal prisoners); *Prescott*, 2022 WL 18859316, at *2 ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."); *Donaldson*, 2022 WL 10189084, at *3 ("[P]laintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process and a federal tort claims action."). While a single alternative remedy is sufficient to foreclose a *Bivens* remedy, at least two are available to Watanabe. Thus, the Court cannot "second-guess" the judgments made by Congress and the Executive "by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.

As the Supreme Court has stated, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert*, 142 S.

Ct. at 1800.  This case does not present the unusual circumstances required to recognize a *Bivens* remedy.

## IV.    CONCLUSION

Because Watanabe's claim arises in a new context and at least one special factor weighs against recognizing a new *Bivens* remedy, Defendants' Motion, ECF No. 20, is GRANTED for failure to state a claim upon which relief can be granted. Because amendment would be futile, Watanabe's claim against Nielsen in the FAC is DISMISSED without leave to amend.  *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile).  The Clerk of Court is DIRECTED to close the case and enter judgment in favor of Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, March 10, 2023.



Jill A. Otake
United States District Judge

CIVIL NO. 22-00168 JAO-RT; *Watanabe v. Derr*; Order Granting MTD FAC

19

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEKAI WATANABE, | CIVIL NO. 22-00168-JAO-RT |
| Plaintiff, | |
| | MEMORANDUM IN SUPPORT |
| v. | |
| FRANCIS NIELSEN, individually, | |
| Defendant. | |

<u>MEMORANDUM IN SUPPORT</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………..i

I. INTRODUCTION ......................................................................................1

II. STATEMENT OF FACTS .........................................................................1

III. STANDARD OF REVIEW ........................................................................3

IV. PLAINTIFF FAILS TO STATE A *BIVENS* CLAIM AGAINST
DEFENDANT ............................................................................................4

    A. Plaintiff has no damages remedy under *Bivens* after *Egbert* ...............5

    B. New Context Analysis.........................................................................9

    C. Special Factors Analysis ...................................................................12

        1. Congress is better positioned to create remedies in the context
            of chronic medical care in federal prisons ...............................13

        2. Alternative Remedies Already Exist for Plaintiff....................14

        3. Congress' passage of the Prison Litigation Reform Act
            ("PLRA") ...................................................................................16

V. DEFENDANT IS PROTECTED UNDER QUALIFIED IMMUNITY
BECAUSE THERE WAS NO DELIBERATE INDIFFERENCE TO
PLAINTIFF'S MEDICAL NEEDS...........................................................17

    A. General Principles of Qualified Immunity.........................................17

    B. Qualified Immunity for Law Enforcement Officers ...........................19

    C. Constitutional Violation Standard – Deliberate Indifference ............19

    D. Paramedic Nielsen Provided Appropriate Medical Care to Plaintiff
       and Was Not "Deliberately Indifferent" ............................................21

VI. CONCLUSION.........................................................................................23

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                    **<u>Page(s)</u>**

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) ...............................................................................4

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ................................................................................ 18, 19

*Armour v. Depaola*,
   C/A No. 18cv3728, ECF No. 56 (N.D. Ill. 2020) .................................................11

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)................................................................................. 3, 6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................3

*Bell v. Hood*,
   327 U.S. 678 (1946) ...............................................................................................5

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) .................................................................... 1, 4, 5, 6

*Butler v. Porter*,
   999 F.3d 287 (5th Cir. 2021).................................................................................17

*Butz v. Economou*,
   438 U.S. 478 (1978) .............................................................................................17

*Cagle v. Hutto*,
   177 F.3d 253 (4th Cir. 1999).................................................................................16

*Callahan v. Fed. Bureau of Prisons*,
   965 F.3d 520 (6th Cir. 2020) ...................................................................... 14, 17

*Carlson v. Green*,
   446 U.S. 14 (1980) ............................................................................. 6, 9, 10, 11

*Correctional Services Corp. v. Malesko*,
   534 U.S. 61 (2001) ...........................................................................................6, 14

i

*Davis v. Passman*,
442 U.S. 228 (1979) ................................................................................ 6, 9, 12

*Davis v. Scherer*,
468 U.S. 183 (1984) ................................................................................17

*Earle v. Shreves*,
990 F.3d 774 (4th Cir. 2021) ..................................................................8

*Egbert v. Boule*,
142 S. Ct. 1793 (2022)......................................................................... 1, 5, 8, 15

*Estelle v. Gamble*,
429 U.S. 97 (1976) ............................................................................ 20, 21, 22

*Farmer v. Brennan*,
511 U.S. 825 (1994) ............................................................................ 20, 21

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ...............................................................4

*Gomez v. Toledo*,
446 U.S. 635 (1980) ...............................................................................18

*Gonzalez v. Hasty*,
269 F. Supp. 3d 45 (E.D.N.Y. 2017), aff'd, 755 F. App'x 67 (2d Cir. 2018) .....11

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ............................................................................ 17, 19

*Hernández v. Mesa*,
140 S. Ct. 735 (2020)......................................................................... 6, 8, 9, 10

*Hirano v. Sand Island Treatment Ctr.*,
No. CV 20-00473 DKW-WRP, 2021 WL 54504 (D. Haw. Jan. 6, 2021)...........22

*Horton v. California*,
496 U.S. 128 (1990) ...............................................................................18

*Hudson v. McMillian*,
503 U.S. 1 (1992) .....................................................................................20

ii

*Hutchinson v. United States*,
838 F.2d 390 (9th Cir. 1988) ..............................................................20

*Jeffers v. Gomez*,
240 F.3d 845 (9th Cir. 2001) ..............................................................18

*Johnson v. Riverside Healthcare Sys.*,
534 F.3d 1116 (9th Cir. 2008) ...............................................................4

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ............................................................20

*Malley v. Briggs*,
475 U.S. 335 (1986) ...........................................................................18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ...............................................................4

*Martinez v. U.S. Bureau of Prisons*,
5:15cv2160-TJH, 2019 WL 5432052 (C.D. Cal. 2019) .......................11

*McGuckin v. Smith*,
974 F.2d 1050 (9th Cir. 1992) ..................................................... 20, 21

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ...........................................................................19

*Montcalm Pub. Corp. v. Virginia*,
199 F.3d 168 (4th Cir. 1999) ..............................................................16

*Moreno v. Hoey*,
C/A No. 1:19cv2756-DCC-SVH, 2020 WL 5986214 (D.S.C. 2020) .................11

*Nestlé USA, Inc. v. Doe*,
141 S. Ct. 1931 (2021) ........................................................................12

*Saucier v. Katz*,
533 U.S. 194 (2001) ...........................................................................18

*Schweiker v. Chilicky*,
487 U.S. 412 (1988) ...........................................................................15

iii

*Silva v. United States.*,
   No. 21-1008, 2022 WL 3023684 (10th Cir. Aug. 1, 2022).......................... 8, 9, 14

*Toguchi v. Chung*,
   391 F.3d 1051 (9th Cir. 2004) .............................................................21

*Wilson v. Seiter*,
   501 U.S. 294 (1991) ................................................................... 20, 21

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017)............................................................... passim

**Statutes**

18 U.S.C. § 4001(b)(1).............................................................................16

28 U.S.C. § 1346 .....................................................................................16

28 U.S.C. § 1915 ...................................................................... 13, 14, 16, 17

42 U.S.C. § 1983 ......................................................................................5

42 U.S.C. § 1997e(a) ...............................................................................14

U.S. Const. amend. IV ...................................................................... 5, 8, 9

U.S. Const. amend. V...................................................................................6, 9

U.S. Const. amend. VIII............................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................3, 4

**Regulations**

28 C.F.R. § 542.10 .......................................................................... 14, 15

## I.      INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") alleges Bureau of Prisons ("BOP") employee, Francis Nielsen, Paramedic, assigned to the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"), failed to provide adequate medical care.  Specifically, Plaintiff alleges he suffered physical injuries after a gang riot between several inmates, which occurred in Plaintiff's housing unit.  Plaintiff further alleges Paramedic Nielsen denied Plaintiff medical attention.  As a result, Plaintiff asserts the alleged denial of adequate medical care amounts to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

The FAC's claim against Defendant Nielsen must be dismissed.  ***First***, the alleged constitutional tort claim presents a new context, which is not cognizable under the standard for recognizing *Bivens* claims, set forth in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and recently re-affirmed in *Egbert v. Boule*, 142 S. Ct. 1793 (2022).  ***Second***, qualified immunity shields Defendant from personal liability.  For the foregoing reasons, Plaintiff's case against Defendant should be dismissed with prejudice.

## II.     STATEMENT OF FACTS

On July 12, 2021, Plaintiff reported injuries to the FDC Honolulu medical staff resulting from a physical altercation.  *See* Exhibit "A" to the Declaration of Harry Yee (Plaintiff's Medical Records) at 1.  According to Plaintiff, he suffered a

1

"fractured [coccyx] and other injuries" when he was attacked by gang members, one of whom used a "lock in a sock." *See* ECF 1 at 6-7. Plaintiff alleges he was suffering from severe pain and headaches after the altercation. *Id*. Four days later, on July 16, 2021, Paramedic Nielsen met with Plaintiff in the housing unit. *Id*. According to Plaintiff, Paramedic Nielsen told Plaintiff "stop being a cry baby…you are not going to the hospital." *Id*. Over the next few months, Plaintiff alleges he submitted numerous requests for medical attention, but he was limited to over-the-counter pain medication. *Id*. Plaintiff states in his FAC that he "still has not received treatment." *Id*. Although not explicitly stated, Plaintiff seemingly believes he should have been sent off-site to a hospital in the local community. As a result, Plaintiff argues that, in denying him proper care, Paramedic Nielsen was deliberately indifferent to his medical needs.

On July 16, 2021, Paramedic Nielsen met with Plaintiff in his housing unit to assess injuries from the physical altercation. *See* Ex. A at 4. During this assessment, Plaintiff described pain in his lower back as ten out of ten (10/10). *Id*. In his assessment, Paramedic Nielsen indicated that the back pain was likely from the physical altercation on July 12, 2021. *Id.* at 5.

However, according to his notes, Plaintiff did not suffer from any broken bones, dislocated joints, muscle tears, or any other illness requiring specialized care. *Id*. 4–7. Therefore, Paramedic Nielsen ordered a dose of Toradol followed

2

by Motrin and encouraged gentle stretching exercises as tolerated. Ex. A at 5. Paramedic Nielsen told Plaintiff to follow-up with sick call if his pain persisted. *Id*. In reviewing Plaintiff's medical notes, it does appear as though Plaintiff reported to sick call and received care several times after the incident to help manage continued pain. *Id*. at 9.

## III. STANDARD OF REVIEW

Dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) is proper when the complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (brackets added; citation omitted). While the complaint need not set out "detailed factual allegations," *Bell Atlantic Corp.*, 550 U.S. at 555, it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' will not do." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp.*, 550

3

U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

"A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted). While the complaint must be construed in the light most favorable to the non-moving party, the Court need not accept as true "conclusory allegations of law and unwarranted inferences." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV. PLAINTIFF FAILS TO STATE A *BIVENS* CLAIM AGAINST DEFENDANT

Plaintiff attempts to bring a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) – a court-created cause of action, which permits a personal damages suit under very limited circumstances for certain constitutional violations. Plaintiff's claim, however, does not fall within the narrow scope of *Bivens* claims previously recognized by the Supreme Court and special factors counsel hesitation before engaging in the "disfavored judicial activity" of expanding *Bivens* to a new context of individual capacity claims.

Further, even if the Court were inclined to create a new remedy in damages in this case, Plaintiff's claim is barred by qualified immunity.

### A. Plaintiff has no damages remedy under *Bivens* after *Egbert*

Damages actions pursuant to 42 U.S.C. § 1983 represent the remedy that Congress created for plaintiffs whose constitutional rights have been violated by state officials. However, there is no parallel congressionally created remedy for constitutional violations committed by agents of the federal government. In *Bivens*, the Supreme Court recognized an implied damages action to compensate persons injured by federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. at 397. The *Bivens* court acknowledged that the Fourth Amendment does not provide for money damages "in so many words," but stated that "'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.'" *Id.* at 396 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)). The Court also noted that it was not limited by any "explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents," and determined that the case "involve[d] no special factors counseling hesitation in the absence of affirmative action by Congress [to

create such a remedy]." *Id.* at 396–97. Thus, the *Bivens* court held that it could authorize a remedy under general principles of federal jurisdiction. *See id.* at 392.

Following *Bivens*, the Supreme Court implied similar remedies twice more, in a Fifth Amendment gender discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979) (wherein an administrative assistant sued a U.S. Congressman for firing her because she was a woman), and in an Eighth Amendment cruel and unusual punishment clause case, *Carlson v. Green*, 446 U.S. 14 (1980) (wherein a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma, which failure led to the prisoner's death). "After those decisions, however, the Court changed course." *Hernández v. Mesa*, 140 S. Ct. 735, 741 (2020). Although *Bivens, Passman*, and *Carlson* remain valid in their own contexts, the Supreme Court's willingness to extend *Bivens*-type remedies has grown increasingly narrow over time. *See, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

Determining whether to imply a damages action pursuant to *Bivens*, Supreme Court precedent instructs district courts to ask two questions: (1) whether the case presents a "new *Bivens* context"—i.e., whether it is meaningfully different from the three cases in which the Supreme Court implied a damages action (*Ziglar*,

6

137 S. Ct. at 1859–60); and (2) if a claim arises in a new context, whether there are "special factors counselling hesitation"—i.e., whether such factors cause a court to hesitate in affirming that the Judiciary, as opposed to Congress, is well suited to consider and weigh the costs and benefits of allowing a damages action to proceed. *Id*. at 1858.  In *Ziglar*, the Supreme Court stated:

> The proper test for determining whether a case presents a new *Bivens* context is as follows.  If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new.  Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive.  A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

137 S. Ct. at 1859–60.  "Given the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Id*. at 1857 (quoting *Iqbal*, 129 S. Ct. at 1948).  Accordingly, any *Bivens* claim must be dismissed if it arises in a new context and presents "'special factors counselling hesitation' in

fashioning a remedy absent action by Congress." *Earle v. Shreves*, 990 F.3d 774, 779 (4th Cir. 2021) (quoting *Ziglar*, 137 S. Ct. at 1860).

*Egbert* clarified this analytical framework in a manner that made it even more rigorous, in effect making it significantly more unlikely that an implied cause of action will be recognized. The *Egbert* court acknowledged that its precedents "describe two steps," but explained that these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803; *see also Silva v. United States*., No. 21-1008, 2022 WL 3023684, at *3 (10th Cir. Aug. 1, 2022) (recognizing that *Egbert* "appeared to alter the existing two-step *Bivens* framework").

The Court instructed that if there is "even a single" rational reason to defer to Congress to create a remedy for relief, "a court may not recognize a *Bivens* remedy." *Id*. at 1803 (citing *Hernández*, 140 S. Ct. at 741, 743). Moreover, *Egbert* rejected the petitioner's Fourth Amendment claim despite its extremely close factual and legal parallels with *Bivens* itself, affirming that the plaintiff's Fourth Amendment claim presented a new *Bivens* context despite the fact that, as in *Bivens*, the alleged excessive force arose in the setting of the plaintiff's arrest by a law enforcement officer. *Id*. at 1800–01, 1804. The Court spelled out the takeaway from this demanding approach: a *Bivens* remedy will be unavailable "in

8

most every case." *Id*. at 1803 ("If there is a rational reason to think that [Congress is better situated than the courts to decide whether to provide for a damages remedy]—as it will be in most every case—no *Bivens* action may lie. Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts arrogate legislative power." (cleaned up)). As the Tenth Circuit recently stated, "[t]he Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril." *Silva*, 2022 WL 3023684, at *1.

## B.   New Context Analysis

Plaintiff's *Bivens* claim presents a new context both because it diverges factually from the Court's three *Bivens* cases and because it raises potential special factors that the Court has not considered in the past. To constitute a new context, a case need only be "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Ziglar* at 1859. The Court's understanding of a new context "is broad," *Hernandez*, 140 S. Ct. at 743, and the analysis is "easily satisfied" even for claims that have "significant parallels" to one of the three previously recognized *Bivens* contexts. *Ziglar* at 1865.

Here, Plaintiff's claim clearly bears no resemblance to *Bivens*, 403 U.S. 388 (Fourth Amendment claim for warrantless search and seizure at the plaintiff's home), or *Passman*, 442 U.S. 228 (Fifth Amendment due process claim for sex discrimination in employment context). Thus, *Carlson* is the only prior *Bivens*

case with any similarities to Plaintiff's. *See* 446 U.S. 14. But while *Carlson* also involved an Eighth Amendment claim for deliberate indifference to serious medical needs, *id*. at 16 n.1, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743; *see also Abbasi*, 137 S. Ct. at 1864 (cases involving the same "constitutional right" and "mechanism of injury" as a prior *Bivens* case can still present a new context). Aside from the overarching constitutional theory at issue, this case shares little in common with *Carlson*.

In *Carlson*, the Plaintiff was the estate of an inmate who died after prison officials "kept him in [an inadequate] facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital." 446 U.S. 16, n.1. In other words, *Carlson* focused on a specific incident of gross and fatal incompetence during a medical emergency. Here, in contrast, the *Bivens* claim turns on allegations that, Paramedic Nielsen failed to send Plaintiff off-site for evaluation. Nevertheless, this allegation does not involve a life-threatening condition or an emergency as in *Carlson*.

10

Other courts have found a new context in Eighth Amendment cases where the medical condition and care at issue were equally different from *Carlson*. *See*, *e.g., Armour v. Depaola*, C/A No. 18cv3728, ECF No. 56 (N.D. Ill. 2020) (new context where plaintiff alleged defendant prevented him from receiving his medication); *Moreno v. Hoey*, C/A No. 1:19cv2756-DCC-SVH, 2020 WL 5986214, at *1 (D.S.C. 2020) (observing that alleged deliberate indifference to "sleep apnea, back pain, prostate issues, and a lump on [the plaintiff's] testicle" may present different context from *Carlson*, but dismissing on other grounds); *Martinez v. U.S. Bureau of Prisons*, 5:15cv2160-TJH, 2019 WL 5432052, at *8 (C.D. Cal. 2019) (failure to treat hypertension was "demonstrably different in kind and severity" from *Carlson*); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 65 (E.D.N.Y. 2017), aff'd, 755 F. App'x 67 (2d Cir. 2018) (new context where plaintiff alleged that officials failed to provide dental hygiene supplies and supportive shoes).  The same result is warranted here.

Plaintiff's *Bivens* claim does not involve a medical emergency, as did *Carlson*, but rather focuses on a non-emergency back injury resulting from a physical altercation with other inmates.  This difference is significant for multiple reasons, including that administrative and injunctive relief would have a completely different application to Plaintiff's claim than to the claims in *Carlson*, where the failure to properly address a medical emergency proved fatal.  *See*

11

*Egbert*, 142 S. Ct. at 1803 (explaining that "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider'" (quoting *Ziglar*, 137 S. Ct. at 1864)).  Whereas the Court in *Carlson* fashioned a *Bivens*-type remedy to make right a grave constitutional wrong, Plaintiff's *Bivens* claim here risks transforming this Court into an ad hoc medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury.  It is not important that Plaintiff's claim parallels those in *Carlson* to the degree they are brought under the Eighth Amendment and relate to medical care in the prison setting generally.

After *Egbert*, such broad similarities with *Bivens*, *Passman*, or *Carlson* are not sufficient on their own to authorize a claim.  *See* 142 S. Ct. at 1804–05 (affirming a finding of a new context despite "almost parallel circumstances").  Rather, Plaintiff's *Bivens* claim arises in a new context and special factors, which *Carlson* never considered, warrant a full analysis of whether it would offend separation of powers principles to authorize the type of *Bivens* claim that Plaintiff proposes here.  *See Egbert*, 142 S. Ct. at 1808.

## C.    **Special Factors Analysis**

So long as there is "[e]ven a single sound reason" for a court "to defer to Congress" rather than create an implied damages remedy, it must do so.  *Egbert* at 1803 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)).  A "special

factor" indicates that Congress is better suited than the Judiciary to "weigh the costs and benefits" of creating a new damages remedy. *Id*. (quoting *Ziglar* at 1858). The special factors inquiry is broad-ranging and simply asks "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. at 1805 (emphasis in original) (quoting *Ziglar* at 1858). "[S]eparation-of-powers principles are or should be central to the analysis." *Ziglar* at 1857.

This case presents several sound reasons for deference, including: (1) Congress is better positioned to create remedies in the context of chronic medical care in federal prisons; (2) the Government has already provided alternative remedies that protect claimants like Plaintiff, including processes for administrative and injunctive relief; and (3) Congress' passage of the Prison Litigation Reform Act ("PLRA").

### 1. Congress is better positioned to create remedies in the context of chronic medical care in federal prisons

The "Judiciary is not undoubtedly better positioned than Congress to authorize a damages action" in the context of chronic medical care in federal prisons. *See Egbert*, 142 S. Ct. at 1805 (holding the same as to border security context because it implicates national security considerations). The provision of chronic medical care is a specialized activity requiring a high degree of training and qualification. In the prison context, the provision of such care is made all the

13

more multifaceted because it must coincide with the security demands and inherent limitations of the custody setting.  Given this constellation of circumstances, "the Judiciary is comparatively ill suited to decide whether a damages remedy against any [BOP medical provider] is appropriate." *Id*.

### 2.     Alternative Remedies Already Exist for Plaintiff

The Government has "provided alternative remedies for aggrieved parties in [Plaintiff's] position that independently foreclose a *Bivens* action here." *Egbert* at 1806.  The BOP's Administrative Remedy Program ("ARP") allows an inmate who believes they are receiving inadequate medical care to file a grievance to correct the issue.  *See* 28 C.F.R. § 542.10; *see also Egbert* at 1806 (holding that the U.S. Border Patrol's grievance procedure foreclosed a *Bivens* remedy and citing BOP's ARP as a special factor that made a *Bivens* claim unavailable in *Malesko*, 534 U.S. at 74); *Silva*, 2022 WL 3023684, at *4 (concluding that the availability of ARP alone was enough to bar the plaintiff's *Bivens* claim based on *Egbert's* reasoning).  "The [ARP] process is substantial; it contains its own statutes of limitations, filing procedures, and appeals process.  And prisoners may retain attorneys for assistance with the process." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (internal citation omitted).

Notably, with respect to federally incarcerated persons, by adding an administrative exhaustion requirement to the PLRA, see 42 U.S.C. § 1997e(a),

Congress incorporated the ARP into its scheme for resolving inmate disputes and decreasing the amount of litigation emanating from prisons. The ARP thus bears the endorsement of both the BOP and Congress as the proper means of addressing federal inmate complaints. Plaintiff's failure to exhaust his administrative remedies in this case is of little consequence as the Court has repeatedly explained, with respect to alternative processes, that "the absence of relief 'does not by any means necessarily imply that courts should award money damages.'" *Egbert*, 142 S. Ct. at 1808 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988). Rather, "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id*. at 1806 (2022).

Additionally, Congress has legislated extensively regarding the rights and protections of incarcerated persons but has never created the remedy Plaintiff now seeks from this Court. This factor alone should counsel hesitation. When Congress has legislated extensively on a topic but declined to create a damages remedy, "the silence of Congress is relevant" and suggests an intent not to create such a remedy. *Ziglar* at 1862. Relatedly, Congress's decision to delegate authority to an agency and insulate the agency's decision-making from judicial review also "mak[es] it less likely that Congress would want the Judiciary to interfere" by authorizing a *Bivens* remedy. *See id*. at 1858 (discussing contexts in which Congress has designed regulatory authority "in a guarded way").

15

Numerous aspects of the maintenance of federal prison institutions and the treatment, rights, and grievance procedures of persons incarcerated there are regulated by statute, including the provision of medical care. But despite mandating adequate medical care, Congress has never opted to create an individual capacity cause of action that permits federal prisoners to sue BOP healthcare providers when their services are perceived to fall short. Instead, Congress has delegated broad authority to the Attorney General over "[t]he control and management of Federal penal and correctional institutions[.]" 18 U.S.C. § 4001(b)(1).

The FTCA provides another alternative process that allows inmates to remedy past harm related to medical care by seeking damages from the United States. In fact, a negligence claim under the FTCA will often provide an inmate's best option to recover damages. Between the ARP, injunctive relief, and the FTCA, inmates in Plaintiff's position have multiple alternative processes to protect their interest in obtaining adequate medical care.

### 3. Congress' passage of the Prison Litigation Reform Act ("PLRA")

Rather than expand the scope of prisoner litigation, Congress passed the PLRA in 1995 to "limit litigation brought by prisoners." *Montcalm Pub. Corp. v. Virginia*, 199 F.3d 168, 171 (4th Cir. 1999); *see also Cagle v. Hutto*, 177 F.3d 253, 257 (4th Cir. 1999) (explaining that the PLRA is intended to "remove the federal

16

district courts from the business of supervising the day-to-day operation" of prisons). As multiple courts have noted, "Congress paid close attention to inmate constitutional claims when it enacted the [PLRA] of 1995," *Callahan*, 965 F.3d at 524, but did not create a "standalone damages remedy against federal jailers," *id.* (quoting *Ziglar*, 137 S. Ct. at 1865); *see also Butler v. Porter*, 999 F.3d 287, 294 (5th Cir. 2021) (observing the same and rejecting *Bivens* remedy). Congress has thus had opportunities to authorize Plaintiff's proposed *Bivens* claim when legislating on multiple subjects—including prison medical care and prisoner litigation—but has always declined. This suggests that it would be inappropriate for this Court to act in Congress's place by implying a remedy.

## V. DEFENDANT IS PROTECTED UNDER QUALIFIED IMMUNITY BECAUSE THERE WAS NO DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS

### A. General Principles of Qualified Immunity

The Supreme Court has held that federal executive officials, other than those performing adjudicatory or prosecutorial functions, are entitled to qualified good faith immunity from personal liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Butz v. Economou*, 438 U.S. 478 (1978). Qualified immunity sharply reduces retaliatory litigation and encourages government officers to act decisively; the doctrine thus promotes the "effective performance of [governmental] duties." *Davis v. Scherer*, 468 U.S. 183, 195 (1984).

17

The qualified immunity defense should always be raised in the first response to a civil suit, whether that response is an answer or a motion to dismiss. The most important reason is that the issue will be waived unless it is raised in the earliest motion. *Gomez v. Toledo*, 446 U.S. 635 (1980). *See also Horton v. California*, 496 U.S. 128 (1990). The qualified immunity defense shields all government officials except those who are either plainly incompetent or who knowingly violate the law. *Jeffers v. Gomez*, 240 F.3d 845 (9th Cir. 2001); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As long as a defendant government employee could reasonably have thought his actions were consistent with the rights he was alleged to have violated, the defendant federal employee is entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The Supreme Court established a two-step analysis to use when officers are alleged to have violated Constitutional rights. *Saucier v. Katz*, 533 U.S. 194 (2001). The analysis must be: (1) whether a Constitutional right would have been violated on the facts alleged, taken in the light most favourable to the party asserting the injury, and (2) if the violation is established, whether the right was clearly established in the specific context of the case. *Id*. at 201. A court will grant a government actor qualified immunity if the actor's conduct satisfies either prong of the two-step test for qualified immunity outlined by the Supreme Court in *Saucier*.

## B. Qualified Immunity for Law Enforcement Officers

For law enforcement officers, claims are barred, "insofar as the [agent's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Supreme Court noted that "[u]nder this [test], an official may be entitled to qualified immunity from suit even where he has violated a plaintiff's rights - if [those rights] were not then 'clearly established' or if a reasonable person in the official's position could have failed to appreciate that his conduct would violate them." *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985).

The qualified immunity standard focuses on: "the objective (albeit fact-specific) question whether a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [. . .] officers possessed." *Anderson*, 483 U.S. at 641. If so, the officer's actions are "objectively legally reasonable" and he or she is immune from suit. *Mitchell*, 472 U.S. at 526. The Supreme Court has instructed that in order to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

## C. Constitutional Violation Standard – Deliberate Indifference

It is well-established that the "government has an obligation to provide medical care for those whom it punishes by incarceration." *Hutchinson v. United*

19

*States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Accordingly, the Eighth Amendment's proscription against cruel and unusual punishment may be violated by an official's "deliberate indifference to the serious medical needs of a prisoner." *Estelle*, 429 U.S. at 104.  However, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-04).

To state a claim for deliberate indifference to a serious medical need, the prisoner must demonstrate: (1) that he or she suffered from a "serious medical condition of which the prison officials should have been aware;" and (2) that prison officials were "deliberately indifferent" to the prisoner's serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.  If an inmate establishes a serious medical need, then the inmate must show the prison official responded to the serious medical need with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391

20

F.3d 1051, 1060 (9th Cir. 2004). Specifically, deliberate indifference exists when a prison official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer*, 511 U.S. at 838. In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. *Wilson*, 501 U.S. at 302.

In sum, a determination of deliberate indifference requires that the plaintiff establish both: (1) the existence of a serious medical need which a reasonable doctor would find worthy of treatment, and (2) the purposeful act or failure to act on the part of the defendant so as to constitute an "unnecessary and wanton infliction of pain" which is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-106; *McGuckin,* 974 F.2d at 1059.

### D. Paramedic Nielsen Provided Appropriate Medical Care to Plaintiff and Was Not "Deliberately Indifferent"

Here, there are no factual allegations that Paramedic Nielsen personally committed any specific action or inaction that resulted in a constitutional violation. Rather, Plaintiff only makes vague and conclusory allegations. *E.g.* ECF 8 at 7 ("As of the date of this filing, [Plaintiff] still has not received treatment."). Plaintiff fails to articulate what specific injuries he sustained, what medical treatment he believes he should have received, and in what ways Paramedic

21

Nielsen failed to provide care. Such conclusory allegations are insufficient to support a *Bivens* claim. *See Hirano v. Sand Island Treatment Ctr.*, No. CV 20-00473 DKW-WRP, 2021 WL 54504, at *7 (D. Haw. Jan. 6, 2021) (dismissing claim where complaint did not plausibly allege personal involvement in any unconstitutional conduct). Here, outside of this one brief mention of inadequate care specifically by Paramedic Nielsen, Plaintiff appears to take issue with the overall care he received by FDC Honolulu medical personnel, housing unit managers, and executive staff as a whole.

Even if Plaintiff's statements are taken as true, both tests fail. Objectively, Plaintiff does not, and cannot show, that Paramedic Nielsen took any actions that deprived him of life's necessities. In fact, contrary to Plaintiff's assertion that FDC Honolulu denied him care, Plaintiff apparently sought and received medical care on numerous occasions after the physical altercation.

Further, Plaintiff fails to allege any facts showing that Defendant acted with subjective deliberate indifference. To the contrary, Plaintiff's FAC sounds in negligence. Unfortunately for Plaintiff, negligence does not rise to the level of a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (only deliberate indifference to serious medical needs, and not negligence such as the mere failure to provide medical care, implicates Eighth Amendment prohibition against cruel and unusual punishment).

22

## VI.   CONCLUSION

For the reasons stated above, Defendant Francis Nielsen, Paramedic at FDC

Honolulu, respectfully requests the Court dismiss this case with prejudice.

DATED:      January 13, 2023 at Honolulu, Hawaii.

CLARE E. CONNORS
United States Attorney
District of Hawaii


                    /s/ Harry Yee
By_____
      HARRY YEE
      Assistant U.S. Attorney

Attorneys for Defendants

23

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEKAI WATANABE, #94102-022, | Civil No. 22-00168 JAO-RT |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |
| v. | |
| ESTELA DERR, et al., | |
| Defendants. | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is a First Amended Prisoner Civil Rights Complaint

("FAC"), ECF No. 8, filed by pro se Plaintiff Kekai Watanabe ("Watanabe" or

"Plaintiff") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971).[1]  Watanabe alleges that four officials[2] at FDC

---

[1]  On May 19, 2021, Watanabe pleaded guilty to being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  *See United States v. Watanabe*, Cr. No. 21-00066 HG (D. Haw.), ECF Nos. 25, 29.  Watanabe is currently scheduled to be sentenced on October 6, 2022.  *See id.*, ECF No. 36. Watanabe is presently in custody at the Federal Detention Center in Honolulu, Hawaiʻi ("FDC Honolulu").  *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "94102-022" in "Number" field; and select "Search") (last visited August 2, 2022).

[2]  Watanabe names as Defendants Warden Estela Derr ("Warden Derr"), Unit
(continued . . .)

Honolulu violated the Eighth Amendment by threatening his safety and denying

him adequate medical care.  ECF No. 8 at 6–9.  After screening the FAC pursuant

to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), the Court again concludes that

Watanabe states a plausible denial of adequate medical care claim against Nurse

Nielsen in his individual capacity.  That claim shall be served and requires a

response.  Watanabe's remaining claims are DISMISSED without prejudice.

## I.  STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

*See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

---

(. . . continued)
Manager K. Robl ("Robl"), Staff Nurse Francis Nielsen ("Nielsen"), and Chief
Doctor Nathan Kwon ("Dr. Kwon") in their individual capacities.  ECF No. 8 at 1–
3.

this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.   **BACKGROUND**[3]

In 2021, Watanabe was housed in "unit 5A" at FDC Honolulu with members of various gangs including "Uso," "Murder Inc," "La Familia," "Paisa's," "Tango's," "MS-13," "Northeno," and "Soreno's." ECF No. 8 at 6–7. Unit 5A's inmate population also included "deportable aliens, pre-sentence inmates, pre-trial inmates, high security inmates through minimum security inmates[,] and inmates

---

[3] At screening, Watanabe's well-pleaded factual allegations are accepted as true. *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

that have pending orders for civil commitment due to psychiatric issues." *Id.* at 6. Watanabe has a "history of gang (Uso) affiliation," and Robl and other "staff at FDC Honolulu" were aware of this affiliation. *Id.*

On July 12, 2021, Watanabe was sitting at a table in unit 5A when four members of the Paisa's gang attacked him. *Id.* at 7. The disturbance eventually included more than 35 "combatants." *Id.* Watanabe was "severely beaten" during the disturbance by the four gang members who initially attacked him and also "other Latino gang members." *Id.* At one point, Watanabe was beaten by someone wielding a "lock in a sock." *Id.*

After order was restored in unit 5A, approximately 20 inmates including Watanabe were moved to the special housing unit ("SHU"). *Id.* Watanabe's injuries were "documented," and he was told "that he would be put on 'Sick Call.'" *Id.* At 8 p.m. on the day of the disturbance, Watanabe asked correctional officers Noni and Woodson (who are not named as defendants) to be seen by medical staff because he was experiencing "severe pain and headaches." *Id.* Watanabe described his symptoms to Nurse Nielsen, and Nielsen responded by telling Watanabe "'to stop being a cry baby.'" *Id.* Nielsen denied Watanabe's request to be taken to the hospital. *Id.*

Watanabe remained in the SHU for more than two months. *Id.* During this time, Watanabe "submitted multiple sick call and 'COP OUT' requests for medical

4

attention." *Id.* According to Watanabe, he was given "over the counter pain medication" but "no actual treatment." *Id.* Watanabe was later diagnosed with a "fractured [coccyx] with bone chips in soft tissue around his tailbone." *Id.* These injuries caused Watanabe "severe pain." *Id.* Upon his release from the SHU, Watanabe returned to unit 5A along with the other inmates involved in the July 12, 2021 disturbance. *Id.*

Watanabe alleges Dr. Kwon had an "opportunity to properly diagnose [his] injuries" between July 2021 and January 2022, but he failed to do so. *Id.* at 9. During this period, "Health Services ignored multiple request[s] for treatment." *Id.* When Health Services identified Watanabe's fractured coccyx in February 2022, it agreed to send Watanabe to a specialist. *Id.* According to Watanabe, he had submitted to Dr. Kwon "11 emails and COP OUTS" seeking medical attention. *Id.* at 8.

Watanabe commenced this action by signing the original Complaint on March 31, 2022. ECF No. 1 at 10. In the original Complaint, Watanabe alleged that Warden Derr, Robl, Nielsen, and Dr. Kwon violated the Eighth Amendment by threatening his safety and denying him adequate medical care. *Id.* at 6–8.

On May 19, 2022, the Court issued an Order Dismissing Complaint in Part with Partial Leave Granted to Amend. ECF No. 5. The Court concluded, in relevant part, that Watanabe failed to allege a plausible failure to protect claim

based on events either before or after the July 12, 2021 disturbance. *Id*. at 11–16. The Court further concluded that Watanabe stated a plausible denial of medical care claim against Nielsen but no other Defendant. *Id*. at 16–18. The Court gave Watanabe the choice of proceeding with his claim against Nielsen or filing an amended pleading that cured the deficiencies in his other claims. *Id*. at 20–21.

The Court received the FAC on July 7, 2022. ECF No. 8. In the FAC, Watanabe maintains that Warden Derr, Robl, Nielsen, and Dr. Kwon violated the Eighth Amendment by threatening his safety and denying him adequate medical care. *Id*. at 6–9. Watanabe seeks "$3,000,000 for pain and suffering at the hands of the Defendants." *Id.* at 11.

## III.  DISCUSSION

### A.  Legal Framework For *Bivens* Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 582 U.S. ___, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See Bivens*, 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied cause of action only twice. *See Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843,

6

1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[4] *Id.* (quoting *Malesko*, 534 U.S. at 68). Indeed, the

---

[4] The Supreme Court declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit

(continued . . .)

7

Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 596 U.S. ___, 142 S. Ct. at 1809 (citation omitted).

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action. *See Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018). If a claim is precluded, that is the end of the matter. If a claim is not precluded, courts then apply a two-step test.

At step one, courts determine whether a plaintiff is seeking a *Bivens* remedy in a new context. *See Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018). The context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1859. If the plaintiff is seeking a *Bivens* remedy in a new context, then courts proceed to the second step.

---

(. . . continued)
against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. ___, 137 S. Ct. 1843; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *see Hernandez v. Mesa*, 589 U.S. ___, 140 S. Ct. 739 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *see Egbert v. Boule*, 596 U.S. ___, 142 S. Ct. 1793 (2022).

8

At step two, courts may extend *Bivens* only if two conditions are met.  First, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'"  *Egbert*, 596 U.S. at ___, 142 S. Ct. at 1804 (citations omitted)).  "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."  *Id.* at ___, 142 S. Ct. at 1807.  "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Id.* at ___, 142 S. Ct. at 1803 (citation omitted).  "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy."  *Id.* (citation omitted).  Although the Supreme Court has yet to define "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857–58.

The Supreme Court has stated that this two-step test often resolves to a single question:  "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages

action to proceed.'" *Egbert*, 596 U.S. at ___, 142 S. Ct. at 1805 (citation omitted).

"Put another way, 'the most important question is who should decide whether to

provide for a damages remedy, Congress or the courts?'" *Id.* at ___, 142 S. Ct. at

1803 (citation omitted). "If there is a rational reason to think that the answer is

'Congress' — as it will be in most every case, no *Bivens* action may lie." *Id.*

(citation omitted). Thus, "if there is any reason to think that 'judicial intrusion'

into a given field might be 'harmful' or 'inappropriate,'" or "even if there is the

'*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens*

remedy." *Id.* at ___, 142 S. Ct. at 1805–06 (citations omitted).

## B.    Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and

forbids "cruel and unusual punishments." U.S. Const. amend. VIII; *see Sandoval*

*v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Although the

Constitution "'does not mandate comfortable prisons,'" it does not "permit

inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations

omitted). Prison officials, therefore, may not use excessive physical force against

prisoners, they "must ensure that inmates receive adequate food, clothing, shelter,

and medical care, and [they] must 'take reasonable measures to guarantee the

safety of the inmates.'" *Id.* (citations omitted).

### 1. Failure To Protect

Watanabe alleges in Count I that FDC Honolulu officials violated the Eighth Amendment because they failed to protect him from harm by other inmates.[5]  ECF No. 8 at 6–8.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a failure to protect claim.  The Court declines to decide whether Watanabe's failure to protect claims arise in a new context or if "special factors" caution against extending *Bivens* to those claims during screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, without briefing by the parties upon either a motion to dismiss or for summary judgment.  *See Williams v. Kobayashi*, Civ. No. 1:18-cv-00336 DKW-RLP, 2018 WL 5258614, at *7 (D. Haw. Oct. 22, 2018) (declining to decide during screening whether special factors

---

[5]  At various points, Watanabe alleges that Defendants violated Bureau of Prisons policies.  *See* ECF No. 8 at 6–8.  The Supreme Court has never recognized a *Bivens* cause of action for purported violations of BOP policies.  *See Islaam v. Kubicki*, 838 F. App'x 657, 661 (3d Cir. 2020).  Indeed, as one court has stated, "[t]o allow a damages remedy for violations of BOP policy that do not amount to unconstitutional conduct would exceed the bounds of judicial function."  *Id.* (citation omitted); *see also deWilliams v. Groves*, No. ED CV 17-356-GW (PLA), 2019 WL 994407, at *5 (C.D. Cal. Jan. 16, 2019) ("[T]he mere failure of a correctional officer to follow BOP rules, procedures, or policies does not rise to the level of a federal civil rights violation." (citation omitted)); *Williams v. Rios*, No. 1:10-cv-01207-AWI-GBC (PC), 2011 WL 1627177, at *3 (E.D. Cal. Apr. 28, 2011) ("[A] *Bivens* action must be founded upon a violation of constitutional rights, and a failure to adhere to administrative regulations does not equate to a constitutional violation." (internal quotation marks and citations omitted)).

11

cautioned against extending *Bivens* to substantive due process claims).

Even assuming the existence of a *Bivens* remedy, however, Watanabe fails to state a plausible claim. *See Hernandez*, 582 U.S. at ___, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy — is appropriate in many cases."); *Ansari v. Martinez*, 859 F. App'x 842, 842 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim." (citations omitted)).

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation marks and citation omitted). Prison officials, therefore, "have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks, alteration, and citation omitted).

A prison official violates the Eighth Amendment, however, only when two requirements are met. "First, the deprivation alleged must be objectively, sufficiently serious." *Id.* at 834 (citations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citation and footnote omitted). Second, the plaintiff must show deliberate indifference — that is, that

12

"the [prison] official kn[ew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### a. Prior To The July 12, 2021 Disturbance

Watanabe has not plausibly alleged that he faced a substantial risk of serious harm prior to July 12, 2021. Although prison officials housed in unit 5A various groups including "members from rival gangs," "deportable aliens," "pre-sentence inmates," "pre-trial inmates," "high security inmates through minimum security inmates," and inmates with "pending orders for civil commitment due to psychiatric issues," ECF No. 8 at 6, Watanabe has not plausibly alleged that there was a substantial risk of serious harm prior to July 12. For example, Watanabe does not allege that there was any gang-on-gang violence in unit 5A prior to July 12. Nor does he allege that his gang — that is, Uso — had previous issues with the Paisa's. Moreover, Watanabe has not plausibly alleged that he was specifically targeted for harm by Paisa's members because of his "history of gang . . . affiliation." *Id.* Indeed, it is unclear if the four attackers were motivated by Watanabe's gang membership or something else on July 12.

To the extent Watanabe is suggesting that housing members of different gangs together necessarily amounts to an Eighth Amendment violation, he is

mistaken. *See Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("[A]mong other problems, 'the number of gang members housed and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs.'" (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001) (alterations omitted)); *Wilson v. Pierce County*, Case No. 16-5455 RJB, 2017 WL 3876625 (W.D. Wash. Sept. 5, 2017) ("The Ninth Circuit has held that a jail's policy of housing rival gang members together does not amount to a per se violation of the Eighth Amendment." (citing *Labatad*, 714 F.3d at 1160)).

Even if prison officials knew both of Watanabe's historical affiliation with the Uso gang and that rival gangs were being housed together in unit 5A, this is not enough to satisfy the first requirement of a failure to protect claim. *See Murphy v. Shelby*, No. C 07-02299 JF (PR), 2009 WL 773499, at *4 (N.D. Cal. Mar. 23, 2009) ("Even assuming that Defendants knew that Plaintiff and [another inmate] were members of rival gangs, this information alone is not sufficient to raise the inference that putting them in the same cell would create a substantial risk of serious harm[.]").

Moreover, Watanabe has not plausibly alleged that any Defendant acted with deliberate indifference to his safety prior to July 12, 2021. Although Watanabe alleges that Warden Derr housed together "rival gang members," pretrial detainees,

14

and convicted inmates, and Robl placed "violent individuals" in the same housing

unit and, sometimes, in the same cell, ECF No. 8 at 8, he does not say how any

prison official knew of and disregarded an excessive risk to inmate safety.

Watanabe does not allege that he complained to any prison official about his

placement in unit 5A prior to July 12, nor does he allege that any other inmate

voiced concern about gang-on-gang violence prior to the July 12 disturbance.

At one point, Watanabe alleges that Warden Derr and Robl "discussed the

issue of housing rival gang members in the same units and cells with staff." *Id.*

Watanabe does not say, however, when this discussion allegedly occurred. He also

does not say what conclusion Warden Derr and Robl reached at the end of that

discussion. In short, Watanabe has not plausibly alleged that Warden Derr and

Robl knew of and disregarded an excessive risk to his safety prior to July 12

disturbance.

### b.    After The July 12, 2021 Disturbance

Watanabe appears to assert that his safety is currently threatened because

prison officials returned him to unit 5A after he spent two months in the SHU.

ECF No. 8 at 7.

Watanabe has not plausibly alleged that he currently faces a substantial risk

of serious harm in unit 5A. Watanabe does not allege that the four men who

attacked him on July 12 or anyone else has harmed him since he returned to unit

5A. Nor does he allege that anyone has attempted or even threatened to harm him.

Watanabe notes that two inmates in unit 5A — one a member of a

"Northeno gang" and the other a member of a "Hawaiian gang" — got into a fight

on March 24, 2022. *Id.* This single incident between two inmates, however, falls

short of showing a substantial risk of serious harm to Watanabe. *See Hudson v.*

*Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of

involuntary confinement of persons who have a demonstrated proclivity for

antisocial criminal, and often violent, conduct."). Indeed, nothing suggests that

these two inmates got into a fight because of their respective gang associations.

In addition, Watanabe has not plausibly alleged that a prison official is

acting with deliberate indifference to his safety. Watanabe does not allege that he

has ever complained to prison officials about his safety in unit 5A. Thus,

Watanabe has not alleged that any Defendant knows of the purported danger that

he faces. *See M.G. v. United States*, 603 F. App'x 616, 617 (9th Cir. 2015) ("To

plead deliberate indifference, [the plaintiff] must allege nonconclusory facts from

which we can infer defendants . . . actually knew of the danger [the plaintiff]

faced." (citations omitted)).

Watanabe's failure to protect claims in Count I are therefore DISMISSED

without prejudice.

16

## 2. Denial Of Adequate Medical Care

Watanabe alleges in Count II that he was denied adequate medical care following the July 12, 2021 disturbance. ECF No. 8 at 9.

As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care." *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted). "To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (some internal quotation marks and citation omitted). "If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks, brackets, and citation omitted). "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks, brackets, and citation omitted). "Deliberate indifference is a 'high legal standard' beyond malpractice or

gross negligence." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022)
(citation omitted).

### a.    Nurse Nielsen

Watanabe alleges that he was "severely beaten" by four members of the
Paisa's gang and "other Latino gang members" on July 12, 2021.  ECF No. 8 at 7.
During the attack, someone beat Watanabe with a "lock in a sock."  *Id.*  Later that
evening, Watanabe was suffering from "severe pain and headaches," and he asked
to be seen by medical staff.  *Id.*  Watanabe "discussed his medical condition" with
Nurse Nielsen, but Nielsen told him "'to stop being a cry baby.'"  *Id.*  Nielsen also
refused to send Watanabe to the hospital.  *Id.*

Months later, Watanabe was diagnosed with a fractured coccyx and "bone
chips in soft tissue around his tailbone."  *Id.*  These injuries caused Watanabe
"severe pain."  *Id.*  As the Court has already concluded, *see* ECF No. 5 at 17–18,
Watanabe's allegations plausibly state a denial of adequate medical care claim
against Nielsen in his individual capacity that may proceed.

### b.    Dr. Kwon

Watanabe also alleges in Count II that Dr. Kwon denied him adequate
medical care in the months after the July 12 disturbance.  ECF No. 8 at 9.

According to Watanabe, "[f]rom July through January 2022, [Dr. Kwon] had
an opportunity to properly diagnose [Watanabe's] injuries, but failed to do so."  *Id.*

Watanabe alleges that he submitted at least eleven informal complaints to Dr. Kwon. *Id.* at 8.

Watanabe does not say, however, when he submitted the informal complaints to Dr. Kwon or what he said in them. In addition, although Watanabe alleges that he "received no actual treatment," *id.* at 7, he acknowledges that he did receive over-the-counter pain medication. *Id.* Watanabe also admits that someone diagnosed his fractured coccyx and that Health Services agreed to send him to see a specialist. *Id.* at 7, 9. It is unclear if Dr. Kwon played a role in providing this care. Thus, Watanabe has not plausibly alleged that Dr. Kwon consciously disregarded a serious medical need. *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013) ("The indifference to a prisoner's medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this claim." (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)) (brackets and some internal quotation marks omitted). Watanabe's denial of adequate medical care claims against Dr. Kwon are therefore DISMISSED without prejudice.

## IV.   CONCLUSION

(1) Watanabe states a denial of adequate medical care claim in Count II against Nielsen in his individual capacity that may proceed.

19

(2) Watanabe's failure to protect claims in Count I and his other denial of adequate medical care claim in Count II are DISMISSED without prejudice. Dismissal of these claims does not foreclose Watanabe from later filing an amended pleading, subject to the requirements of Federal Rule of Civil Procedure 15 and any applicable orders of this Court.

(3) The United States Marshal is ORDERED to serve the FAC, ECF No. 8, and a summons on Defendant Francis Nielsen, in addition to the United States, as directed by Watanabe, according to the requirements of Federal Rule of Civil Procedure 4(i). After service is perfected, Defendant Nielsen shall file a responsive pleading within the time allowed under Fed. R. Civ. P. 12.

## V. <u>SERVICE ORDER</u>

IT IS HEREBY ORDERED:

(1) For Defendant Francis Nielsen, the Clerk is directed to send to Plaintiff: one copy of the FAC, ECF No. 8; one completed summons; one USM-285 form; one Notice of Lawsuit and Request for Waiver of Service of Summons form (AO 398); two Waiver of Service of Summons forms (AO 399); and an instruction sheet.

(2) For the United States, *see* Fed. R. Civ. P. 4(i)(3), the Clerk is directed to send to Plaintiff two additional copies of the FAC, ECF No. 8; two completed summonses; and two USM-285 forms.

(3)  The Clerk shall also send a copy of this Order to the U.S. Marshal at P.O. Box 50184, Honolulu, HI 96850.

(4)  For Defendant Nielsen, Plaintiff shall complete the forms as directed and submit the following documents to the U.S. Marshal in Honolulu, Hawaiʻi:  a completed USM-285 form; a copy of the FAC, ECF No. 8; the completed summons; a completed Notice of Lawsuit and Request for Waiver of Service of Summons form (AO 398); and two completed Waiver of Service of Summons forms (AO 399).  For the United States, Plaintiff shall complete the forms as directed and submit to the U.S. Marshal: two completed USM-285 forms; two copies each of the FAC, ECF No. 8; and the two completed summonses.

(5)  Upon receipt of these documents from Plaintiff, the U.S. Marshal shall mail to Defendant Nielsen:  a copy of the FAC, ECF No. 8; a completed Notice of Lawsuit and Request for Waiver of Service form (AO 398); and two completed Waiver of Service of Summons forms (AO 399), as directed by Plaintiff without payment of costs.  *See* Fed. R. Civ. P. 4(c)(3).  The U.S. Marshal shall deliver a copy of the completed summons, the FAC, ECF No. 8, to the United States Attorney for the District of Hawaii and the Attorney General of the United States as directed by Plaintiff without payment of costs.

(6)  For Defendant Nielsen, the U.S. Marshal shall retain the completed summons and a copy of the FAC, ECF No. 8.  The U.S. Marshal shall file a

returned Waiver of Service of Summons form as well as any Waiver of Service of Summons form that is returned as undeliverable, as soon as it is received.

(7)  If Defendant Nielsen does not return a Waiver of Service of Summons form within sixty days from the date that such forms are mailed, the U.S. Marshal shall:

a.  Personally serve such Defendant pursuant to Federal Rule of Civil Procedure 4 and 28 U.S.C. § 566(c).

b.  Within ten days after personal service is effected, file the return of service for such Defendant, along with evidence of any attempts to secure a waiver of service of summons and of the costs subsequently incurred in effecting service. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the U.S. Marshal's office in photocopying additional copies of the summons, the FAC, and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served Defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2).

(8)  Plaintiff is cautioned that if he fails to comply with this Order and his non-compliance prevents timely and proper service as set forth in Federal Rule of Civil Procedure 4(m), this action is subject to dismissal for failure to serve.

(9)  Defendant Nielsen shall file a responsive pleading to the FAC, ECF No. 8, within the time set forth in Federal Rule of Civil Procedure 12.

(10)  Plaintiff shall inform the Court of any change of address by filing a "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(11)  After the FAC, ECF No. 8, is served and Defendant Nielsen has filed an answer or responsive pleading, Plaintiff's documents are deemed served when they are electronically filed by the court.  The United States Marshal is not responsible for serving these documents on Plaintiff's behalf.

(12)  Until the FAC, ECF No. 8, is served and Defendant Nielsen or his attorneys file a notice of appearance, Plaintiff SHALL NOT FILE MOTIONS OR OTHER DOCUMENTS with the Court.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, August 2, 2022.



Jill A. Otake
United States District Judge

*Watanabe v. Derr, et al.*, Civil No. 22-00168 JAO-RT; ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

23

074

ORIGINAL

*cc. Filed only*
*Per Chambers.*

1983 FORM Rev. 01/2008

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 07 2022

at 11 o'clock and 00 min. A M
CLERK, U.S. District Court
LS

Kekai Watanabe Reg. No.: 94102-022
Name and Prisoner/Booking Number
FDC Honolulu
Place of Confinement
P.O. Box 30080
Mailing Address
Honolulu, Hawaii 98620
City, State, Zip Code

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

Kekai Watanabe
(Full Name of Plaintiff)

**Case No.** CV22 00168 JAO RT
(To be supplied by the Clerk)

vs.

Estela Derr

Mr. K. Robl

Nurse Nielsen (Francis)

Dr. Kwon (Nathan)
(Full Names of Defendants; DO NOT USE *et al.*)

**PRISONER CIVIL RIGHTS COMPLAINT**

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

### A. JURISDICTION

1. Jurisdiction is invoked pursuant to:

   a. ☐ 28 U.S.C. § 1343(a)(3) ; 42 U.S.C. § 1983
   b. ☒ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)
   c. ☐ Other: (Please Specify) _____

2. Plaintiff: Kekai Watanabe

   Institution/city where violation occurred: FDC Honolulu

3. First Defendant *: Estela Derr

This defendant is a citizen of (state and county) Hawaii          Oahu          ,
and is employed as:

Warden                              at     FDC Honolulu                    .
(Position and Title)                              (Institution)
This defendant is sued in his/her  X  individual ___ official capacity (check one or both).  Explain how



1

075



1983 FORM Rev. 01/2008

this defendant was acting under color of law:
The Defendant is the warden of FDC Honolulu and has institutued policies in

violation of US law and BOP policy

4.  Second Defendant: Mr. K. Robl

This defendant is a citizen of (state and county) __Hawaii__
Oahu _____, and is employed as:

Init Manager _____ at ____ FDC Honolulu ____
(Position and Title)                              (Institution)

This defendant is sued in his/her _X_ individual ___ official capacity (check one or both).  Explain how
this defendant was acting under color of law:

The Defendant was/is the Unit Manager for FDC Honolulu's Unit 5A and is

responsible for the placement of inmates on his unit.

5.  Third Defendant: ____ Nurse Nielsen (Francis) ____

This defendant is a citizen of (state and county) __Hawaii__
Oahu _____, and is employed as:

Staff Nurse _____ at ____ FDC Honolulu ____
(Position and Title)                              (Institution)

This defendant is sued in his/her _X_ individual ___ official capacity (check one or both).  Explain how
this defendant was acting under color of law:
The Defendant is a staff nurse at FDC Honolulu and was responsible for the care

of the Plaintiff.

(If you would like to name additional defendants, make a copy of this (blank) page and provide the necessary information.)

*       A defendant may be named in an individual or official capacity, or both.  To sue a defendant in their **individual
capacity**, you must be able to state facts showing that the defendant was underlined(actually) involved in violating your rights.  A suit
against a defendant in their **official capacity** is in reality a suit against the underlined(office or position) the defendant holds.  Only
injunctive relief is available in an official capacity suit against a state official.  This is because the **Eleventh Amendment**
confers immunity upon the state or its officials against monetary damages resulting from federal court litigation.

        "Color of law" refers to whether the person is a private party or an employee, official, or agent of a state, county,
city, or the federal government.  There can be no civil rights action under § 1983 unless the defendant was "acting under color
of law."  After the color of law requirement is met, then it must be determined in which capacity the defendant is being sued.

2

Fourth Defendant: Dr. Kwon (Nathan)

The defendant is a citizen of the state of Hawaii and the county of Oahu.
The defendant is employed as teh chief doctor at FDC Honolulu.

The defendant is sued in his individual capacity. The defendant was acting
under the color of law by: his position as chief physician at FDC Honolulu
and is responsible for not only Health Services operation, but specifically
denying the Plaintiff medical treatment.

Page 2A

1983 FORM Rev. 01/2008

## B. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits while a prisoner:     ☐ Yes     ☒ No

2. If your answer is yes, how many?: _____ Describe the lawsuit in the spaces below.

3. First previous lawsuit:

   a.   Plaintiff _____

        Defendants _____

   b.   Court and Case Number (if federal court, identify the district; if state court, identify the county):

        _____

   c.   Claims raised: _____

   d.   Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

        _____

   e.   Approximate date of filing lawsuit _____

   f.   Approximate date of disposition _____

4. Second previous lawsuit:

   a.   Plaintiff _____

        Defendants _____

   b.   Court and Case Number (if federal court, identify the district; if state court, identify the county):

        _____

   c.   Claims raised: _____

   d.   Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

        _____

   e.   Approximate date of filing lawsuit _____

   f.   Approximate date of disposition _____

3

1983 FORM  Rev. 01/2008

5.  Third previous lawsuit:

a.   Plaintiff _____

     Defendants _____

b.   Court and Case Number (if federal court, identify the district; if state sourt, identify the county):

     _____

c.   Claims raised: _____

d.   Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

     _____

e.   Approximate date of filing lawsuit _____

f.   Approximate date of disposition _____

(If you have filed more than three lawsuits, make a copy of this (blank) page and provide the necessary information.)

6.    Have you filed any actions in federal court that were dismissed because they were frivolous, malicious, or failed to state a claim upon which relief could be granted? ___ Yes _X_ No.

      **If you have had three or more previous federal actions dismissed for any of the reasons stated above, you may not bring another civil action in forma pauperis unless you are under imminent danger of serious physical injury.  See 28 U.S.C. § 1915(g).**

4

1983 FORM Rev. 01/2008

## C. CAUSE OF ACTION

### COUNT I

1. The following constitutional or other federal civil right has been violated by the Defendant(s):
8th Amendment protection against cruel and unusual punishment.

2. Count I involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count) ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☒ Threat to safety ☐ Other:_____

3. **Supporting Facts:** (State as briefly as possible the FACTS supporting Count I, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

The Plaintiff is a Pre-Sentenced inmate housed in unit 5A at FDC Honolulu.

The Plaintiff has a history of gang (Uso) affiliation known to the Bureau of

Prisons and specifically the staff at FDC Honolulu and the Unit 5A Manager

Defendant K. Robl. Unit 5A includes gang members from rival gangs both

domestic (Uso, Murder Inc and La Familia) and international (Paisa's, Tango's

MS-13, Northeno and Soreno's). This is violation of US law and well as Bureau

of Prisons policy. The unit also includes 45 deportable aliens, pre-sentence

inmates, pre-trial inmates, high security inmates through minimum security

inmates and inmates that have pending orders for civil commitment due to

psychiatric issues. Again, US law (which cannot be specifically quoted due

***CONTINUED ON PAGE 5A***

4. Injury: (State how you have been injured by Defendant(s)' actions or inactions.
Fractured cocyx and other injuries that the Plaintiff is waiting to be

sent out to a specialist for determination.

5

COUNT I SUPPORTING FACTS CONTINUED

to filing limitations) does not permit the mixing of these inmates. However, Defendant Derr (FDC warden) has allowed this to not only be established, but has continued this practice after a major gang riot.

On July 12, 2021, while sitting at a table in unit 5A, the Plaintiff was attacked by 4 members of the Mexican gang the Paisa's. The incident ultimately involved more than 35 combatants. The Plaintiff was severely beaten by not only the 4 Paisa's that originally attacked him, but other Latino gang members. During the altercation several of the Paisa's returned to their cells for weapons and rejoined the riot. One of these weapons was a combination lock that was placed in a sock (known as a lock in a sock). Local Hawaiian inmates were beaten with these types of weapons including the Plaintiff. The Bureau of Prisons is aware of this tactic and knows full well that many inmates have been killed when beaten with this weapon.

When order was temporarily restored, approximately 20 inmates went to the SHU including the Plaintiff. The Plaintiff's injuries (known or visable at the time) were documented and he was told that he would be put on "Sick Call". The Plaintiff was not sent to the hospital. At 8PM on July 12, 2021 while in the SHU, the Plaintiff was suffering from severe pain and headaches and asked to be seen by medical staff. The Plaintiff discussed this with FDC Honolulu SHU C.O.'s Noni and Woodson. When the Plaintiff first discussed his medical condition with Defendant Nielsen, Defendant Nielsen told him "to stop being a cry baby". When the Plaintiff asked Defendant Nielsen to be taken to the hospital, Defendant Nielsen said "you are not going to the hospital".

The Plaintiff stayed in the SHU for more than 2 months, which was longer that anyone else involved in the July 12, 2021 riot. During that time, the Plaintiff submitted multiple sick call and "COP OUT" requests for medical attention. The medical atten- was limited to over the counter pain medication and he received no actual treatment. As of the date of this filing, he still has not received treatment.

When the Plaintiff was released from the SHU he was sent back to unit 5A. This was the case with all of the combatants of the July 12, 2021 riot, again contrary to both BOP policy and US law. The makeup of the population poses not only a threat to the Plaintiff, but all inmates on the unit. As recently as March 24, 2022 another fight between a Northeno gang member and a Hawaiian gang member took place on the unit.

The Plaintiff was eventually diagnosed months later with a fractured cocyx with bone chips in soft tissue around his tailbone causing severe pain.

The Plaintiff names each Defendant in their individual capacity as each violated not only US law, but also Bureau of Prisons Policy Statements. The Plaintiff specifically alleges that Defendant Estela Derr directed staff to house house rival gang members with both pretail and convicted individuals. This action directly lead to the riot that injured the Plaintiff. The Plaintiff specifically alleges that Defendant Robl actively placed violent individuals that are required to be separated from other inmates (per US law and Bureau of Prisons Policy statement 7331.04) not only in the same unit, but in some cases, in the same cells. The Plaintiff intends to depose Unit 5A staff Correctional Officers that will confirm the Plaintiff's allegations regarding Defendant Robl.

The Plaintiff specifically alleges that both Defendant's Robl and Derr discussed the issue of housing rival gang members in the same units and cells with staff. These discussions centered around the threat that this type of housing posed. If the face of the obvious threat to the safety of inmates, both Defendant Derr and Defendant Robl chose (and continue to choose) to maintain the same policy.

The Plaintiff alleges that the entire SIS Gang Investigation Staff at FDC Honolulu knew, and knows, about the risk that housing rival gang members in the same unit poses. These individuals include, but are not limited to: Lt. Bautista, Lt. Hellman, Capt. Munoz, SIS Investigator Miranda and Lt. Tabar. The Plaintiff intends to depose these these individuals as well as subpoena FDC Honolulu records to confirm the fact that the entire FDC Honolulu staff as well as Defendants Derr and Robl were well aware of the risk that the Defendants actions posed to the Plaintiff as well as all other inmates at FDC Honolulu.

Dr. Know received no less than 11 emails and COP OUTS from the PLaintiff seeking medical attention. All were ignored by Defendant Kwon. The emails that the Plaintiff sent were done so through the FDC Honolulu Staff Request system and can and will be subpoenaed by the Plaintiff to file with the Court.

Page 5B

1983 FORM Rev. 01/2008

## COUNT II

1. The following constitutional or other federal civil right has been violated by the Defendant(s):
8th Amendment protection against cruel and unusual punishment

2. Count II involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count) ☐Mail ☐ Access to the court ☒Medical care ☐ Disciplinary proceedings ☐Property ☐ Exercise of religion ☐Retaliation ☐ Excessive force by an officer ☐Threat to safety ☐Other:_____

3. **Supporting Facts:**(State as briefly as possible the FACTS supporting Count II, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

Defendant Nielsen violated the Plaintiff's Constitutional rights by denying

him proper medical treatment that would have properly diagnosed and treated

his injury. The violation of his rights by Defendant Nielsen were made worse

by his dismissive taunting of the Plaintiff while he was begging for medical

assistance. From July through January 2022, Defendant Kwon had an opportunity

to properly diagnose the Plaintiff's injuries, but failed to so. Instead

Health Services ignored multiple request for treatment and only in late February

finally acknowledged the fracture of the cocyx and agreed to send the Plaintiff

to a specialist. The Defendant's (Derr) response to the Plaintiff's Administrative

Remedy (BP-9) acknowledged the injury occured during the riot that she propogated

but falsely states that the Plaintiff has received treatment which he has not.

4. Injury: (State how you have been injured by Defendant(s)' actions or inactions.
Severe pain and suffering due to a lack of treatment.

6

1983 FORM Rev. 01/2008

## COUNT III

1.  The following constitutional or other federal civil right has been violated by the Defendant(s):

_____

_____

2.  Count III involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count)  ☐ Mail  ☐ Access to the court  ☐ Medical care
    ☐ Disciplinary proceedings  ☐ Property  ☐ Exercise of religion  ☐ Retaliation
    ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3. **Supporting Facts:** (State as briefly as possible the FACTS supporting Count III, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

4.  Injury: (State how you have been injured by Defendant(s)' actions or inactions.

_____

_____

(If you assert more than three Counts, make a copy of this (blank) page and provide the necessary information.)

1983 FORM Rev. 01/2008

## D. REQUEST FOR RELIEF

State briefly exactly what you want the Court to do for you.  Make no legal arguments.  Cite no cases or statutes.

$3,000,000 for pain and suffering at the hands of the Defendants.

_____

_____

_____

_____

_____

_____

_____

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. See 28 U.S.C. § 1746 and 18 U.S.C. §1621.

Signed this __2nd__ day of __July_____, __2022__.
                        (month)          (year)

_____
           (Signature of Plaintiff)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If needed, you may attach no more than **fifteen (15) additional pages**.  Number these pages in relation to the final page number of the section that is being extended (i.e. additional defendants' pages should be numbered "2A, 2B, etc.," additional previous lawsuits' pages "4A, 4B, etc.," additional claims should be numbered "7A, 7B, etc." This form, however, must be completely filled in to the extent applicable.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEKAI WATANABE, #94102-022, | Civil No. 22-00168 JAO-RT |
| Plaintiff, | ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE GRANTED TO AMEND |
| v. | |
| ESTELA DERR, et al., | |
| Defendants. | |

## ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE GRANTED TO AMEND

Before the Court is a Prisoner Civil Rights Complaint ("Complaint"), ECF

No. 1, filed by pro se Plaintiff Kekai Watanabe ("Watanabe") pursuant to *Bivens v.*

*Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971).[1] Watanabe alleges that four officials[2] at the Federal Detention Center in

Honolulu, Hawai'i ("FDC Honolulu") violated the Eighth Amendment by

---

[1] On May 19, 2021, Watanabe pleaded guilty to being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See United States v. Watanabe*, Cr. No. 21-00066 HG (D. Haw.), ECF Nos. 25, 29. Watanabe is currently scheduled to be sentenced on October 6, 2022. *See id.*, ECF No. 36.

[2] Watanabe names as Defendants Warden Estela Derr ("Warden Derr"), Unit Manager K. Robl ("Robl"), Staff Nurse Nielsen ("Nielsen"), and Chief Physician Dr. Kwon ("Dr. Kwon") in their individual and official capacities. ECF No. 1 at 1–3.

threatening his safety and denying him adequate medical care.  ECF No. 1 at 6–8.

After screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b),

the Court concludes that Watanabe states a plausible denial of adequate medical

care claim against Nurse Nielsen in his individual capacity.  Watanabe's remaining

claims are DISMISSED with partial leave granted to amend.

## I.      STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

*See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted).  A claim is

"plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.   BACKGROUND[3]

Watanabe commenced this action by signing the Complaint on March 31, 2022. ECF No. 1 at 10. Watanabe alleges in Count I that the Bureau of Prisons ("BOP") and Robl, a unit manager at FDC Honolulu, were aware of Watanabe's "history of gang (Uso) affiliation." *Id.* at 6. Watanabe has been housed at FDC Honolulu in "unit 5A" alongside members of several "rival gangs" including "Murder Inc," "La Familia," "Paisa's," "Tango's," "MS-13," "Northeno," and "Soreno's." *Id.*

---

[3]  At screening, Watanabe's well-pleaded factual allegations are accepted as true. *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

On July 12, 2021, Watanabe was sitting at a table in unit 5A when four members of the Paisa's gang attacked him.  *Id.* at 7.  The disturbance grew to include more than 35 individuals.  *Id.*  Watanabe was "severely beaten" during the disturbance by the four gang members who initially attacked him and "other Latino gang members."  *Id.*  At one point, Watanabe was beaten by someone wielding a "lock in a sock."  *Id.*

After order was restored in unit 5A, Watanabe along with approximately 20 other inmates were moved to the special housing unit ("SHU").  *Id.*  Watanabe's injuries were "documented," and he was told "that he would be put on 'Sick Call.'"  *Id.*  At 8 p.m. on the day of the disturbance, Watanabe asked correctional officers Noni and Woodson (who are not named as defendants) to be seen by medical staff because he was experiencing "severe pain and headaches."  *Id.*  Watanabe described his symptoms to Nurse Nielsen, and Nielsen responded by telling Watanabe "'to stop being a cry baby.'"  *Id.*  Nielsen denied Watanabe's request to be taken to the hospital.  *Id.*

Watanabe remained in the SHU for more than two months.  *Id.*  During this time, Watanabe "submitted multiple sick call and 'COP OUT' requests for medical attention."  *Id.*  According to Watanabe, he was given "over the counter pain medication" but "no actual treatment."  *Id.*  Watanabe was later diagnosed with a "fractured [coccyx] with bone chips in soft tissue around his tailbone."  *Id.*  These

4

injuries caused Watanabe "severe pain." *Id.* Upon his release from the SHU, Watanabe returned to unit 5A along with the other inmates involved in the July 12, 2021 disturbance. *Id.*

Watanabe alleges in Count II that Dr. Kwon had an "opportunity to properly diagnose [his] injuries" between July 2021 and January 2022, but he failed to do so. *Id.* at 8. During this period, "Health Services ignored multiple request[s] for treatment." *Id.* When Health Services identified Watanabe's fractured coccyx in February 2022, Watanabe was sent to see a specialist. *Id.*

Watanabe seeks three million dollars and "an Order against [Defendant] Derr to follow United States law regarding the housing of federal inmates based on gang affiliation and determined security levels." *Id.* at 10.

## III.  DISCUSSION

### A.  Legal Framework For *Bivens* Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 582 U.S. ___, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See Bivens*, 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied

cause of action only twice. *See Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[4] *Id.* (quoting *Malesko*, 534 U.S. at 68). Indeed, the

---

[4]  The Supreme Court declined to create a *Bivens* remedy in the following cases:  a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination,  *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); an Eighth Amendment

(continued . . .)

6

Court has suggested that "the analysis in [its] three *Bivens* cases might have been different if they were decided today." *Id.* at ___, 137 S. Ct. at 1856.

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action. *See Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018). If a claim is precluded, that is the end of the matter. If a claim is not precluded, courts then apply a two-step test.

At step one, courts determine whether a plaintiff is seeking a *Bivens* remedy in a new context. *See Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018). The context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1859. If the plaintiff is seeking a *Bivens* remedy in a new context, then courts proceed to the second step.

At step two, courts may extend *Bivens* only if two conditions are met. "First, the plaintiff must not have any other adequate alternative remedy." *Ioane*, 939 F.3d at 951 (internal quotation marks and citation omitted). "Second, there

---

(. . . continued)
suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); and a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. ___, 137 S. Ct. 1843.

7

cannot be any 'special factors' that lead the court to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." *Id.* at 951–52 (some internal quotation marks, brackets, and citation omitted). Although the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857–58.

## B.    Official Capacity Claims Under *Bivens*

Watanabe names the Defendants in both their individual and official capacities. *See* ECF No. 1 at 1–3.

"A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted). "This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.* (citation omitted). Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor

8

in his or her official capacity."  *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir.

2016) (internal quotation marks and citation omitted).

Any *Bivens* claims against Defendants in their official capacities are

therefore DISMISSED with prejudice.

## C.     Supervisory Liability

Watanabe names as Defendants three supervisory officials at FDC Honolulu

— that is, the warden, a unit manager, and the chief physician.  ECF No. 1 at 1–3.

"In the limited settings where *Bivens* does apply, . . . Government officials

may not be held liable for the unconstitutional conduct of their subordinates under

a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676 (citations omitted).  This

is because "[t]he purpose of *Bivens* is to deter the *officer*."  *Abbasi*, 582 U.S. at

___, 137 S. Ct. at 1860 (internal quotation marks and citation omitted).  "*Bivens* is

not designed to hold officers responsible for acts of their subordinates."  *Id.*

(citation omitted).

A *Bivens* claim must be "brought against the individual official for his or her

own acts, not the acts of others."  *Id.*; *see also Jones v. McFadden*, No. 1:09–cv–

00957–DLB (PC), 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a

named defendant holds a supervisorial position, the causal link between him and

the claimed constitutional violation must be specifically alleged." (citations

omitted)).  Thus, to state a claim for relief under *Bivens* based on a theory of

9

supervisory liability, the plaintiff must allege facts showing that supervisory defendants:

> (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

*Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks and other citation omitted).

Any claims against Warden Derr, Robl, Dr. Kwon solely based on their supervisory positions are DISMISSED with prejudice. *See Fries v. Kernan*, Case No. 1:18-cv-00652-LJO-SKO (PC), 2018 WL 11260954, at *8 (E.D. Cal. Dec. 5, 2018) ("[A]ny allegation that supervisory personnel . . . somehow liable solely based on the acts of those under his or her supervision, does not state a cognizable claim."). For a claim against Warden Derr, Robl, or Dr. Kwon to proceed, Watanabe must plausibly allege that each one of them violated his rights through their own actions. *See Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) ("*Bivens* claims cannot proceed on a theory of *respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,' violated the Constitution." (citation omitted)).

## D.    Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (citations omitted).

### 1.    Failure To Protect

Watanabe alleges in Count I that FDC Honolulu officials have failed to protect him from harm by members of "rival gangs."  ECF No. 1 at 6.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a threat to safety claim.  The Ninth Circuit, however, has allowed a *Bivens* claim under the Eighth Amendment for a federal prison official's deliberate indifference to prisoner safety.  *See Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018) ("[T]hese allegations are sufficient to state a deliberate indifference to safety claim." (citation omitted)).  Several district courts have also recognized failure to protect claims under *Bivens*.  *See McDaniels v.*

11

*United States*, No. 5:14-cv-02594-VBF-JDE, 2018 WL 7501292, at *5–6 (C.D. Cal. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *7–8 (E.D. Cal. Oct. 26, 2018) (concluding that a failure to protect claim was not a *Bivens* expansion); *Marquez v. United States*, Case No.: 3:18-cv-0434-CAB-NLS, 2018 WL 1942418, at *4 (S.D. Cal. Apr. 25, 2018).

Even assuming the existence of a *Bivens* remedy, Murphy fails to state a plausible claim. *See Hernandez*, 582 U.S. at ___, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy — is appropriate in many cases."); *Ansari v. Martinez*, 859 F. App'x 842, 842 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim." (citations omitted)).

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation marks and citation omitted). Prison officials, therefore, "have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks, alteration, and citation omitted).

A prison official violates the Eighth Amendment, however, only when two requirements are met.  "First, the deprivation alleged must be objectively, sufficiently serious."  *Id.* at 834 (citations omitted).  "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* (citation and footnote omitted).  Second, the plaintiff must show deliberate indifference — that is, that "the [prison] official kn[ew] of and disregard[ed] an excessive risk to inmate . . . safety."  *Id.* at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

### a.  Prior To The July 12, 2021 Disturbance

Watanabe has not plausibly alleged that he faced a substantial risk of serious harm prior to July 12, 2021.  Although prison officials housed "rival gangs" together in unit 5A, Watanabe does not allege that there was a credible threat of rival gang violence prior to July 12.  For example, Watanabe does not allege that his gang — that is, Uso — had previous issues with the Paisa's, nor does Watanabe allege that he was specifically targeted for harm by Paisa's members because of his "history of gang . . . affiliation."  ECF No. 1 at 6.  Indeed, it is unclear if the four attackers were motivated by Watanabe's gang membership or something else.

To the extent Watanabe is suggesting that housing different gangs together necessarily amounts to an Eighth Amendment violation, he is mistaken. *See Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("[A]mong other problems, 'the number of gang members housed and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs.'" (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001) (alterations omitted)); *Wilson v. Pierce County*, Case No. 16-5455 RJB, 2017 WL 3876625 (W.D. Wash. Sept. 5, 2017) ("The Ninth Circuit has held that a jail's policy of housing rival gang members together does not amount to a per se violation of the Eighth Amendment." (citing *Labatad*, 714 F.3d at 1160)).

Moreover, Watanabe has not plausibly alleged that any Defendant acted with deliberate indifference to his safety prior to July 12, 2021. Watanabe does not say how any prison official knew of a substantial risk of gang violence and disregarded that risk. Watanabe does not allege that he complained to any prison official about his placement in unit 5A prior to July 12, nor does he allege that any inmate voiced concern about gang-on-gang violence prior to the July 12 disturbance. Even if prison officials knew both of Watanabe's historical affiliation with the Uso gang and that rival gangs were being housed together in unit 5A, that is not enough. *See Murphy v. Shelby*, No. C 07-02299 JF (PR), 2009 WL 773499, at *4 (N.D. Cal.

14

Mar. 23, 2009) ("Even assuming that Defendants knew that Plaintiff and [another inmate] were members of rival gangs, this information alone is not sufficient to raise the inference that putting them in the same cell would create a substantial risk of serious harm[.]").

### b. After The July 12, 2021 Disturbance

Watanabe alleges that he remained in the SHU for more than two months after the July 12, 2021 disturbance. ECF No. 1 at 7. Prison officials then returned Watanabe to unit 5A. *Id.*

Watanabe has not plausibly alleged that he currently faces a substantial risk of serious harm in unit 5A. Watanabe does not allege that the four men who attacked him on July 12 or anyone else has harmed him since he returned to unit 5A. Nor does he allege that anyone has attempted or even threatened to harm him.

Watanabe notes that two inmates in his unit — one a member of a "Northeno gang" and the other a member of a "Hawaiian gang" — got into a fight on March 24, 2022. *Id.* This single incident between two inmates, however, falls short of showing a substantial risk of serious harm to Watanabe. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct."). Indeed, nothing suggests that these two inmates got into a fight because of their respective gang associations.

15

In addition, Watanabe has not plausibly alleged that a prison official is acting with deliberate indifference to his safety. Watanabe does not allege that he has complained to prison officials about his safety in unit 5A. Thus, Watanabe has not alleged that a prison official knows of the danger he is purportedly facing. *See M.G. v. United States*, 603 F. App'x 616, 617 (9th Cir. 2015) ("To plead deliberate indifference, [the plaintiff] must allege nonconclusory facts from which we can infer defendants . . . actually knew of the danger [the plaintiff] faced." (citations omitted)).

Watanabe's failure to protect claim is therefore DISMISSED with leave granted to amend.

### 2. Denial Of Adequate Medical Care

Watanabe alleges in Count II that he was denied adequate medical care following the July 12, 2021 disturbance. ECF No. 1 at 8.

As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care." *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted). "To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757,

16

785 (9th Cir. 2019) (per curiam) (some internal quotation marks and citation omitted). "If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks, brackets, and citation omitted). "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks, brackets, and citation omitted). "Deliberate indifference is a 'high legal standard' beyond malpractice or gross negligence." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

### a. Nurse Nielsen

Watanabe alleges that he was "severely beaten" by four members of the Paisa's gang and "other Latino gang members" on July 12, 2021. ECF No. 1 at 7. During the attack, someone beat Watanabe with a "lock in a sock." *Id.* Later that evening, Watanabe was suffering from "severe pain and headaches," and he asked to be seen by medical staff. *Id.* Watanabe "discussed his medical condition" with Nurse Nielsen and "begg[ed] for medical assistance," but Nielsen told him "to stop being a cry baby." *Id.* at 7–8. Nielsen also refused to send Watanabe to the hospital. *Id.* at 7.

17

Months later, Watanabe was diagnosed with a fractured coccyx and "bone chips in soft tissue around his tailbone." *Id.* These injuries caused Watanabe "severe pain." *Id.* Construed liberally, Watanabe's allegations plausibly state a denial of adequate medical care claim against Nielsen in his individual capacity that may proceed.

### b. Other Prison Officials

Watanabe also alleges that he submitted "multiple sick call and 'COP OUT' requests for medical attention" during the over two months that he spent in the SHU. *Id.* Watanabe, however, fails to say what he said in these requests, to whom he submitted them, and what he was told in response. To the extent Watanabe alleges that Dr. Kwon "had an opportunity to properly diagnose [his] injuries, but failed to do so," *id.* at 8, Watanabe fails to say what interactions, if any, he had with Dr. Kwon. Moreover, although Watanabe alleges that he "received no actual treatment," *id.* at 7, he acknowledges that he was given over-the-counter pain medication and that he was sent to a specialist once his fractured coccyx was diagnosed, *id.* at 7–8. Thus, Watanabe has not plausibly alleged that any other prison official consciously disregarded a serious medical need. Watanabe's denial of adequate medical care claims against any Defendant other than Nielsen are therefore DISMISSED with leave granted to amend.

18

## E.    Injunctive Relief Under *Bivens*

In his request for relief, Watanabe seeks three million dollars and "an Order against [Warden] Derr to follow United States law regarding the housing of federal inmates based on gang affiliation and determined security levels." *Id.* at 10.

"*Bivens* does not encompass injunctive and declaratory relief[.]" *Solida*, 820 F.3d at 1093; *see Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citation omitted)); *Bacon v. Core Civic*, Case No.: 2:20-cv-00914-JAD-VCF, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020) ("[I]injunctive relief may not be obtained through *Bivens* actions, which are limited to claims for monetary damages against persons in their individual capacities." (footnote omitted)).  Thus, to the extent Watanabe seeks injunctive relief in this action, such relief is not available under *Bivens*.[5]

---

[5] "[A] prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement." *Pinson v. Othon*, No. CV-20-00169-TUC-RM, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020) (citation omitted).  To bring such a claim, a prisoner must:

> (1) invoke jurisdiction under 28 U.S.C. § 1331, (2) allege facts to state a colorable ongoing Eighth Amendment claim, (3) name as a defendant the person who would be responsible for carrying out any order for injunctive relief, and (4) request particular injunctive relief that is specifically targeted to resolving the ongoing Eighth Amendment violation.

(continued . . .)

19

## IV.  CONCLUSION

(1)  Watanabe's claims against Defendants in their official capacities and against Warden Derr, Robl, and Dr. Kwon solely based on their supervisory positions are DISMISSED with prejudice.

(2)  Watanabe's request for injunctive relief under *Bivens* is DENIED.

(3)  Watanabe states a denial of adequate medical care claim in Count II against Nielsen in his individual capacity that may proceed.

(4)  Watanabe's threat to safety claim in Count I and his other denial of adequate medical care claims in Count II are DISMISSED with leave granted to amend.  Watanabe may file an amended pleading that attempts to cure the noted deficiencies in these claims, if possible, on or before June 20, 2022.

(5)  If he chooses to file an amended pleading, Watanabe must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be

---

(continued . . .)
*Id.*; *see also Carballo v. Barr*, 491 F. Supp. 3d 860, 867 (D. Nev. 2020) ("[A] plaintiff may sue a federal officer in his or her official capacity, invoking jurisdiction under 28 U.S.C. § 1331 and the court's inherent equitable powers, and seek injunctive relief to remedy alleged constitutional violations.").  For the reasons set forth above, however, Watanabe fails to state a colorable failure to protect claim, and Watanabe acknowledges that he is now receiving medical care for his fractured coccyx.

20

short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint will supersede the preceding complaint. Claims not realleged in an amended complaint may be deemed voluntarily dismissed.

(6) IN THE ALTERNATIVE, Watanabe may notify the Court in writing on or before June 20, 2022 that he elects to proceed with his denial of adequate medical care claim in Count II against Nielsen, and this claim shall be served. Proceeding on his claim against Nielsen in Count II does not preclude Watanabe from later filing an amended pleading that cures the deficiencies in those claims dismissed with leave granted to amend, subject to the requirements of Fed. R. Civ. P. 15 and any applicable orders of this Court. If Watanabe fails to file either an amended pleading or a notice of election, the Court will direct that the Complaint be served as limited by this Order.

(7) The Clerk is DIRECTED to send Watanabe a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading rather than immediately stand on his denial of adequate medical care claim in Count II against Nielsen.

//

//

//

21

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, May 19, 2022.



Jill A. Otake
United States District Judge

*Watanabe v. Derr, et al.*, Civil No. 22-00168 JAO-RT; ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE GRANTED TO AMEND

22

107

ORIGINAL

CC. Filen only

1983 FORM Rev. 01/2008

Kekai Watanabe  Reg. No. 94102-022
Name and Prisoner/Booking Number
FDC Honolulu
Place of Confinement
P.O. Box 30080
Mailing Address
Honolulu, Hawaii 98620
City, State, Zip Code

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 14 2022

at 11 o'clock and 45 min. A M
CLERK, U.S. DISTRICT COURT
LS

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

Kekai Watanabe

(Full Name of Plaintiff )

vs.

Estela Derr

Mr. K. Robl

Nurse Nielsen

Dr. Kwon

(Full Names of Defendants; DO NOT USE *et al.* )

Case No. C V22 00168 JAO RT

(To be supplied by the Clerk)

### PRISONER CIVIL RIGHTS COMPLAINT

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

### A. JURISDICTION

1. Jurisdiction is invoked pursuant to:

   a. ☐ 28 U.S.C. § 1343(a)(3) ; 42 U.S.C. § 1983
   b. ☒ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)
   c. ☐ Other: (Please Specify) _____

2. Plaintiff: _____ Kekai Watanabe _____

   Institution/city where violation occurred: _ FDC Honolulu _____

3. First Defendant *: ___ Estela Derr _____

This defendant is a citizen of (state and county) Hawaii _____ Oahu _____,
and is employed as:

Warden _____ at _____ FDC Honolulu _____.
(Position and Title)                              (Institution)

This defendant is sued in his/her _X_ individual _X_ official capacity (check one or both). Explain how

1

1983 FORM Rev. 01/2008

this defendant was acting under color of law:
The Defendant is the warden at FDC Honolulu and therefore responsible for inmate

security assessment and placement of inmates within the institution.

4. Second Defendant: Mr. K. Robl

This defendant is a citizen of (state and county) Hawaii
Oahu , and is employed as:

Unit Manager     at   FDC Honolulu
(Position and Title)              (Institution)

This defendant is sued in his/her X individual X official capacity (check one or both). Explain how
this defendant was acting under color of law:

The Defendant was/is the Unit Manager for FDC Honolulu's Unit 5A and is responsible

for the placement of inmates in his unit.

5. Third Defendant: Nurse Nielsen

This defendant is a citizen of (state and county) Hawaii
Oahu , and is employed as:

Staff Nurse     at   FDC Honolulu
(Position and Title)              (Institution)

This defendant is sued in his/her X individual X official capacity (check one or both). Explain how
this defendant was acting under color of law:
The Defendant worked in the SHU (Special Housing Unit) when the Plaintiff was

injured during the July 12, 2021 gang riot.

(If you would like to name additional defendants, make a copy of this (blank) page and provide the necessary information.)

\*      A defendant may be named in an individual or official capacity, or both. To sue a defendant in their **individual capacity**, you must be able to state facts showing that the defendant was underlined actually involved in violating your rights. A suit against a defendant in their **official capacity** is in reality a suit against the office or position the defendant holds. Only injunctive relief is available in an official capacity suit against a state official. This is because the **Eleventh Amendment** confers immunity upon the state or its officials against monetary damages resulting from federal court litigation.

      "Color of law" refers to whether the person is a private party or an employee, official, or agent of a state, county, city, or the federal government. There can be no civil rights action under § 1983 unless the defendant was "acting under color of law." After the color of law requirement is met, then it must be determined in which capacity the defendant is being sued.

2

Fourth Defendant: Dr. Kwon

This defendant is a citizen of the state of Hawaii and the county of Oahu. The defendant is employed as the chief doctor at FDC Honolulu.

The defendant is sued in his individual and official capacity. This defendant was acting under the color of law by: His position as chief physician at FDC Honolulu and is responsible for not only Health Services operations, but specifically denying the Plaintiff medical treatment.

Page 2 A

1983 FORM  Rev. 01/2008

## B. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits while a prisoner:  ☐ Yes  ☒ No

2. If your answer is yes, how many?: _____ Describe the lawsuit in the spaces below.

3. First previous lawsuit:

    a.  Plaintiff _____

        Defendants _____

    b.  Court and Case Number (if federal court, identify the district; if state court, identify the county): _____

    c.  Claims raised: _____

    d.  Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

        _____

    e.  Approximate date of filing lawsuit _____

    f.  Approximate date of disposition _____

4. Second previous lawsuit:

    a.  Plaintiff _____

        Defendants _____

    b.  Court and Case Number (if federal court, identify the district; if state court, identify the county): _____

    c.  Claims raised: _____

    d.  Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

        _____

    e.  Approximate date of filing lawsuit _____

    f.  Approximate date of disposition _____

3

1983 FORM Rev. 01/2008

5. Third previous lawsuit:

a.  Plaintiff _____

Defendants _____

b.  Court and Case Number (if federal court, identify the district; if state sourt, identify the county):

_____

c.  Claims raised: _____

d.  Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

_____

e.  Approximate date of filing lawsuit _____

f.  Approximate date of disposition _____

(If you have filed more than three lawsuits, make a copy of this (blank) page and provide the necessary information.)

6.  Have you filed any actions in federal court that were dismissed because they were frivolous, malicious, or failed to state a claim upon which relief could be granted? ___Yes  X No.

**If you have had three or more previous federal actions dismissed for any of the reasons stated above, you may not bring another civil action in forma pauperis unless you are under imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).**

4

1983 FORM Rev. 01/2008

## C. CAUSE OF ACTION

### COUNT I

1. The following constitutional or other federal civil right has been violated by the Defendant(s):
   8th Amendment protection against cruel and unusual punishment.

2. Count I involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count)  ☐ Mail  ☐ Access to the court  ☐ Medical care
☐ Disciplinary proceedings  ☐ Property  ☐ Exercise of religion  ☐ Retaliation
☐ Excessive force by an officer  ☒ Threat to safety  ☐ Other:_____

3. **Supporting Facts:** (State as briefly as possible the FACTS supporting Count I, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

The Plaintiff is a Pre-Sentenced inmate housed in unit 5A at FDC Honolulu.

The Plaintiff has a history of gang (Uso) affiliation known to the Bureau of

Prisons and specifically the staff at FDC Honolulu and the Unit 5A Manager

Defendant K. Robl. Unit 5A includes gang members from rival gangs both

domestic (Uso, Murder Inc and La Familia) and international (Paisa's, Tango's

MS-13, Northeno and Soreno's). This is violation of US law and well as Bureau

of Prisons policy. The unit also includes 45 deportable aliens, pre-sentence

inmates, pre-trial inmates, high security inmates through minimum security

inmates and inmates that have pending orders for civil commitment due to

psychiatric issues. Again, US law (which cannot be specifically quoted due

***CONTINUED ON PAGE 5A***

4. Injury: (State how you have been injured by Defendant(s)' actions or inactions.
Fractured cocyx and other injuries that the Plaintiff is waiting to be

sent out to a specialist for determination.

5

COUNT I SUPPORTING FACTS CONTINUED

to filing limitations) does not permit the mixing of these inmates. However, Defendant Derr (FDC warden) has allowed this to not only be established, but has continued this practice after a major gang riot.

On July 12, 2021, while sitting at a table in unit 5A, the Plaintiff was attacked by 4 members of the Mexican gang the Paisa's. The incident ultimately involved more than 35 combatants. The Plaintiff was severely beaten by not only the 4 Paisa's that originally attacked him, but other Latino gang members. During the altercation several of the Paisa's returned to their cells for weapons and rejoined the riot. One of these weapons was a combination lock that was placed in a sock (known as a lock in a sock). Local Hawaiian inmates were beaten with these types of weapons including the Plaintiff. The Bureau of Prisons is aware of this tactic and knows full well that many inmates have been killed when beaten with this weapon.

When order was temporarily restored, approximately 20 inmates went to the SHU including the Plaintiff. The Plaintiff's injuries (known or visable at the time) were documented and he was told that he would be put on "Sick Call". The Plaintiff was not sent to the hospital. At 8PM on July 12, 2021 while in the SHU, the Plaintiff was suffering from severe pain and headaches and asked to be seen by medical staff. The Plaintiff discussed this with FDC Honolulu SHU C.O.'s Noni and Woodson. When the Plaintiff first discussed his medical condition with Defendant Nielsen, Defendant Nielsen told him "to stop being a cry baby". When the Plaintiff asked Defendant Nielsen to be taken to the hospital, Defendant Nielsen said "you are not going to the hospital".

The Plaintiff stayed in the SHU for more than 2 months, which was longer that anyone else involved in the July 12, 2021 riot. During that time, the Plaintiff submitted multiple sick call and "COP OUT" requests for medical attention. The medical atten- was limited to over the counter pain medication and he received no actual treatment. As of the date of this filing, he still has not received treatment.

When the Plaintiff was released from the SHU he was sent back to unit 5A. This was the case with all of the combatants of the July 12, 2021 riot, again contrary to both BOP policy and US law. The makeup of the population poses not only a threat to the Plaintiff, but all inmates on the unit. As recently as March 24, 2022 another fight between a Northeno gang member and a Hawaiian gang member took place on the unit.

The Plaintiff was eventually diagnosed months later with a fractured cocyx with bone chips in soft tissue around his tailbone causing severe pain.

Page 5A

1983 FORM Rev. 01/2008

## COUNT II

1. The following constitutional or other federal civil right has been violated by the Defendant(s):
8th Amendment protection against cruel and unusual punishment
_____

2. Count II involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count)  ☐ Mail   ☐ Access to the court   ☒ Medical care   ☐ Disciplinary proceedings   ☐ Property   ☐ Exercise of religion   ☐ Retaliation   ☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other:_____

3. **Supporting Facts:** (State as briefly as possible the FACTS supporting Count II, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

Defendant Nielsen violated the Plaintiff's Constitutional rights by denying

him proper medical treatment that would have properly diagnosed and treated

his injury. The violation of his rights by Defendant Nielsen were made worse

by his dismissive taunting of the Plaintiff while he was begging for medical

assistance. From July through January 2022, Defendant Kwon had an opportunity

to properly diagnose the Plaintiff's injuries, but failed to so. Instead

Health Services ignored multiple request for treatment and only in late February

finally acknowledged the fracture of the cocyx and agreed to send the Plaintiff

to a specialist. The Defendant's (Derr) response to the Plaintiff's Administrative

Remedy (BP-9) acknowledged the injury occured during the riot that she propogated

but falsely states that the Plaintiff has received treatment which he has not.

4. Injury: (State how you have been injured by Defendant(s)' actions or inactions.
Severe pain and suffering due to a lack of treatment.
_____
_____
_____

6

1983 FORM Rev. 01/2008

## COUNT III

1. The following constitutional or other federal civil right has been violated by the Defendant(s):

_____

_____

2. Count III involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count)  ☐ Mail  ☐ Access to the court  ☐ Medical care

☐ Disciplinary proceedings  ☐ Property  ☐ Exercise of religion  ☐ Retaliation

☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3. **Supporting Facts:** (State as briefly as possible the FACTS supporting Count III, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

4. Injury: (State how you have been injured by Defendant(s)' actions or inactions.

_____

_____

_____

(If you assert more than three Counts, make a copy of this (blank) page and provide the necessary information.)

7

1983 FORM Rev. 01/2008

## D. REQUEST FOR RELIEF

State briefly exactly what you want the Court to do for you.  Make no legal arguments.  Cite no cases or statutes.

$3,000,000 for pain and suffering at the hands of the Defendant's. The Plaintiff also asks that the Court issue an Order against Defednat Derr to follow United States law regarding the housing of federal inmates based on gang affiliation and determined security levels.

 

 

 

 

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.  See 28 U.S.C. § 1746 and 18 U.S.C. §1621.

Signed this __31__ day of __March_____, __2022__ .
                            (month)           (year)

(Signature of Plaintiff)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If needed, you may attach no more than **fifteen (15) additional pages**.  Number these pages in relation to the final page number of the section that is being extended (i.e. additional defendants' pages should be numbered "2A, 2B, etc.," additional previous lawsuits' pages "4A, 4B, etc.," additional claims should be numbered "7A, 7B, etc." This form, however, must be completely filled in to the extent applicable.

8

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

KEKAI  WATANABE
        Plaintiff

        V.

FRANCIS  NIELSON et. alia
          Defendants

CIVIL No. 22-00168-JAO-RT


                              Notice of Appeal

---

Notice is hereby given that KEKAI WATANABE, Plaintiff indeed in the above named case, appeals all final orders of dissmissal ordered in the above named case to the UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT said appeal encompassing; but not limited to, appeal of the dismissal of all counts against all named defendants in the above named case pursuant to both RULE THREE and RULE FOUR of the FEDERAL RULES OF APPELLATE PROCEDURE as well as TITLE 28 of the UNITED STATES CODE SERVICE § 1291.

4-19-23

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 2 4 2023

at 11 o'clock and 15 min. A M
CLERK, U.S. DISTRICT COURT

cc: FILER

Received By Mail
Date APR 2 4 2023

FSC
Mailed On
Date 4/24/2023

Attorneys for _____

*[Note to inmate filers: If you are an inmate confined in an institution and you seek the timing benefit of Fed. R. App. P. 4(c)(1), complete Declaration of Inmate Filing 1 and file that declaration along with this __Notice__ of __Appeal__.]*

090                                        2

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Query    Reports    Utilities    Help    Log Out

APPEAL,PRIS PRO SE

# U.S. District Court
## District of Hawaii (Hawaii)
## CIVIL DOCKET FOR CASE #: 1:22-cv-00168-JAO-RT

Watanabe v. Derr et al
Assigned to: JUDGE JILL A. OTAKE
Referred to: MAGISTRATE JUDGE ROM TRADER
Case in other court: Ninth Circuit Court of Appeals, 23-15605
Cause: 28:1331 Federal Question: Bivens Act

Date Filed: 04/14/2022
Date Terminated: 03/10/2023
Jury Demand: None
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Kekai Watanabe**                    represented by    **Kekai Watanabe**
                                                        94102-022
                                                        FDC HONOLULU
                                                        FEDERAL DETENTION CENTER
                                                        Inmate Mail/Parcels
                                                        P.O. BOX 30080
                                                        HONOLULU, HI 96820
                                                        808-838-4200
                                                        PRO SE

V.

**Defendant**

**Estela Derr**                       represented by    **Harry Yee**
                                                        Office of the United States Attorney
                                                        Prince Kuhio Federal Building
                                                        300 Ala Moana Blvd Ste 6100
                                                        Honolulu, HI 96850
                                                        541-2850
                                                        Email: Harry.Yee@usdoj.gov
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Mr. K. Robl**                       represented by    **Harry Yee**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Nurse Nielsen**                     represented by    **Harry Yee**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Kwon**                          represented by    **Harry Yee**
                                                        (See above for address)

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/14/2022 | 1 | PRISONER CIVIL RIGHTS COMPLAINT against All Defendants - filed by Kekai Watanabe<br>(Attachments: # 1 Mailing Envelope)<br>(jo) (Entered: 04/14/2022) |
| 04/14/2022 | 2 | APPLICATION to Proceed in forma pauperis by a Prisoner - by Plaintiff Kekai Watanabe<br>(Attachments: # 1 Mailing Envelope)<br>(jo) (Entered: 04/14/2022) |
| 04/15/2022 | 3 | **AMENDED EO: The parties are directed to review the General Civil Case Procedures Before Judge Otake posted on the court's website and are expected to comply with the most recent version that is posted.** ~~The parties should consult the Court's digital calendar on the hearing date for the courtroom assignment.~~<br><br>(JUDGE JILL A. OTAKE)(shm)<br><br><small>COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF). Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF)</small><br>Modified on 4/16/2022 (shm). (Entered: 04/15/2022) |
| 04/15/2022 | 4 | ORDER GRANTING IN FORMA PAUPERIS APPLICATION *re*: 2 - Signed by JUDGE JILL A. OTAKE on 4/15/2022.<br>(jo)<br><br><small>COURT'S CERTIFICATE OF SERVICE - On April 15, 2022: Kekai Watanabe will be served by First Class Mail to the address of record listed on the Notice of Electronic Filing (NEF); a copy of the order shall also be served by First Class Mail to the Warden and Financial Office at FDC Honolulu, P.O. BOX 30547, Honolulu, HI 96820; and the Finance Department for the District of Hawaii received the order electronically.</small><br>(Entered: 04/15/2022) |
| 05/19/2022 | 5 | ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE GRANTED TO AMEND re 1 - Signed by JUDGE JILL A. OTAKE on 5/19/2022.<br><br>(1) Watanabe's claims against Defendants in their official capacities and against Warden Derr, Robl, and Dr. Kwon solely based on their supervisory positions are DISMISSED with prejudice.<br>(2) Watanabe's request for injunctive relief under *Bivens* is DENIED.<br>(3) Watanabe states a denial of adequate medical care claim in Count II against Nielsen in his individual capacity that may proceed.<br>(4) Watanabe's threat to safety claim in Count I and his other denial of adequate medical care claims in Count II are DISMISSED with leave granted to amend. Watanabe may file an amended pleading that attempts to cure the noted deficiencies in these claims, if possible, on or before June 20, 2022.<br>(5) If he chooses to file an amended pleading, Watanabe must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint will supersede the preceding complaint. Claims not realleged in an amended complaint may be deemed voluntarily dismissed.<br>(6) IN THE ALTERNATIVE, Watanabe may notify the Court in writing on or before June 20, 2022 that he elects to proceed with his denial of adequate medical care claim in Count II against Nielsen, and this claim shall be served. Proceeding on his claim against Nielsen in Count II does not preclude Watanabe from later filing an amended pleading that cures the deficiencies in those claims dismissed with leave granted to amend, subject to the requirements of Fed. R. Civ. P. 15 and any applicable orders of this Court. If Watanabe fails to file either an amended pleading or a notice of election, the Court will direct that the Complaint be served as limited by this Order.<br>(7) The Clerk is DIRECTED to send Watanabe a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading rather than immediately stand on his denial of adequate medical care claim in Count II against Nielsen. |

| | | COURT'S CERTIFICATE OF SERVICE - Kekai Watanabe shall be served by First Class Mail to the address of record listed on the Notice of Electronic Filing (NEF) on 5/20/2022. A blank prisoner civil rights complaint form shall also be included in the mailing to Plaintiff. (jni) (Entered: 05/19/2022) |
|---|---|---|
| 06/13/2022 | 6 | Plaintiff's Request for an Extension of Time to File Civil Rights *[Amended]* Complaint - filed by Plaintiff Kekai Watanabe (Attachments: # 1 Mailing Envelope) (jni) (Entered: 06/13/2022) |
| 06/14/2022 | 7 | EO: On May 19, 2022, the Court issued an [ECF No. 5] Order Dismissing Complaint in Part with Partial Leave Granted to Amend. On June 13, 2022, the Court received Plaintiff's [ECF No. 6] written request for additional time to file an amended pleading. Plaintiff's extension request is GRANTED. Plaintiff may file an amended pleading on or before July 20, 2022. In the alternative, Plaintiff may notify the Court in writing on or before July 20, 2022, that he elects to proceed with his denial of adequate medical care claim in Count II of the Complaint against Nurse Nielsen. If Plaintiff fails to file either an amended pleading or a notice of election, the Court will direct that the Complaint be served as limited by the May 19, 2022 Order.<br><br>IT IS SO ORDERED.<br><br>(JUDGE JILL A. OTAKE)(shm)<br><br>COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF). Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF)<br>(Entered: 06/14/2022) |
| 07/07/2022 | 8 | **FIRST AMENDED COMPLAINT** against Estela Derr, K. Robl, Dr. Kwon, Nurse Nielsen - filed by Kekai Watanabe. (Attachments: # 1 Mailing Envelope) (jni) (Entered: 07/07/2022) |
| 08/02/2022 | 9 | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE re 8 - Signed by JUDGE JILL A. OTAKE on 8/2/2022.<br><br>(1) Watanabe states a denial of adequate medical care claim in Count II against Nielsen in his individual capacity that may proceed.<br><br>(2) Watanabe's failure to protect claims in Count I and his other denial of adequate medical care claim in Count II are DISMISSED without prejudice. Dismissal of these claims does not foreclose Watanabe from later filing an amended pleading, subject to the requirements of Federal Rule of Civil Procedure 15 and any applicable orders of this Court.<br><br>(3) The United States Marshal is ORDERED to serve the FAC, ECF No. 8, and a summons on Defendant Francis Nielsen, in addition to the United States, as directed by Watanabe, according to the requirements of Federal Rule of Civil Procedure 4(i). After service is perfected, Defendant Nielsen shall file a responsive pleading within the time allowed under Fed. R. Civ. P. 12.<br><br>COURT'S CERTIFICATE OF SERVICE - Kekai Watanabe shall be served by First Class Mail to the address of record listed on the Notice of Electronic Filing (NEF) on 8/3/2022.<br>(jni) (Entered: 08/02/2022) |
| 08/03/2022 | 10 | Summons Issued as to Francis Nielsen. (jni) (Entered: 08/03/2022) |
| 08/03/2022 | 11 | Summons Issued as to United States Attorney's Office. (jni) (Entered: 08/03/2022) |

| 08/03/2022 | 12 | Summons Issued as to the Attorney General of the United States. (jni) (Entered: 08/03/2022) |
|---|---|---|
| 08/03/2022 | 13 | CIVIL Waiver of Service Packet - Notice to Parties Regarding Service Pursuant to Rule 4 of the Federal Rules of Civil Procedure (Instructions) (Attachments: # 1 Francis Nielsen - AO398 Notice of a Lawsuit and Request to Waive Service of a Summons (1 copy); and AO399 Waiver of the Service of Summons (2 copies)) (Entered: 08/03/2022) |
| 08/03/2022 | 14 | Clerk's Office Transmittal Letter to Plaintiff Kekai Watanabe re ECF No. 9 Order Dismissing First Amended Complaint in Part and Directing Service. (jni) (Entered: 08/03/2022) |
| 08/03/2022 | | COURT'S CERTIFICATE of Service - a copy of 9 Order, 10 Summons Issued for Francis Nielsen, 11 Summons Issued for the U.S. Attorney's Office, 12 Summons Issued for the Attorney General of the United States, 13 Civil Waiver of Service Packet with Instructions re Francis Nielsen, 14 Transmittal Letter, and all related documents and forms specified in the Order and Transmittal Letter shall be served by First Class Mail to Plaintiff Kekai Watanabe at the address of record on 8/3/2022. Registered Participants of CM/ECF received the document electronically at the e-mail address listed on the Notice of Electronic Filing (NEF). (jni) (Entered: 08/03/2022) |
| 08/03/2022 | | COURT'S CERTIFICATE of Service - a copy of 9 Order shall be served to the U.S. Marshal via inter-office delivery on 8/3/2022. (jni) (Entered: 08/03/2022) |
| 11/17/2022 | 15 | Process Receipt and Return - USM 285 returned by Marshals Service. In person service at U.S. Attorney's Office on 11/15/2022. (jni) (Entered: 11/17/2022) |
| 11/17/2022 | 16 | SUMMONS Returned Executed served on the United States Attorney's Office in person on 11/15/2022. (jni) (Entered: 11/18/2022) |
| 11/23/2022 | 17 | Process Receipt and Return - USM 285 mailed by U.S. Marshals Service via certified mail on 11/14/2022. Recipient Francis Nielsen received form on 11/22/2022 re: 10 Summons Issued (eta) (Entered: 11/25/2022) |
| 11/23/2022 | 18 | WAIVER OF SERVICE Returned Executed by Nurse Nielsen. Nurse Nielsen waiver sent on 11/14/2022, answer due 1/13/2023. (eta) (Entered: 11/25/2022) |
| 11/23/2022 | 19 | Summons Returned Unexecuted as to Nurse Nielsen. (eta) (Entered: 11/25/2022) |
| 01/13/2023 | 20 | MOTION to Dismiss for failure to State a Claim *; CERTIFICATE OF SERVICE* Harry Yee appearing for Defendants Nielsen, K. Robl, Estela Derr, Kwon (Attachments: # 1 Memorandum in Support, # 2 Declaration of Harry Yee, # 3 Exhibit "A")(Yee, Harry) (Entered: 01/13/2023) |
| 01/18/2023 | 21 | EO: Pursuant to LR 7.1(d), the Court elects to decide 20 Defendant's Motion to Dismiss First Amended Complaint without a hearing and sets briefing as follows: Opposition is due on 2/8/23. Reply is due 3/1/23. <br><br> (JUDGE JILL A. OTAKE)(shm) <br><br> COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF). Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF) <br><br> (Entered: 01/18/2023) |
| 03/10/2023 | 22 | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT re 20 - Signed by JUDGE JILL A. OTAKE on 3/10/2023. |

Because Watanabe's claim arises in a new context and at least one special factor weighs against recognizing a new *Bivens* remedy, Defendants' Motion, ECF No. 20, is GRANTED for failure to state a claim upon which relief can be granted. Because amendment would be futile, Watanabe's claim against Nielsen in the FAC is DISMISSED without leave to amend. *See, e.g., Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile). The Clerk of Court is DIRECTED to close the case and enter judgment in favor of Defendants.

COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants shall be served by First Class Mail to the addresses of record listed on the (NEF) on 3/10/2023. Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF).

(jni) (Entered: 03/10/2023)

| | | |
|---|---|---|
| 03/10/2023 | 23 | CLERK'S JUDGMENT entered on 3/10/2023 pursuant to ECF 22 ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT.<br><br>COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants shall be served by First Class Mail to the addresses of record listed on the (NEF) on 3/10/2023. Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF).<br><br>(jni) (Entered: 03/10/2023) |
| 04/24/2023 | 24 | **NOTICE OF APPEAL** as to 22 Order Granting Defendant's Motion to Dismiss First Amended Complaint, and 23 Clerk's Judgment, by Kekai Watanabe; USCA No. 23-15605. Filing fee $ 505. (Attachments: # 1 Mailing Envelope)<br>(jni) Modified on 4/25/2023 (jni) (Entered: 04/24/2023) |
| 04/25/2023 | 25 | USCA Case Number 23-15605 for 24 Notice of Appeal, filed by Kekai Watanabe.<br><br>COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants shall be served by First Class Mail to the addresses of record listed on the (NEF) on 4/25/2023. Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF).<br><br>(jni) (Entered: 04/25/2023) |
| 04/25/2023 | 26 | USCA TIME SCHEDULE ORDER as to 24 Notice of Appeal, filed by Kekai Watanabe; USCA No. 23-15605.<br>(Attachments: # 1 Notice to all Parties and Counsel)<br><br>COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants shall be served by First Class Mail to the addresses of record listed on the (NEF) on 4/25/2023. Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF).<br><br>(jni) (Entered: 04/25/2023) |
| 04/25/2023 | 27 | **Attorney Appeal Packet** re 24 Notice of Appeal, filed by Kekai Watanabe; USCA No. 23-15605.<br>(Attachments: # 1 Notice of Appeal, # 2 District Court Instructions for Civil Appeals, # 3 Docket Sheet)<br><br>COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants shall be served by First Class Mail to the addresses of record listed on the (NEF) on 4/25/2023. Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF).<br><br>(jni) (Entered: 04/25/2023) |
| 06/12/2023 | 28 | USCA REFERRAL NOTICE as to 24 Notice of Appeal, filed by Kekai Watanabe; USCA No. 23-15605:<br><br>This matter is referred to the district court for the limited purpose of determining whether in forma pauperis status should continue for this appeal or whether the appeal is frivolous or taken in bad faith. *See* 28 U.S.C. § 1915(a)(3); *see also Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002) (revocation of forma pauperis status is appropriate where district court finds the appeal to be frivolous).<br><br>If the district court elects to revoke in forma pauperis status, the district court is requested to notify this court and the parties of such determination within 21 days of the date of this referral. |

If the district court does not revoke in forma pauperis status, such status will continue automatically for this appeal pursuant to Fed. R. App. P. 24(a).

This referral shall not affect the briefing schedule previously established by this court.

COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants shall be served by First Class Mail to the addresses of record listed on the (NEF) on 6/13/2023. Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF).

(jni) (Entered: 06/13/2023)

| 06/15/2023 | 29 | EO: On June 12, 2023, the Ninth Circuit referred this matter to the Court for the limited purpose of determining whether Plaintiff's in forma pauperis should be revoked [ECF No. 28]. Plaintiffs appeal has an "arguable basis either in law or in fact[,]" *see Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and so the Court finds that it is neither frivolous nor taken in bad faith. Thus, the Court declines to revoke Plaintiff's in forma pauperis status. *See* 28 U.S.C. § 1915(a)(3) (stating that an appeal may not be taken in forma pauperis if the district court "certifies in writing that it is not taken in good faith"); Fed. R. App. P. 24(a)(3)(A) (stating that a party who was permitted to proceed in forma pauperis in the district court may do so on appeal unless, among other things, the district court certifies that the appeal is not taken in good faith). The Clerk is DIRECTED to send a copy of this entering order to Plaintiff and the United States Court of Appeals for the Ninth Circuit. IT IS SO ORDERED.<br><br>(JUDGE JILL A. OTAKE)(shm)<br><br>COURT'S CERTIFICATE OF SERVICE - Non-Registered CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF). Pro Se (Non-Prisoner) Litigants that have consented to receive documents and Notices of Electronic Filings by email, have been served electronically at the e-mail address listed on the (NEF)<br><br>(Entered: 06/15/2023) |
| 06/15/2023 | | COURT'S CERTIFICATE of Service - a copy of 29 Entering Order was served on the Ninth Circuit Court of Appeals by email to cmecf_ca9central@ca9.uscourts.gov. (jni) (Entered: 06/15/2023) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 08/21/2023 08:31:46 | | |
| **PACER Login:** | sophieangelis | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-00168-JAO-RT |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |