**No. 23-15605**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

———————————

KEKAI WATANABE,

Plaintiff-Appellant,

v.

ESTELA DERR, et al.

Defendants-Appellees.

———————————

On Appeal From the United States District Court
for the District of Hawaii

———————————

**DEFENDANTS-APPELLEES' ANSWERING BRIEF**

———————————

CLARE E. CONNORS #7936
  *United States Attorney*
  *District of Hawaii*

HARRY YEE #3790
  *Assistant U.S. Attorney*
  *Room 6-100*
  *PJKK Federal Building*
  *300 Ala Moana Blvd.*
  *Honolulu, Hawaii  96850*
  *Telephone:  (808) 541-2850*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................. i

INTRODUCTION ...................................................................... 1

STATEMENT OF JURISDICTION......................................................2

STATEMENT OF THE ISSUES..........................................................2

STATEMENT OF THE CASE ............................................................2

SUMMARY OF ARGUMENT ..........................................................4

STANDARD OF REVIEW................................................................5

ARGUMENT ..............................................................................6

I.    THE DISTRICT COURT PROPERLY DISMISSED THE BIVENS CLAIM AGAINST PARAMEDIC NIELSEN BECAUSE A BIVENS REMEDY IS NOT AVAILABLE FOR THE TYPE OF CLAIM RAISED BY APPELLANT ................6

    A.    New Bivens Contexts Are Strongly Disfavored .....................6

    B.    This Case Presents a New Bivens Context.............................9

    C.    Special Factors Preclude Appellant's Claim .........................14

        1.    Alternative remedial structures were available..........15

        2.    Extensive congressional legislation in the prison context indicates an intent not to create a damages remedy. ............................................18

II.     THE DISTRICT COURT PROPERLY CONCLUDED
        THAT BIVENS DOES PROVIDE EQUITABLE RELIEF ............ 20

CONCLUSION ........................................................................... 21

# TABLE OF AUTHORITIES

<u>Cases</u>           <u>Page(s)</u>

*Allen v. Sakai,*
48 F.3d 1082 (9th Cir. 1995) .................................................. 11

*Bacon v. Core Civic,*
2:20-cv-00914-JAD-VCF, 2020 WL 3100827
(D. Nev. June 10, 2020) ......................................................... 20

*Bivens v. Six Unknown named Agents of the*
*Federal Bureau of Narcotics,*
403 U.S. 388 (1971) ........................................................ passim

*Brady v. United States,*
211 F.3d 499 (9th Cir. 2000) ................................................... 6

*Bush v. Lucas,*
462 U.S. 367 (1983) ............................................................... 9

*Carlson v. Green,*
446 U.S. 14 (1980) .......................................................... passim

*Corr. Servs. Corp. v. Malesko,*
534 U.S. 61 (2001) ....................................................... 15, 17-18

*Davis v. Passman,*
442 U.S. 228 (1979) ........................................................... 6, 7

*Egbert v. Boule,*
142 S. Ct. 1793 (2022) ..................................................... passim

*Estelle v. Gamble,*
429 U.S. 97 (1976) ......................................................... 11, 13

*Farmer v. Brennan,*
511 U.S. 825 (1994) ............................................................ 13

*Hernàndez v. Mesa,*
140 S. Ct. 735 (2020) ............................................................ 9

i

| Cases | Page(s) |
|---|---|

*Higazy v. Templeton,*
505 F.3d 161 (2d Cir. 2007) ................................................. 20

*Hutchinson v. United States,*
838 F.2d 390 (9th Cir. 1988) ............................................ 12-13

*Jett v. Penner,*
439 F.3d 1091 (9th Cir. 2006) ........................................ 11, 12

*Lopez v. Smith,*
203 F.3d 1122 (9th Cir. 2000) ........................................ 11, 12

*McGuckin v. Smith,*
974 F.2d 1050 (9th Cir. 1992) ............................................ 12

*Schweiker v. Chilicky,*
487 U.S. 412 (1988) ......................................................... 16

*Solida v. McKelvey,*
820 F.3d 1090 (9th Cir. 2016) ........................................... 20

*Toguchi v. Chung,*
391 F.3d 1051 (9th Cir. 2004) ........................................... 13

*Vega v. United States,*
881 F.3d 1146 (9th Cir. 2018) ......................................... 5, 16

*Wilkie v. Robbins,*
551 U.S. 537 (2007) ....................................................... 8, 16

*Williams v. Paramo,*
775 F.3d 1182 (9th Cir. 2015) ........................................... 19

*Wilson v. Seiter,*
501 U.S. 294 (1991) ......................................................... 13

*Ziglar v. Abbasi,*
137 S. Ct. 1843 (2017) .............................................. passim

| Statutes | Page(s) |
|---|---|
| 18 U.S.C. § 3626 | 18 |
| 28 U.S.C. § 1291 | 2 |
| 28 U.S.C. § 1346 | 18 |

Rules

| | |
|---|---|
| Fed. R. App. P. 4(a)(1)(B) | 2 |

Regulations

| | |
|---|---|
| 28 C.F.R. § 542.10(a) | 17 |
| 28 C.F.R. § 542.14(a) | 17 |
| 28 C.F.R. § 542.14(d) | 17 |
| 28 C.F.R. §  542.15(a) | 17 |
| 28 C.F.R. § 542.16(a) | 17 |

## <u>INTRODUCTION</u>

Plaintiff-Appellant Kekai Watanabe appeals the district court's dismissal of his constitutional tort claim under the Eighth Amendment against Paramedic Francis Nielsen ("Nielsen").

Appellant's claim arises from a physical altercation on July 12, 2021 involving numerous inmates housed at the Federal Detention Center in Honolulu, Hawaii ("FDC"). Appellant asserts that Nielsen's denial of medical care resulted in an Eight Amendment violation.

The district court correctly held that recognizing a remedy for his Eighth Amendment claim against Nielsen would require an expansion of the court-created constitutional tort remedy first recognized in *Bivens v. Six Unknown named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Supreme Court's recent opinion in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), makes clear that any expansion of *Bivens* is highly disfavored, and is foreclosed here by the availability of alternative remedial processes, such as the BOP's administrative remedy program.

This district court's decision should be affirmed.

**STATEMENT OF JURISDICTION**

On March 10, 2023, the district court granted the motion to dismiss filed by Nielsen.  ER-2-20.[1]  Appellant filed a timely notice of appeal on April 24, 2023.  ER-116-117; *see* Fed. R. App. P. 4(a)(1)(B).  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

**STATEMENT OF THE ISSUES**

Whether the district court correctly dismissed Appellant's *Bivens* claim against Nielsen, where special factors – such as the availability of the administrative remedy program and federal tort claims – counsel against expanding *Bivens* to the new context raised by Appellant.

**STATEMENT OF THE CASE**

Appellant alleges that, while sitting at a table in Unit 5A at FDC, four members of the Paisas Mexican gang severely beat him using a combination lock placed inside a sock (referred to as a lock in a sock).  ER-79.  Appellant alleges that, despite knowledge of his injuries suffered from this incident, FDC staff did not send him to an outside provider for evaluation.  *Id.*  Further, when Appellant first discussed his medical condition with Nielsen, he told Appellant to "stop being a cry

---

[1] "ER" refers to the Excerpts of Record submitted by the Appellant.

baby" and that "you are not going to the hospital." *Id*. Appellant was allegedly later diagnosed with a fractured coccyx with bone chips in soft tissue around his tailbone, causing him severe pain. *Id*.

Appellant brings a *Bivens* claim against Nielsen for violations of the Eighth Amendment to the United States Constitution due to Nielsen's denial of proper medical care. ER-81.

Nielsen filed a motion to dismiss. The district court granted dismissal with prejudice. In its dismissal order, the district court applied the two-step test set forth in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017), which determines when a *Bivens* remedy is available. The district court held that, although Appellant's Eighth Amendment claim has some parallels to *Carlson v. Green*, 446 U.S. 14 (1980), they differ in a meaningful way. ER-12. First, the nature of Appellant's claim does not relate to a course of medical treatment provided to him at FDC but, instead, involves an alleged interference with medical care. ER-13-16. Second, the severity of Appellant's claim does not compare to the seriousness of the claims in *Carlson* because it does not involve a life-threatening medical emergency resulting in death. *Id*.

3

Having determined that Appellant's claim arises in a new context, the district court considered whether special factors counsel hesitation in expanding *Bivens* to Appellant's claim. ER-16-18. The district court held that the BOP's internal administrative remedy program and FTCA provided alternative remedies for Appellant to pursue and counseled against an extension of *Bivens*. *Id.* The district court thus concluded that Appellant's claim was not cognizable under *Bivens*. ER-20.

Appellant timely appealed the district court's dismissal of the *Bivens* claim against Nielsen. ER-116.

## <u>SUMMARY OF ARGUMENT</u>

The Supreme Court's decision in *Egbert*, 142 S. Ct. 1793, makes clear that *Bivens* may not be extended to Appellant's Eighth Amendment claim that Nielsen failed to provide adequate medical care. Appellant's claim arises in a new context because it differs from prior *Bivens* cases in a meaningful way. Additionally, *Egbert* emphasizes that separation-of-powers principles counsel against the extension of *Bivens* to any new contexts not previously recognized by the Supreme Court. The *Bivens* remedy cannot be extended when "there is *any* rational reason (even one) to think that Congress is better

suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858). Congress and the Executive Branch provided alternative remedial processes for Appellant to vindicate his claim. Those processes include BOP's Administrative Remedy Program, which the *Egbert* Court specifically cited in concluding that an analogous U.S. Border Patrol administrative grievance procedure foreclosed extending *Bivens*. Further, Congress has never created a damages action against BOP officials despite its frequent and intense interest in the regulation of federal prisons and the remedies available to federal prisoners. Congress's apparent reluctance to extend a damages remedy weighs against judicial expansion of the *Bivens* remedy. Thus, the district court's dismissal of the *Bivens* claim against Nielsen should be affirmed.

## STANDARD OF REVIEW

This Court reviews de novo an order dismissing a complaint for failure to state a *Bivens* claim. *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018). The same standard of review applies to the

dismissal of an action for lack of jurisdiction due to failure to exhaust.

*Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000).

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY DISMISSED THE BIVENS CLAIM AGAINST PARAMEDIC NIELSEN BECAUSE A BIVENS REMEDY IS NOT AVAILABLE FOR THE TYPE OF CLAIM RAISED BY APPELLANT

### A. New Bivens Contexts Are Strongly Disfavored

The Supreme Court has implied a damages action arising directly under the Constitution on only three occasions — and not a single time in the past four decades. In *Bivens*, the Supreme Court recognized a Fourth Amendment claim against federal law enforcement agents where a plaintiff was subjected to a warrantless arrest and search in his home, during which agents handcuffed him in front of his wife and children, "searched the apartment from stem to stern," and threatened to arrest the entire family. *Bivens*, 403 U.S. at 389. Subsequently, the Supreme Court extended *Bivens* to a Fifth Amendment sex discrimination claim against a congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim against prison officials for their failure to treat an

inmate's life-threatening asthma, which resulted in his death, *Carlson,* 446 U.S. 14.

In *Abbasi*, the Supreme Court set forth a two-step framework for determining whether an implied constitutional remedy exists.  **First**, courts must determine if the case presents a new context that differs "in a meaningful way from [the three] previous *Bivens* cases decided by [the Supreme Court]."  *Abbasi*, 137 S. Ct. at 1859.  "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; . . . the presence of potential special factors that previous *Bivens* cases did not consider," or other factors.  *Id.* at 1860.

**Second**, if a case differs meaningfully from *Bivens*, *Davis*, or *Carlson*, then courts *must* consider whether any special factors counsel hesitation in expanding *Bivens* to the plaintiff's claims.  *Id.* at 1857. This entails consideration of "any alternative, existing process for

protecting the [relevant] interest [which] amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages" as well as any additional "special factors counselling hesitation before authorizing a new kind of federal litigation." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

In *Abbasi*, the Supreme Court unequivocally held that any expansion of the *Bivens* remedy is now a "'disfavored' judicial activity." 137 S. Ct. at 1857 (citation omitted). Instead, it should most often be left to Congress – not the courts – to determine whether a damages action should be permitted to proceed. *Id.* at 1858 (recognizing that it is "not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others"); *Egbert*, 142 S. Ct. at 1803.

"Unsurprisingly, Congress is 'far more competent than the Judiciary' to weigh such policy considerations" in deciding whether to create a cause of action, "and the Judiciary's authority to do so at all is, at best, uncertain." *Egbert*, 142 S. Ct. at 1803 (internal citations omitted). "If there is even a single 'reason to pause before

8

applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernàndez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

It is irrelevant whether the wrong "would otherwise go unredressed" absent a *Bivens* remedy, or that "existing remedies do not provide complete relief." *Egbert*, 142 S. Ct.at 1804 (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). Instead, in any *Bivens* case, the "most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Egbert*, 142 S. Ct. at 1803 (internal quotations omitted). If there is "a rational reason to think that" Congress is best equipped to decide – "as it will be in most every case – no *Bivens* action may lie." *Id.* (citation omitted).

## B.   This Case Presents a New Bivens Context

The district court correctly concluded that Appellant's Eighth Amendment *Bivens* claim against Nielsen presents a new context.

Appellant's Eighth Amendment claim appears to allege that Nielsen violated the Eighth Amendment by failing to provide adequate medical care. Appellant's claim is meaningfully different than the Eighth Amendment claim for deliberate indifference to medical needs

resulting in an inmate's death recognized in *Carlson*. *See Abbasi*, 137 S. Ct. at 1859 (explaining *Carlson*'s holding).

First, the district court correctly held that the nature of Appellant's claim differs from those in *Carlson* because it does not relate to the course of medical treatment provided to him at FDC. Instead, Appellant argues, albeit mistakenly, that Nielsen "den[ied] him proper medical treatment". ER-81. The Court correctly noted that allowing Appellant's claim to proceed "risks transforming the Court into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury." ER-38.

In this case, on July 12, 2021, Appellant received medical care in the housing unit, but only noted "burning due to pepper spray." SER-4 . Four days later on July 16, 2021, Appellant was seen by Nielsen in the Special Housing Unit for pain in his lower back. SER-7. It is this encounter that Appellant believes resulted in deliberate indifference. Nielsen performed a physical examination, which indicated everything was within normal limits. SER-8. Nielsen spoke to an on-call provider who verbally authorized an order for Toradol and Motrin. *Id.* Nielsen

also placed an order for Ketorolac injections and Ibuprofen. SER-9.

Appellant apparently believes this was not enough and that Nielsen

should have also referred him to an outside provider for further

evaluation. The nature of this assertion—that is, what Nielsen did not

do—is different from the claims in *Carlson* in which the inmate's estate

challenged the numerous overt actions of medical personnel.

Second, the district court correctly held that the severity of

Appellant's claim does not compare to the seriousness of the claims in

*Carlson*. The difference between Appellant's alleged on-going pain

management and the life-threatening condition in *Carlson* is

meaningfully different in that Appellant's claim does not rise to the

level of deliberate indifference to a serious medical need.

Deliberate indifference to medical needs violates the Eighth

Amendment's prohibition against cruel and unusual punishment.

*Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to

serious medical needs consists of two requirements, one objective and

the other subjective. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

2006); *Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000) (quoting

*Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1995)). The plaintiff must

11

first establish a "serious medical need" by showing that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.* (citing *McGuckin*, 974 F.2d at 1060).

With regard to the objective requirement, "serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Lopez*, 203 F.3d at 1131 (alteration in original) (quoting *McGuckin*, 974 F.2d at 1059–60). Unlike in *Carlson*, which resulted in death, Appellant does not assert that he was limited in performing his activities of daily living. Appellant merely asserts that his injury resulted in "severe pain and suffering." ER-113. Without more, this falls short of a serious medical need and differs significantly from the injuries in *Carlson*.

Under the subjective element, prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay

12

or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Inadequate treatment due to medical malpractice, negligence, or even gross negligence, does not rise to the level of a constitutional violation. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle*, 429 U.S. at 105–06); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

A defendant's acts or omissions will not amount to a constitutional violation unless there is reckless disregard of a risk of serious harm to the prisoner. *Farmer*, 511 U.S. at 836. The inmate must allege that the defendant purposefully ignored or failed to respond to his pain or medical needs; an inadvertent failure to provide adequate care does not constitute a violation. *Estelle*, 429 U.S. at 105–06. The official must have "know[n] that [the] inmate[ ] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

13

Here, Nielsen could not possibly have known Appellant suffered from a broken coccyx at the time of his evaluation on July 16, 2021. In fact, Nielsen's own alleged statements telling Appellant not to be a baby are indicative of his lack of understanding of the full extent of the injury. In contrast, had Nielsen known of Appellant's broken coccyx and nevertheless refused to send him out for care, then Appellant could potentially argue Nielsen was deliberately indifferent. That is not the case here, and this case differs significantly from the facts in *Carlson*.

### C. Special Factors Preclude Appellant's Claim

Applying the stringent second step of the *Abbasi* framework, the district court correctly concluded that special factors preclude extending the *Bivens* remedy to Appellant's claim.

In determining whether special factors preclude an extension of *Bivens*, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (emphases in original) (quoting *Abbasi*, 137 S. Ct. at 1858). If there is *any* rational reason (even one), *Bivens* cannot be extended. *Id.*

14

Here, the existence of alternative remedial processes and legislative action suggesting that Congress does not want a damages remedy for claims like those raised by Appellant prevents the court from expanding *Bivens* to Appellant's claim.

### 1. Alternative remedial structures were available.

The Supreme Court in *Egbert* clearly held that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" 142 S. Ct. at 1804 (quoting *Abbasi*, 137 S. Ct. at 1858). The nature of an alternative remedy is of no moment: "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

Alternative remedial structures include judicial and administrative remedies and need not include monetary relief. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy

Program."); *Abbasi*, 137 S. Ct. at 1865 ("alternative remedies available" could include "a writ of habeas corpus," an "injunction requiring the warden to bring his prison into compliance," or "some other form of equitable relief"); *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) ("'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies."). In fact, the "remedy" need not be a cause of action at all, let alone a cause of action for damages; it may just be a "process," *Wilkie*, 551 U.S. at 553, or a "safeguard[]." *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988).

In *Egbert*, the Supreme Court denied a remedy for a Fourth Amendment *Bivens* claim against a U.S. Border Patrol officer. In doing so, the Court held that Congress provided the plaintiff with a similar administrative grievance process to the BOP's Administrative Remedy Program. 142 S. Ct. at 1806. The Court rejected the argument that the process was inadequate. *Id.* at 1807.

The reasoning in *Egbert* and the Supreme Court's prior jurisprudence makes clear that the alternative remedial structures available to inmates foreclose Appellants' claims. Here, Appellant had

16

multiple alternative processes available to challenge the alleged

conduct of Nielsen.  In fact, Appellant took advantage of such processes

by filing informal "COP OUT" requests, which apparently led to x-rays

performed on his lower back months later.  ER-79.  The BOP's

Administrative Remedy Program affords inmates the opportunity "to

seek formal review of an issue relating to *any aspect* of his . . . own

confinement," such as the claim alleged here against Nielsen.  28 C.F.R.

§ 542.10(a) (emphasis added).  Under that provision, Appellant could

have sent a formal Administrative Remedy Request directly to Warden

Derr, § 542.14(a), appealed any adverse findings to the Regional

Director, § 542.15(a), and then to the BOP's General Counsel, *id.*

Further, the Administrative Remedy Program permits an inmate, who

believes his complaint is too sensitive to be adequately addressed at his

correctional facility, to submit an administrative remedy request

directly to the BOP Regional Director.  28 C.F.R. § 542.14(d).  Finally,

Plaintiffs could have sought the assistance of counsel.  28 C.F.R. §

542.16(a).  The Administrative Remedy Program provides a "means

through which allegedly unconstitutional actions and policies can be

brought to the attention of the BOP and prevented from recurring."

*Malesko*, 534 U.S. at 74.  If misconduct is brought to the attention of BOP, there are other means of internal enforcement, such as an Inspector General investigation or prosecution.  *See, e.g., Abbasi*, 137 S. Ct. at 1862.

 In addition to the BOP's Administrative Remedy Program, Appellant could have availed himself of equitable remedies in federal court (including declaratory and injunctive relief) or an administrative claim under the FTCA.  *See, e.g.,* 18 U.S.C. § 3626 (providing remedies in civil action with respect to prison conditions); 28 U.S.C. § 1346.

The district court correctly held that alternative remedial structures were available to Appellant.

> **2.   Extensive congressional legislation in the prison context indicates an intent not to create a damages remedy.**

Congress has acted extensively in the federal prison context, but has never authorized a damages action by federal prisoners.  That alone is reason to believe Congress "might" doubt the efficacy or necessity of a damages remedy.  *Abbasi*, 137 S. Ct. at 1858, 1865.

Further, the PLRA placed a series of limits on prisoner lawsuits and evidences Congress's serious concerns about the burdens of

prisoner litigation. *See Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015). As there are over 159,000 inmates in BOP custody and over 34,000 BOP employees, the potential burdens are significant. *See* Fed. Bureau of Prisons, *About Our Agency*, https://www.bop.gov/about/agency/ (last visited November 18, 2022); *see also Abbasi*, 137 S. Ct. at 1858 (special factors include an assessment of potential impact on government operations).

Congress's enactment of the PLRA, and its related frequent consideration of issues of prison life without creating a damages action for the types of claims alleged by Appellants, especially when viewed in connection with alternate remedial processes, are reasons to hesitate before creating a *Bivens* remedy in the prison context that extends beyond the medical care context at issue in *Carlson*.

For the foregoing reasons, the district court correctly held that alternative remedies available to Appellants and separation-of-powers concerns counsel against expansion of *Bivens* to Appellant's claim. ER-17-19. The district court's dismissal of the *Bivens* claim against Paramedic Nielsen should be affirmed.

## II.   THE DISTRICT COURT PROPERLY CONCLUDED THAT BIVENS DOES PROVIDE EQUITABLE RELIEF

The Court correctly concluded that Appellant could not state a claim for injunctive relief where he requested "an Order against [Warden] Derr to follow United States law regarding the housing of federal inmates based on gang affiliation and determined security levels."  ER-102.  In his initial Complaint, Appellant checked the box indicating jurisdiction exists under *Bivens*.  ER-106.  Further, Appellant clearly alleges facts indicating failure to protect and seeks equitable relief from the court.

"*Bivens* does not encompass injunctive and declaratory relief[.]" *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016); *see Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citation omitted)); *Bacon v. Core Civic*, Case No.: 2:20-cv-00914-JAD-VCF, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020) ("[I]injunctive relief may not be obtained through *Bivens* actions, which are limited to claims for monetary damages against persons in their individual capacities." (footnote omitted)).  Thus, to the

20

extent Appellant seeks an injunction specifically and any equitable relief in this action, such relief is not available under *Bivens*.

## **CONCLUSION**

For all the foregoing reasons, this Court should affirm the district court's dismissal against Paramedic Nielsen.

Respectfully submitted,

CLARE E. CONNORS
  *United States Attorney*

 *s/ Harry Yee*
HARRY YEE
  *Assistant U.S. Attorneys*
  *Room 6100*
  *PJKK Federal Building*
  *300 Ala Moana Blvd.*
  *Honolulu, Hawaii 96850*
  *Telephone: (808) 541-2850*
  *Harry.Yee@usdoj.gov*

September 22, 2023, Honolulu, Hawaii

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15605

I am the attorney or self-represented party.

**This brief contains** | 3,796 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [      ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Harry Yee | **Date** | Sep 22, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov