No. 23-15605

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

KEKAI WATANABE,

*Plaintiff-Appellant*,

v.

ESTELA DERR; K. ROBL, MR.; NIELSEN, NURSE; KWON, DR.,

*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Hawaii
Hon. Jill A. Otake, District Judge, Case No. 22-cv-00168

## PETITION FOR PANEL REHEARING OR REHEARING EN BANC FOR DEFENDANT-APPELLEE NIELSEN

Sara E. Margolis
MOLOLAMKEN LLP
430 Park Avenue
6th Floor
New York, NY  10022
(212) 607-8172 (telephone)
(212) 607-8161 (facsimile)
smargolis@mololamken.com

Jeffrey A. Lamken
  *Counsel of Record*
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 536-2001 (facsimile)
jlamken@mololamken.com

*Counsel for Defendant-Appellee Nielsen*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................3

I.    Proceedings Below .........................................................................4

II.   The Panel's Decision ......................................................................5

REASONS FOR GRANTING REHEARING ........................................................6

I.    The Panel's Rejection Of Alternative Remedial Structures As Irrelevant To The New-Context Inquiry Conflicts With This Court's And Supreme Court Precedent .......................................................7

II.   The Panel's Rejection Of Severity As Irrelevant Creates Intra- And Inter-Circuit Conflicts....................................................................11

CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Atonio v. Wards Cove Packing Co., Inc.*,
  810 F.2d 1477 (9th Cir. 1987) (en banc) ...............................................8

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971) ...............................................................*passim*

*Carlson v. Green*,
  446 U.S. 14 (1980) ................................................................*passim*

*Chambers v. Herrera*,
  78 F.4th 1100 (9th Cir. 2023) .............................................16

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001) ................................................................7, 9, 14

*Davis v. Passman*,
  442 U.S. 228 (1979) ............................................................8, 14

*Egbert v. Boule*,
  596 U.S. 482 (2022) ............................................................*passim*

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ............................................................14, 15

*Harper v. Nedd*,
  71 F.4th 1181 (9th Cir. 2023) ...........................................2, 6, 7, 8

*Johnson v. Terry*,
  119 F.4th 840 (11th Cir. 2024) ........................................*passim*

*Kalu v. Spaulding*,
  113 F.4th 311 (3d Cir. 2024) ...........................................2, 10

*Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*,
  346 F.3d 1190 (9th Cir. 2003) .........................................12

*Marquez v. Rodriguez*,
  81 F.4th 1027 (9th Cir. 2023) ..........................................*passim*

*Minneci v. Pollard*,
565 U.S. 118 (2012).....................................................................................7

*Noe v. United States*,
No. 23-1025, 2023 WL 8868491 (10th Cir. Dec. 22, 2023) ..............................10

*Rowland v. Matevousian*,
121 F.4th 1237 (10th Cir. 2024) ...................................................................3, 12

*Sargeant v. Barfield*,
87 F.4th 358 (7th Cir. 2023) ........................................................................2, 10

*Silva v. United States*,
45 F.4th 1134 (10th Cir. 2022) ....................................................................2, 10

*Snowden v. Henning*,
72 F.4th 237 (7th Cir. 2023) ............................................................................13

*Stanard v. Dy*,
88 F.4th 811 (9th Cir. 2023) ........................................................10, 11, 16, 17

*Varney v. Sec'y of Health and Human Servs.*,
859 F.2d 1396 (9th Cir. 1988) .........................................................................16

*Webster v. Fall*,
266 U.S. 507 (1925)...........................................................................................11

*Ziglar v. Abbasi*,
582 U.S. 120 (2017)...................................................................................*passim*

## RULES

Fed. R. App. Proc. 40.........................................................................................3, 6

## OTHER AUTHORITIES

Oral Argument, *Watanabe v. Derr*, No. 23-15605
(9th Cir. Feb. 14, 2024),
https://www.ca9.uscourts.gov/media/audio/?20240214/23-15605/ .....................1

# INTRODUCTION

The panel decision in this case departs from Supreme Court precedent, from the precedent of this Court, and creates a conflict with the decisions of other courts of appeals. Time and again the Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022). As a result, courts may not allow *Bivens* actions to proceed without *first* asking "whether the case presents 'a new *Bivens* context.'" *Id.* at 492. The context is new if it is "'meaningfully' different from the three cases in which the Court has implied a damages action." *Id.* at 483. "[E]ven minor differences can satisfy the new-context inquiry." *Marquez v. Rodriguez*, 81 F.4th 1027, 1032 (9th Cir. 2023). *Second*, if the context is new, courts must ask whether there is even a single "rational reason to think that" Congress is better positioned than courts to weigh the costs and benefits of a damages remedy. *Egbert*, 596 U.S. at 492. Any such reason precludes courts from offering a damages remedy under *Bivens*. *Id.*

Applying that two-step inquiry, the panel decision held that this case does not present a new *Bivens* context.[1] In reaching that result, however, the panel parted company with binding in-circuit precedent and Supreme Court precedent alike. The

---

[1] Plaintiff Kekai Watanabe has conceded that he is not entitled to a *Bivens* remedy if this case presents a new context. Oral Argument at 6:04-6:10, *Watanabe v. Derr*, No. 23-15605 (9th Cir. Feb. 14, 2024). Thus, if this Court finds a new context, it does not need to proceed to the second step of the *Bivens* analysis.

panel ruled that the existence of "alternative remedial structures" ***cannot*** be considered when deciding whether the context is "new" (the *Bivens* analysis's first step); such schemes, it held, may be considered ***only*** "at the *second* step of the *Bivens* analysis." Op.18. The panel then found—without explanation—that the Bureau of Prisons' Administrative Remedy Program ("ARP") did not render the context here "new" compared to the context the Supreme Court considered in *Carlson v. Green*, 446 U.S. 14 (1980).

That flatly contradicts this Court's prior decision in *Harper v. Nedd*, 71 F.4th 1181 (9th Cir. 2023). *Harper* held that, where a "case involves an alternative remedial structure, [it] exists in a novel context outside the preexisting *Bivens* framework." *Id.* at 1187. The panel decision here also creates a clear split of authority with decisions of the Third, Seventh, Tenth, and Eleventh Circuits, each of which have concluded that the ARP in particular should be considered at step one of the *Bivens* inquiry. *See Kalu v. Spaulding*, 113 F.4th 311, 327-28 (3d Cir. 2024); *Sargeant v. Barfield*, 87 F.4th 358, 368 (7th Cir. 2023); *Silva v. United States*, 45 F.4th 1134, 1142 (10th Cir. 2022); *Johnson v. Terry*, 119 F.4th 840, 858 (11th Cir. 2024). That so many circuits have reached that result is unsurprising: It is compelled by clear Supreme Court guidance. *See Ziglar v. Abbasi*, 582 U.S. 120, 148 (2017) (considering an alternative remedial structure at step one).

The panel decision exacerbates the intra- and inter-circuit conflicts by holding that factual differences relating to the severity of a plaintiff's injury and mistreatment are irrelevant to the new-context inquiry (so long as the plaintiff still states a claim for the same constitutional violation as previous *Bivens* cases). Op.17. But this Court's decisions make clear that differences in the severity of harm alleged, and the factual setting where harm occurs, can be dispositive for the new-context inquiry. *Marquez*, 81 F.4th at 1032. That ruling also creates a conflict with the Tenth and Eleventh Circuits, which both recently held that differences in the severity of a plaintiff's injury can render the *Bivens* context new. *Rowland v. Matevousian*, 121 F.4th 1237, 1243 (10th Cir. 2024); *Johnson*, 119 F.4th at 858. This Court should grant rehearing to restore the uniformity of precedent within this Circuit and re-align this Court's precedents with the decisions of other Circuits on these important and recurring questions. Fed. R. App. Proc. 40.

## BACKGROUND

This suit concerns a federal jail's response to injuries the plaintiff allegedly suffered during a gang riot. In July 2021, Plaintiff Kekai Watanabe was attacked by rival gang members in Honolulu's federal detention center, where he was being held pending sentencing. Op.6. During an evaluation that involved staff-nurse and defendant Francis Nielsen, Watanabe asked to be taken to a hospital to be treated for back pain. Op.6. Nielsen examined Watanabe and found "normal" results; Nielsen

consulted a doctor, authorized pain medication, and instructed Watanabe to follow up as needed. Op.24-25 (Smith, J., dissenting in part); SER-4-11. Several months later, Watanabe was diagnosed with a fractured coccyx. Op.7.

## I. PROCEEDINGS BELOW

Watanabe sued Nielsen and other Bureau of Prisons ("BOP") officials, seeking damages and injunctive relief for alleged deficiencies in his medical care and housing placement. Op.7. Nielsen moved to dismiss because Watanabe did not have a *Bivens* remedy. ER-4-5. The district court granted Nielsen's motion. ER-5.

Applying the two-step framework from *Egbert v. Boule*, 596 U.S. 482 (2022), the district court ruled that Watanabe's claims arose in a new *Bivens* context. Though Watanabe raised an Eighth Amendment deliberate-indifference claim like the plaintiff in *Carlson*, the "nature and severity" of Watanabe's claim differed meaningfully from *Carlson*. ER-14. The claim in *Carlson* involved a starkly deficient response to a life-threatening medical emergency, whereas Watanabe's allegation was that defendants were too slow in sending him to a hospital outside an emergency context. ER-15-16. Watanabe's injury (a fractured coccyx) was also less severe than the asthma attack in *Carlson*, which resulted in the prisoner's death. ER-16. Finally, the district court reasoned that the ARP provided an alternative remedial structure not considered in *Carlson*—a difference sufficiently meaningful to render the context "new." ER-18-19. Having found a new *Bivens* context, the

district court also concluded that the ARP and other special factors precluded extending a *Bivens* remedy.  ER-21.

## II.   THE PANEL'S DECISION

A divided panel of this Court reversed, finding that Watanabe's "claim does not meaningfully differ from *Carlson*."  Op.11.  The panel compared Watanabe's allegations to those in *Carlson* with respect to six "non-exhaustive" factors the Supreme Court identified in *Ziglar v. Abbasi*, 582 U.S. 120 (2017).[2]  Op.11-13.  It then held that differences in the severity of Watanabe's injury were irrelevant to the new-context inquiry.  Op.17.

With respect to "alternative remedial structures," the panel agreed that alternative remedies "can be one 'special factor' to be considered at the *second* step of the *Bivens* analysis."  Op.18.  But the panel decision held it was improper to consider remedial structures like the ARP at the first step, when determining whether the context is new.  *Id.*  The panel also instructed the district court to allow Watanabe a chance to amend his claim for injunctive relief.  Op.20.

Judge Smith dissented in part.  Op.21.  He concluded that Watanabe's *Bivens* claim arose in a new context:  The "claim is meaningfully different than *Carlson*,"

---

[2] Those factors include the rank of officers, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance, the statutory or legal mandate under which the officer was operating, and the presence of other special factors not previously considered.  *Ziglar*, 582 U.S. at 139-40.

he observed, "when considering . . . (1) the severity of the mistreatment and (2) the severity of the medical need." Op.24. On the first point, he noted that Watanabe's results during Nielsen's initial examination "were within normal limits." Op.24. The care Nielsen provided—which involved speaking with a doctor who authorized "painkillers and anti-inflammatory drugs," "encourag[ing] gentle stretching exercises as tolerated," and instructing Watanabe "to follow-up" during the sick call "if necessary"—was meaningfully distinct from and far less problematic than the sweeping failures to follow medical procedure in *Carlson*. *Id.* Further, "Watanabe's medical need was less severe than that in *Carlson*, which resulted in that inmate's death." Op.25. Judge Smith would have ruled that those distinctions gave rise to a new *Bivens* context and precluded Watanabe's *Bivens* claim. Op.26.

## REASONS FOR GRANTING REHEARING

The panel decision in this case departs from Supreme Court precedent, creates a square conflict with binding in-circuit precedent, and creates conflicts with the decisions of numerous other courts of appeals. *See* Fed. R. App. Proc. 40. A case presents a new *Bivens* context if it "differs 'in a meaningful way from previous *Bivens* cases.'" *Marquez*, 81 F.4th at 1031. "[T]he Supreme Court has articulated a broad understanding of whether a context is new." *Harper*, 71 F.4th at 1185. "[E]ven minor differences can satisfy the new-context inquiry," including differences in the "risk of harm" or the "factual setting." *Marquez*, 81 F.4th at 1032.

That is because the focus, even at the "new context" inquiry, reduces to a "single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. The panel's holdings that the existence of alternative remedies and the severity of Watanabe's injuries are irrelevant to the "new context" inquiry contradict Supreme Court precedent, conflict with the precedent of this Circuit, and create a conflict with the decisions of other courts of appeals.

I. **THE PANEL'S REJECTION OF ALTERNATIVE REMEDIAL STRUCTURES AS IRRELEVANT TO THE NEW-CONTEXT INQUIRY CONFLICTS WITH THIS COURT'S AND SUPREME COURT PRECEDENT**

The Supreme Court has repeatedly made clear that the existence of an alternative remedial regime can render a case different from prior *Bivens* cases and thus render the context "new." *Ziglar*, 582 U.S. at 148-49; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001); *Minneci v. Pollard,* 565 U.S. 118, 126 (2012). So has this Court: Where a "case involves an alternative remedial structure, [it] exists in ***a novel context*** outside the preexisting *Bivens* framework." *Harper,* 71 F.4th at 1187 (emphasis added).

1. The panel decision in this case conflicts with those holdings. It held that alternative remedial structures cannot be considered at the first step of the *Bivens* inquiry (when deciding whether the context is "new"), but instead can be considered only "at the *second* step of the *Bivens* analysis." Op.18. But *Ziglar* could hardly be

clearer in saying the opposite. There, the Supreme Court held that "alternative remedies" "present a new context for *Bivens* purposes." 582 U.S. at 147-48 (considering an alternative remedial structure at step one). This Court's decision in *Harper* is equally clear. It held that alternative remedial schemes embodied by the Civil Service Reform Act of 1978, and executive department "internal grievance procedures," created a different *Bivens* context from the employment discrimination claim in *Davis v. Passman*, 442 U.S. 228 (1979). 71 F.4th at 1187. The Court explained that, "[b]ecause th[e] case involve[d] an alternative remedial structure, th[e] case exists in a novel context outside the preexisting *Bivens* framework." *Id.*

The panel, by contrast, held that alternative remedial structures are only considered at the second step of the *Bivens* inquiry (when asking whether Congress would be better situated to create a new *Bivens* claim). Op.18. That cannot be squared with *Harper*'s and *Ziglar*'s express consideration of such regimes at *Bivens* step one— and express declaration that such consideration is appropriate. Rehearing is warranted to eliminate the direct conflict with binding precedent. Alternatively, rehearing en banc should be granted to resolve the intra-circuit conflict with *Harper*. *Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477, 1478-79 (9th Cir. 1987) (en banc).

2.    The panel compounded its error by ruling that, "even if" alternative remedial structures could be considered in the new-context inquiry, the BOP's ARP would not render the *Bivens* context "new." Op.18. That ruling, too, conflicts with

Supreme Court precedent. For one thing, the Supreme Court has recognized that the BOP's administrative remedy program renders current inmates' "situation[s] altogether different" from the inmate in *Carlson*. *Malesko*, 534 U.S. at 523. And *Egbert* has now made clear that ***any*** " 'potential special factor[] that previous *Bivens* cases did not consider' " can render a context new because "no court could forecast every factor that might 'counsel hesitation.' " 596 U.S. at 492-93. This Court has ruled on multiple occasions that the ARP is a " 'special factor[] counseling hesitation' " that precludes extending *Bivens* at step two. *E.g.*, *Marquez*, 81 F.4th at 1032-33. And *Carlson* did not previously consider that program; it is nowhere mentioned in that decision. The panel did not explain why the ARP suffices as a "special factor" at step two but not step one.

The panel decision also opens a circuit conflict. Consistent with Supreme Court guidance, many circuits have now ruled that the ARP creates a new context at step one. In *Johnson v. Terry*, 119 F.4th 840 (11th Cir. 2024), for example, the Eleventh Circuit considered whether to imply a *Bivens* remedy for Eighth Amendment medical deliberate-indifference claims. *Id.* at 858. The court acknowledged that the claims at issue had " 'significant parallels' to *Carlson*'s." *Id.* at 857. Nonetheless, the court found that "the context of these claims is different from the context of the claim in *Carlson* because there the Court [in *Carlson*] did not consider whether there were alternative remedies under the current alternative

remedy analysis." *Id.* at 858. The ARP, the Eleventh Circuit held, thus created a new context. *Id.* at 858-59.

Similarly, in *Kalu v. Spaulding*, 113 F.4th 311 (3d Cir. 2024), the Third Circuit pointed to the ARP as creating a new context at step one. *Id.* at 327-28. Because the ARP is a " 'feature[] that w[as] not considered' by the Supreme Court when it decided *Carlson*," it created "a new context." *Id.* at 328 (the "situation [in *Carlson*] bears little resemblance to Kalu's case" because "the BOP's ARP provides inmates with an alternative avenue for relief"). In *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), the Tenth Circuit found a prisoner's Eighth Amendment *Bivens* claim "foreclosed by the availability of the BOP Administrative Remedy Program." *Id.* at 1142; *see also Noe v. United States,* No. 23-1025, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) (confirming that *Silva* applies to Eighth Amendment medical deliberate-indifference claims and that "the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity" with *Carlson*). And in *Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. 2023), the Seventh Circuit determined that the ARP constituted a "special factor[] that warrant[s] hesitation" at both "step one" *and* "step two" of the analysis. *Id.* at 368-69; *see id.* at 366 ("[W]hen special factors are relevant, they play a part in both steps of the inquiry.").

In reaching the opposite result, the panel decision described another decision—*Stanard v. Dy*, 88 F.4th 811 (9th Cir. 2023)—as having "previously held" that

"a claim similar to Watanabe's does not present a new *Bivens* context, notwithstanding the fact that the incarcerated individual had access to and used the BOP's administrative complaint system." Op.18. If that were correct, that would underscore the conflict with the Supreme Court and other circuits, and thus the necessity of en banc review. But *Stanard* contains no such holding. The decision acknowledged the fact that the plaintiff there grieved his injury. 88 F.4th at 814. But no party argued— and the Court thus did not consider—whether the ARP created a new context for an Eighth Amendment deliberate-indifference claim. *See id.* at 816-18. Since *Stanard* says nothing about whether the ARP creates a new context, *Stanard* cannot be taken as deciding the issue. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided."). This Court thus can restore uniformity with the decisions of other circuits, and the Supreme Court, by granting rehearing here without regard to *Stanard*.

## II. THE PANEL'S REJECTION OF SEVERITY AS IRRELEVANT CREATES INTRA- AND INTER-CIRCUIT CONFLICTS

The panel held that, "even if we assume that Watanabe received less deficient care than [the inmate] in *Carlson*, this is not a meaningful difference" because Watanabe's claim and the claim in *Carlson* both involved alleged "deliberate indifference [to medical need] in violation of the Eighth Amendment." Op.17. That

refusal to consider *factual* differences between this case and *Carlson* creates yet another circuit split and contradicts this Court's own precedents.

1. The panel decision creates a square conflict with the Tenth and Eleventh Circuits' recent decisions in *Rowland v. Matevousian*, 121 F.4th 1237 (10th Cir. 2024) and *Johnson v. Terry*, 119 F.4th 840 (11th Cir. 2024). In *Johnson*, the Eleventh Circuit found "a new context under the first-stage" of the *Bivens* inquiry *because* "[t]he severity, type, and treatment of Johnson's injuries were different from those of the plaintiff in *Carlson*." 119 F.4th at 859. And in *Rowland*, the Tenth Circuit likewise pointed to the absence of allegations that prison officials "act[ed] contrary to the doctor's recommendations," gave "'contra-indicated drugs,'" or used medical equipment "known to be inoperative" as meaningful differences from *Carlson* that gave rise to a new *Bivens* context. 121 F.4th at 1243. Both decisions flatly contradict the panel's determination that "receiv[ing] less deficient care than" that at issue "in *Carlson* . . . is not a meaningful difference." Op.17.

This Court will "decline to create a circuit split unless there is a compelling reason to do so." *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). No "compelling reason" exists here. To the contrary, differences in the "severity of the mistreatment" and the "severity of the medical need" matter crucially to the costs of implying *Bivens* damages remedies. Op.24 (Smith, J., dissenting in part). In *Carlson*, the estate of the deceased plaintiff

alleged that prison officials acted "against the advice of doctors," ignored his symptoms, and administered treatment "known to be" ineffective. *Carlson*, 446 U.S. at 16 n.1. The Supreme Court determined that a *Bivens* remedy could "serve[] a deterrent purpose" against prison officials knowingly ignoring medical advice or administering no or ineffective treatment. *Id.* at 21.

Watanabe alleged nothing of the sort here. Nielsen's "physical examination" of Watanabe revealed "results [that] were within normal limits," and Nielsen consulted with a doctor on the appropriate treatment plan. Op.24 (Smith, J., dissenting in part); *see* SER-7-10. Allowing a plaintiff to seek damages from a BOP official in such circumstances risks transforming *Carlson* from a limited deterrent against rogue actors into a broad license to second-guess diagnostic and treatment decisions. *See* Op.24 (asking whether "a *Bivens* claim arise[s] every time a prison refuses to send an inmate for outside treatment" even absent any allegation of "how the prison should have known" outside treatment was necessary); *Ziglar*, 582 U.S. at 140 (explaining that an increased "risk of disruptive intrusion by the Judiciary into the functioning of other branches" constitutes a meaningful difference giving rise to a new context). That is precisely the kind of alteration to the "cost-benefit balance" that constitutes a "meaningful difference[]" and renders the *Bivens* context "new." *Marquez*, 81 F.4th at 1031 (quoting *Snowden v. Henning*, 72 F.4th 237, 244 (7th Cir. 2023)).

*Carlson*, moreover, arose in the context of a "medical emergency" that "resulted in that inmate's death." ER-16; *see Carlson*, 46 U.S. at 16 n.1. For the prisoner in *Carlson*, forward-looking relief thus was not an option. It was "damages or nothing," a hallmark of all recognized *Bivens* contexts. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 410 (1971) (Harlan, J., concurring in the judgment) ("For people in Bivens' shoes, it is damages or nothing."); *Davis*, 442 U.S. at 245 ("For Davis, as for Bivens, 'it is damages or nothing.'"); *see Malesko*, 534 U.S. at 71-72 (declining to extend a *Bivens* remedy where, unlike in prior *Bivens* cases, the plaintiff could seek other remedies). By contrast, Watanabe's complaint that Nielsen did not immediately send him to a hospital could have been more promptly addressed by seeking injunctive relief. *See, e.g.*, *Ziglar,* 582 U.S. at 148 (considering the availability of "an injunction . . . or some other form of equitable relief" as a factor creating a new context and precluding a *Bivens* remedy).[3]

    2.    Treating differences in the mistreatment's and injury's severity as irrelevant to the new-context inquiry also conflicts with this Court's decision in *Marquez*. In that case, the plaintiff invoked *Farmer v. Brennan*, 511 U.S. 825

---

[3] While Watanabe ultimately did seek injunctive relief when he filed this lawsuit, he has shown less urgency about that claim than he has for seeking money damages— failing to explicitly renew his claim for equitable relief when he filed his amended complaint. Op.19.

(1994), as establishing a *Bivens* remedy for his Eighth Amendment failure-to-protect claims. *See Marquez*, 81 F.4th at 1030. This Court rejected that argument. *Id.* But, the Court further held, the failure-to-protect claim in *Marquez* represented a "new context" because the severity of the harm and misconduct was different than that in *Farmer*. Specifically, the plaintiff in *Farmer*—"a transgendered individual" with "feminine characteristics"—"faced a high[] risk of harm" from other inmates based on appearance alone. *Id.* at 1032. The plaintiff in *Marquez*—an "accused sex offender who requested segregation based solely on a charged crime that was unknown to others"—faced a relatively lower risk. *Id.* That disparity in ***degree*** of risk constituted a "meaningful factual difference[]" that supported a new-context finding. *Id.* That reasoning cannot be squared with the panel's determination that differences in the degree of mistreatment are not "meaningful" in the new context inquiry. Op.17. And other differences abound: This case concerns care in a jail (Honolulu's Federal Detention Center, ER-80) rather than a prison. This Court has already ruled that the "difference in setting" between jails and prisons "is significant" to the new-context inquiry. *Marquez*, 81 F.4th at 1032; *see also Egbert*, 596 U.S. at 492 ("[A] new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'").[4]

---

[4] As *Marquez* explained, jails are "not intended for long-term detention" and may therefore be less equipped to provide long-term care; they are "typically smaller" than prisons and may have fewer resources; and the logistics of providing care may

3. The panel's effort to invoke *Chambers v. Herrera*, 78 F.4th 1100 (9th Cir. 2023) and *Stanard* to sweep away differences in severity and injury, Op.14-15, at most exacerbates any conflict, and the consequent need for en banc review. But neither case supports the view that severity of mistreatment and injury are irrelevant to the new-context inquiry. *Chambers* **declined** to find a *Bivens* claim "viable" based on a prison official's "refus[al] to treat" a prisoner's broken arm, allegedly "to cover up [an] assault" committed by a prison guard. 78 F.4th at 1108. The Court posited that an amended complaint with "more detailed factual allegations" **might** support a *Bivens* claim. *Id.* But it emphasized that the district court would have to analyze any such amendment in light of the Supreme Court's guidance in *Egbert* to decide "whether this claim arises in a different context." *Id.* If anything, *Chambers* reinforces that the new-context inquiry **depends critically** on the "detailed factual allegations." *Id.* It does not support the panel's opposite conclusion that gross dissimilarities between Watanabe's treatment and injury and those in *Carlson* are irrelevant.

---

differ because jails "house a different class of inmates" and are "operated differently." 81 F.4th at 1032. Though Nielsen did not previously argue the distinction between prisons and jails, this Court has considered on rehearing "pure question[s] of law" that may "affect a number of" other cases, especially where declining to consider the issue might cause "further delay." *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1398 (9th Cir. 1988). Here, nothing prevents Nielsen—who has not yet answered Watanabe's complaint—from raising this potentially dispositive difference in "context" in any further proceedings. To avoid potential delay, the Court should reach this issue now.

Nor does *Stanard*. In *Stanard*, the Court factually "disagree[d]" with the premise that deficiencies in Stanard's treatment and condition differed dramatically from those in *Carlson*, since Stanard was repeatedly denied "***any*** . . . treatment" for a similarly "life-threatening disease." 88 F.4th at 817. The Court added that, "even assuming that Stanard received less deficient care than the inmate in *Carlson*, that difference in degree" was not sufficiently meaningful to "giv[e] rise to a new context." *Id.* But the qualification reflected the notion that any difference in degree between *Stanard* and *Carlson* would have to be slight. *Stanard* never purported to determine that ***relatively greater*** differences in degree are irrelevant to the new-context inquiry. *See id.*; Op.24 (Smith, J., dissenting in part) (characterizing *Stanard* as considering differences in "severity of the mistreatment" as relevant to the new-context inquiry). If it did, however, that would only exacerbate the conflicts with this Court's *Marquez* decision and the Eleventh Circuit's decision in *Johnson*, which hold the opposite.

## CONCLUSION

The petition for panel rehearing or rehearing en banc should be granted, and the judgment of the district court should be affirmed.

December 19, 2024

Respectfully submitted,

/s/ Jeffrey A. Lamken

Sara E. Margolis
MOLOLAMKEN LLP
430 Park Avenue
6th Floor
New York, NY 10022
(212) 607-8172 (telephone)
(212) 607-8161 (facsimile)
smargolis@mololamken.com

Jeffrey A. Lamken
    *Counsel of Record*
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 536-2001 (facsimile)
jlamken@mololamken.com

*Counsel for Defendant-Appellee Nielsen*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 23-15605

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

● Prepared in a format, typeface, and type style that complies with Fed. R. App. P.
   32(a)(4)-(6) and **contains the following number of words:** | 4,168 |.
   *(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/ Jeffrey A. Lamken | **Date** | 12/19/24
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                                 *Rev. 12/01/24*