No. 23-15605

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KEKAI WATANABE,

*Plaintiff-Appellant,*

v.

ESTELA DERR, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Hawaiʻi
No. 22-00168 JAO-RT
Hon. Jill A. Otake

PLAINTIFF-APPELLANT'S RESPONSE TO PETITION FOR
REHEARING AND REHEARING EN BANC

Samuel Weiss
D Dangaran
Rights Behind Bars
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

*Attorneys for Plaintiff-Appellant Kekai Watanabe*

# TABLE OF CONTENTS

**ARGUMENT** ...................................................................................................1

    I.   This Court Should Not Permit Defendant to Raise an Issue for the First Time in its Petition for Panel Rehearing or Rehearing En Banc......1

    II.  Defendant's Rule Would Abrogate *Carlson*. .............................................3

    III. The Panel Opinion Did Not Create an Intra-Circuit Split. ....................9

    IV. The Panel Opinion Did Not Create a Circuit Split. .................................10

    V.  The Panel Opinion Correctly Held that the Severity of a Medical Deliberate Indifference Claim Does Not Create a Meaningful Difference Under *Abbasi*........................................................................................12

**CONCLUSION**..........................................................................................15

**CERTIFICATE OF SERVICE**

**CERTIFICATE OF COMPLIANCE**

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) ..............................................................10

*Bernier v. Allen*, 38 F.4th 1145 (D.C. Cir. 2022) ...................................................15

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ........4

*Boardman v. Estelle*, 957 F.2d 1523 (9th Cir. 1992) ................................................1

*Bosse v. Oklahoma*, 580 U.S. 1 (2016) ..................................................................10

*Carlucci v. Chapa*, 884 F.3d 534 (5th Cir. 2018) ...................................................18

*Chambers v. C. Herrera*, 78 F.4th 1100 (9th Cir. 2023) .........................................16

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ...............................................11

*Cross v. Buschman*, No. 22-3194, 2024 WL 3292756 (3d Cir. July 3, 2024) ....................18

*Davis v. Passman*, 442 U.S. 228 (1979) ................................................................12

*Egbert v. Boule*, 142 S. Ct. 457 (2021) ................................................................11

*Egbert v. Boule*, 596 U.S. 482 (2022) .....................................................6, 7, 11, 16

*Estelle v. Gamble*, 429 U.S. 97 (1976) ....................................................................7

*Farmer v. Brennan*, 511 U.S. 825 (1994) ................................................................5

*Fields v. Palmdale Sch. Dist.*, 447 F.3d 1187 (9th Cir. 2006) ...................................3

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) .........................1

*Hampton v. Jones*, No. 21-2880, 2022 WL 4820355 (3d Cir. Oct. 3, 2022) ....................14

*Harper v. Nedd*, 71 F.4th 1181 (9th Cir. 2023) .................................................2, 12

*Hernandez v. Mesa*, 589 U.S. 93 (2020) ................................................................16

*Hogue v. Nooth*, 738 F. App'x 426 (9th Cir. 2018) ................................................12

*Hohn v. United States*, 524 U.S. 236 (1998) ..........................................................11

*Hurst v. Derr*, No. 23-15523, 2024 WL 3842097 (9th Cir. 2024) .................................3

*Johnson v. Terry*, 119 F.4th 840 (11th Cir. 2024) .....................................10, 13, 17

*Langford v. Joyner*, 62 F.4th 122 (4th Cir. 2023) ...................................................18

*Marquez v. Rodriguez*, 81 F.4th 1027 (9th Cir. 2023) .........................................18, 19

*Masias v. Hodges*, No. 21-6591, 2023 WL 2610230 (4th Cir. Mar. 23, 2023) .................15

*McCarthy v. Madigan*, 503 U.S. 140 (1992) ........................................................5, 9

*Minneci v. Pollard*, 565 U.S. 118 (2012) ...............................................................11

*OpenAI, Inc. v. Open Artificial Intelligence, Inc.*, No. 24-1963, 2024 WL 4763687 (9th Cir. Nov. 13, 2024) ........................................................................................................3

*Patton v. Blackburn*, No. 21-5995, 2023 WL 7183139 (6th Cir. May 2, 2023) .................15

*Porter v. Nussle*, 534 U.S. 516 (2002) .........................................................................9

*Rowland v. Matevousian*, 121 F.4th 1237 (10th Cir. 2024) .......................................... 13, 17

*Stanard v. Dy*, 88 F.4th 811 (9th Cir. 2023) ............................................................. 14, 16

*Vaughn v. Bassett*. No. 22-10962, 2024 WL 2891897 (5th Cir. June 10, 2024) ........ 14, 18

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ....................................................................passim

## Statutes

42 U.S.C. § 1997e (1998) ............................................................................................7

42 U.S.C. § 1997e(a) ..............................................................................................6, 7

## Other Authorities

141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) ............................................7

Bureau of Prisons, Control, Custody, Care, Treatment, and Instruction of Inmates, 44 Fed. Reg. 62,248 (Oct. 29, 1979). .........................................................................7

Cornelia T.L. Pillard, *Taking Fiction Seriously: The Strange Results of Public Officials' Individual Liability Under Bivens*, 88 Geo. L.J. 65, 79 (1999) ...........................................2

James E. Pfander, Alexander A. Reinert, Joanna C. Schwartz, *The Myth of Personal Liability: Who Pays When* Bivens *Claims Succeed*, 72 Stan. L. Rev. 561, 579 (2020)........2

Nelson Daranciang, New Jailhouse Ready for First Inmates, Honolulu Star Bulletin (June 13, 2001), https://archives.starbulletin.com/2001/06/13/news/story9.html ................................................................................................................................15

**ARGUMENT**

## I. This Court Should Not Permit Defendant to Raise an Issue for the First Time in its Petition for Panel Rehearing or Rehearing En Banc.

Defendant Nielsen's primary argument is that the Bureau of Prisons' (BOP') Administrative Remedy Program (ARP) renders this case meaningfully different from *Carlson v. Green*, 446 U.S. 14 (1980), and therefore precludes a *Bivens* remedy. Pet. 2, 7–11. Though Defendant now finds this conclusion to be "clear," and the panel's rejection of it bizarre and "without explanation," Pet. 2, she failed to make this argument on appeal. *See* Ans. Br. 9–13 (raising only the nature and severity of the claim as meaningful differences under *Bivens* step one); *id.* at 14–18 (arguing only at *Bivens* step two that alternative remedial structures were available). Her Petition does not explain her change of heart from deeming this argument one not worth mentioning as a meaningful difference to one of "exceptional importance," Fed. R. App. P. 40(b)(2), and no intervening precedent explains it. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1173 n.35 (9th Cir. 2009) (holding a "contention" that was not "advanced . . . initially" was "waived" (citation omitted)); *Boardman v. Estelle*, 957 F.2d 1523, 1535–37 (9th Cir. 1992) (applying the waiver doctrine to arguments raised for the first time in a petition for hearing). Her answering brief never mentioned *Harper v. Nedd*, 71 F.4th 1181 (9th Cir. 2023), which she now argues "flatly contradicts" the panel opinion to an extent that merits en banc review. Pet. 2, 8.

Nor is this a circumstance in which the panel surprised Defendant by reaching an unexpected issue. As explained in the briefing to the Panel, the ARP not only can but must be filed by all federal prisoners before filing a federal lawsuit, so any recognition of a *Bivens* remedy for a federal prisoner inherently offends the conclusion Defendant asks this Court to reach. *See* Op. Br. 18–20. But that outcome would contradict the Supreme Court's decision not to overturn *Carlson*. *Id.* at 20 ("So long as *Carlson* remains good law, Watanabe has a claim."). Defendant did not defend the district court's error on this point in her Answering Brief.

Defendant has every right to retain new counsel to make envelope-pushing arguments that the United States was unwilling to endorse despite being the functional defendant in this case.[1] Those new counsel, however, take the case as they find it and are not entitled to write on a blank slate. *See OpenAI, Inc. v. Open Artificial Intelligence, Inc.*, No. 24-1963, 2024 WL 4763687, at *2 (9th Cir. Nov. 13, 2024) (stating that retaining new counsel does not afford a party a "re-do"); *Fields v. Palmdale Sch. Dist.*, 447 F.3d 1187, 1190 (9th Cir. 2006) (per curiam) ("We do not consider on rehearing new issues previously not raised, briefed or argued.").

---

[1] "[A]s a practical matter, *Bivens* liability runs against the federal government, even though as a formal matter the named defendants must be individual officials in their personal capacities." Cornelia T.L. Pillard, *Taking Fiction Seriously: The Strange Results of Public Officials' Individual Liability Under Bivens*, 88 Geo. L.J. 65, 79 (1999); *see also* James E. Pfander, Alexander A. Reinert, Joanna C. Schwartz, *The Myth of Personal Liability: Who Pays When* Bivens *Claims Succeed*, 72 Stan. L. Rev. 561, 579 (2020).

Notably, the same panel that issued this opinion addressed this exact issue in a companion appeal heard during the same sitting; the panel was in agreement as to the question. *See Hurst v. Derr*, No. 23-15523, 2024 WL 3842097, at *2 (9th Cir. 2024); *see also id.* (M. Smith, J., concurring in the judgment) (agreeing that "the two-step framework" of *Bivens* assesses alternative remedial structures at step two). The United States could have petitioned for panel or en banc rehearing in that case, where the issue was squarely presented. This case is a poor vehicle to address it, regardless of Defendant's newfound wish to do so.

## II. Defendant's Rule Would Abrogate *Carlson*.

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers who violate an individual's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). *Bivens* established that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court." *Carlson*, 446 U.S. at 18. The Supreme Court subsequently permitted a damages remedy against rank-and-file federal prison officials for violating the Eighth Amendment in *Carlson. See id.* at 18–23. There, the mother of a deceased asthma patient who had been incarcerated in federal prison sued prison officials for deliberate indifference to his serious medical needs after they failed to give him competent medical attention, administered contraindicated drugs and a non-working respirator that worsened his condition, and delayed his transfer to an outside hospital. *Id.* at 16 n.1. The Court concluded that a damages remedy was

appropriate for the alleged Eighth Amendment violation because rank-and-file prison officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Id.* at 19. Though "requiring [prison officials] to defend [a damages] suit might inhibit their efforts to perform their official duties" to some extent, the Court explained that qualified immunity "provides adequate protection." *Id.* Meanwhile, a damages remedy against individual prison officials for Eighth Amendment violations "serves a deterrent purpose" by imposing "personal financial liability." *Id.* at 21.

The Court reaffirmed *Carlson* a decade later, reiterating in *McCarthy v. Madigan* that "prison officials" are subject to *Bivens* liability because they "do not enjoy an independent status in our constitutional scheme, nor are they likely to be unduly inhibited in the performance of their duties by the assertion of a *Bivens* claim." 503 U.S. 140, 151 (1992) *superseded by statute on other grounds as recognized by Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). Two years after that, in *Farmer v. Brennan*, the Court applied *Carlson* to another Eighth Amendment claim, this time based on prison officials' failure to protect the plaintiff from a substantial risk of violence from another prisoner. 511 U.S. 825, 830 (1994). The Supreme Court acknowledged the viability of the plaintiff's claim under *Bivens* and proceeded to clarify the standard for Eighth Amendment deliberate indifference claims in a *Bivens* suit. *Id.* at 832–40.

In *Ziglar v. Abbasi*, 582 U.S. 120 (2017), the Court explained how to determine the availability of a *Bivens* remedy for a given constitutional claim. First, the court should

evaluate whether the case arises in a "new *Bivens* context," such that it "is different in a meaningful way from previous *Bivens* cases." *Id.* at 139. If the claim presents a "new context," the court should inquire whether there are any "special factors counselling hesitation" before extending a damages remedy into the new context. *Id.* at 136. A case may arise in a "new context:"

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140; *see also id.* at 147–48; *Egbert v. Boule*, 596 U.S. 482, 492 (2022) ("[A] new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'").

Although the Supreme Court has warned against expanding *Bivens* into new contexts, *Carlson* claims are not new contexts. *See Abbasi*, 582 U.S. at 140. Applying each of the *Abbasi* factors, Watanabe's allegations do not present a "new *Bivens* context" as either a legal or factual matter. *See id.* at 139–40. The Eighth Amendment's prohibition on deliberate indifference to serious medical needs is the source of the claim at issue in both *Carlson* and Watanabe's suit. Judicial precedent provides no "less meaningful" of a "guide for official conduct" as in *Carlson*. *See id.* at 148 ("The Court has long made clear the standard for claims alleging failure to provide medical treatment to a

prisoner—'deliberate indifference to serious medical needs.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

There is no "meaningful" distinction between Watanabe's claims and those in Carlson, as the Supreme Court defined the term in *Egbert*, 596 U.S. at 492, and *Abbasi*, 582 U.S. at 139–40. The rank of the officers involved is no higher here than in *Carlson*. In fact, Watanabe seeks damages from only the rank-and-file medical official who was personally responsible for his injury. Panel Op. 11. The plaintiff in *Carlson*, by contrast, sought damages from a range of officials at different levels of the prison bureaucracy, all the way up to the federal director of the BOP. *Carlson*, 446 U.S. at 14. The official action at issue in both cases is equally specific: Each suit involved a claim of direct harm by a prison official to an individual in their care rather than a challenge to a general policy that created certain conditions of confinement. In sum, there are no factors implicated here "that previous *Bivens* cases did not consider." *Egbert*, 596 U.S. at 492. Moreover, there is no greater risk in this case of intrusion by the judiciary into the functioning of other branches. As the Supreme Court explained in *Carlson*, prison officials lack the kind of "independent status in our constitutional scheme" that would render inappropriate "judicially created remedies against them." 446 U.S. at 19.

Defendant argues that because there is an alternative remedy—the BOP's administrative grievance process, the ARP—Watanabe lacks a *Bivens* remedy regardless of any similarities to *Carlson*. The ARP applies to all medical deliberate indifference claims. In fact, completing the ARP is *mandatory* before filing a federal lawsuit. *See* 42

U.S.C.A. § 1997e(a). Perhaps, one might think, the ARP is relatively new, meaning that its presence differentiates Watanabe's case from *Carlson* and the several Supreme Court opinions reaffirming it as good law, most recently *Egbert*. Not so. The ARP is decades-old and was in place when *Carlson* was decided. *See* Bureau of Prisons, Control, Custody, Care, Treatment, and Instruction of Inmates, 44 Fed. Reg. 62,248 (Oct. 29, 1979). And if "new" simply means unconsidered by the opinions in *Carlson* and *Bivens*, both opinions would be obviated, and *Abbasi*'s lengthy discussion of the plaintiffs' conditions claims would be rendered incoherent. If the existence of the grievance process was sufficient to create a new context, why the lengthy analysis of other variables while not mentioning the grievance process available in all federal prisons?

Holding that the ARP precluded a *Bivens* remedy out of purported separation of powers concerns would be particularly ironic here. In 1995, Congress passed the Prison Litigation Reform Act (PLRA), making the policy choice that prisoners could bring *Bivens* claims so long as they exhausted the ARP first. *See* 42 U.S.C. § 1997e(a). In *McCarthy*, the Supreme Court held that a federal prisoner did not need to exhaust the ARP before bringing a *Bivens* claim alleging deliberate indifference to a serious medical need. 503 U.S. at 142. With the PLRA, Congress legislated in response to this ruling. Congress could have decided that the ARP should displace a *Bivens* remedy; instead it made the more modest decision to extend the exhaustion requirement to apply to any suit "under section 1983 of this title, or any other Federal law." 42 U.S.C. § 1997e (1998); *see also* 141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) (statement of

Rep. Lobiondo) (citing *McCarthy* as the reason the amendment to the exhaustion requirement was needed). The Supreme Court has interpreted this provision specifically to require that "federal prisoners suing under [*Bivens*] must first exhaust inmate grievance procedures." *Porter v. Nussle*, 534 U.S. 516, 534 (2002). In legislating on whether a prisoner must exhaust prison remedies before bringing a *Bivens* action, Congress cannot possibly have intended such remedies to displace a *Bivens* action.[2] Defendant implicitly asks this Court to conclude that *Carlson* is no longer good law. The Supreme Court in *Egbert* and *Abbasi*, Defendant argues, overruled *Carlson sub silentio*.

The Supreme Court has repeatedly reminded lower courts that even if a precedent of the Court "appears to rest on reasons rejected in some other line of decisions," they should nonetheless "follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (citation omitted); *see also Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) ("[I]t is this Court's prerogative alone to overrule one of its precedents." (citation omitted)). Accordingly, decisions of the Supreme Court "remain binding precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised

---

[2] The Eleventh Circuit in *Johnson v. Terry*, an opinion Defendant asks this Court to emulate, wrote that it could not recognize *Carlson* cases as good law because "doing so would arrogate legislative power and allow federal prisoners *to bypass the grievance process* put in place by Congress through the Executive Branch." 119 F.4th 840, 862 (11th Cir. 2024) (emphasis added). This is backwards, as Congress used its "legislative power" to forbid prisoners from "bypass[ing] the grievance process" in 1995, instead requiring them to complete the grievance process before bringing *Carlson* claims.

doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 252–53 (1998).

Despite multiple opportunities, however, the U.S. Supreme Court has declined to overrule *Bivens* or its progeny. *See, e.g.*, *Minneci v. Pollard*, 565 U.S. 118, 126 (2012); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67–68 (2001). Just the opposite: In *Abbasi*, the Court cautioned that its opinion was "not intended to cast doubt on the continued force, or even the necessity, of *Bivens*." 582 U.S. at 134. In *Egbert*, the Court again expressly refused to overrule *Bivens*, stating that the Court "need not reconsider *Bivens* itself" to resolve the case before it. 596 U.S. at 502; *see also id.* at 491 (noting that the Court declined to "dispense with Bivens altogether"). Were this not clear enough, petitioners in *Egbert* sought certiorari on the question of whether *Bivens* should be overruled in its entirety and the Court denied certiorari on that question. *See Egbert v. Boule*, 142 S. Ct. 457 (2021) (mem.).

As this Court wrote in *Harper*, "The Supreme Court means what it says: *Bivens* claims are limited to the three contexts the Court has previously recognized and are not to be extended unless the Judiciary is better suited than Congress to provide a remedy." 71 F.4th at 1183. Limited yes but still extant—the Supreme Court means what it says on that question too.

## III.   The Panel Opinion Did Not Create an Intra-Circuit Split.

Defendant raises a new argument that the Panel Opinion created an intra-circuit split with this Court's opinion in *Harper*. This argument is novel, as Defendant never

invoked this argument from *Harper* to this Court in her original briefing, which one imagines she would have if it dictated the outcome. "Under longstanding circuit precedent, petitioner's reliance on that case is waived because at no point in this litigation until the petition for rehearing did she argue that [this Court] should apply [*Harper*], or even consider it." *Hogue v. Nooth*, 738 F. App'x 426, 428 (9th Cir. 2018) (cleaned up).

The context of *Harper* was obviously new: a plaintiff brought an employment discrimination case against a totally different category of defendants than those in *Davis v. Passman*, 442 U.S. 228 (1979). In its lengthy new-context analysis, Defendant notes, this Court mentioned that the case "involves an alternative remedial structure." *Harper*, 71 F.5th at 1187. This is paraphrasing a point from *Abbasi*: if there is an alternative remedial structure in place for the current plaintiff that was not in place for the category of plaintiff in the original three *Bivens* contexts, it could indicate a new context. But the grievance procedure at issue in the *prison* context, as explained above, *was* in place at the time of *Carlson*. Holding that *Harper* conflicts with recognizing a *Carlson* remedy would mean that the very same Supreme Court opinions that insisted that *Carlson* remained good law *sub silentio* overruled them.

## IV. The Panel Opinion Did Not Create a Circuit Split.

Whether *Carlson* remains good law is indeed subject to a circuit split. The panel opinion, however, neither created it nor deepened it.

As Defendant correctly notes, both the Tenth Circuit and the Eleventh Circuit have held that the existence of the ARP creates a new context and therefore precludes a *Bivens* remedy. *Johnson v. Terry*, 119 F.4th 840, 858 (11th Cir. 2024); *Rowland v. Matevousian*, 121 F.4th 1237, 1242 (10th Cir. 2024). And both opinions make the subtext of their holdings explicit: *Carlson*, and *Bivens* itself, are no longer good law. *Rowland*, 121 F.4th at 1242 ("[T]he right answer to whether to recognize a *Bivens* cause of action will always be no." (cleaned up)); *Johnson*, 119 F.4th at 849 (endorsing the view that no one will ever be able to successfully bring a *Bivens* claim).

A majority of circuits to address whether *Carlson* remains good law, however, have held that it is. Most importantly, *this* Court has. In *Stanard v. Dy*, this Court held that no meaningful difference existed between a prisoner's claim regarding the failure to treat his hepatitis C and *Carlson*. 88 F.4th 811, 817 (9th Cir. 2023). "Because [the plaintiff's] Eighth Amendment claims arise within an existing context, [the court] need not proceed to the special factors inquiry." *Id.* This holding is incompatible with Defendant's conclusion that the existence of the ARP ends *Carlson* claims.

The Fifth Circuit made the same holding in *Vaughn v. Bassett*. No. 22-10962, 2024 WL 2891897, at *3 (5th Cir. June 10, 2024). The court analyzed the factual differences between the plaintiff's allegations and those in *Carlson* and then asked whether those differences were "meaningful." *Id.* The court held that it was bound to conclude that they were not, based on post-*Abbasi* authority. *Id.*

Other circuits agree. *See, e.g.*, *Hampton v. Jones*, No. 21-2880, 2022 WL 4820355, at *3 (3d Cir. Oct. 3, 2022) (relying on *Carlson* as a recognized Bivens cause of action and proceeding to the merits of the Eighth Amendment claim); *Masias v. Hodges*, No. 21-6591, 2023 WL 2610230, at *1 (4th Cir. Mar. 23, 2023) (reversing a district court that "reasoned that Masias' claims presented a new context from *Carlson*"); *Patton v. Blackburn*, No. 21-5995, 2023 WL 7183139, at *3–4 (6th Cir. May 2, 2023) ("As noted above, the Supreme Court has recognized a *Bivens* action for an Eighth Amendment claim based on the failure to provide adequate medical care."); *Bernier v. Allen*, 38 F.4th 1145, 1150 (D.C. Cir. 2022) (citing to *Carlson* as "recognizing availability of *Bivens* claims for Eighth Amendment violations where prison officials fail to provide adequate medical treatment"). Despite Defendant's repeated insistence that the Panel Opinion "created" a circuit split, the split preexisted the Panel Opinion; and, in *Stanard*, this Court had already picked its side.

## V. The Panel Opinion Correctly Held that the Severity of a Medical Deliberate Indifference Claim Does Not Create a Meaningful Difference Under *Abbasi*.

Defendant argues that "differences in the mistreatment's and injury's severity" makes Watanabe's claim meaningfully different from *Carlson*. Pet. 14. The Panel rightly concluded that relying on the severity of the claim in the *Bivens* inquiry "requires making an impermissible determination on the merits by weighing the evidence." Panel Op. 18. The Panel discussed this Court's precedent in *Chambers v. C. Herrera*, 78 F.4th 1100 (9th Cir. 2023) and *Stanard* as establishing that the severity of the deficiency of care is not a

meaningful difference. *See id.* at 16–17. Defendant attempts to differentiate *Stanard* using her own conception of the scale of injuries, calling the difference "between *Stanard* and *Carlson* . . . slight" and that between *Watanabe* and *Carlson* "*relatively greater.*" Pet. 17 (emphasis in original).

However, no matter the level of difference in deficiency of care, "the underlying harm was still a 'failure to provide medical attention evidencing deliberate indifference to serious medical needs.'" Panel Op. 16 (quoting *Stanard*, 88 F.4th at 817). The Supreme Court in *Egbert* described the *Carlson* context as "failure to provide proper medical attention." 596 U.S. at 509. In *Abbasi* and *Hernandez,* the Court described it as the "failure to provide adequate medical treatment." *Abbasi*, 582 U.S. at 131, 139; *Hernandez v. Mesa*, 589 U.S. 93, 99, 103 (2020). Defendants do not explain why one serious failure to provide medical care and an even greater one implicate different separation-of-powers concerns, which drives the *Bivens* inquiry. To the contrary, as this Court made clear in *Stanard*, *see* 88 F.4th at 817 & n.3, the severity of the deficiency goes to the merits of the Eighth Amendment inquiry, not to the question of the *Bivens* cause of action.

Defendant points out that the Tenth and Eleventh Circuits rely on the severity of injury in making their new context determination. *See* Pet. 12. As stated above, the Tenth and Eleventh Circuit decisions are a poor path to follow; they flout Supreme Court precedent and explicitly state that courts should no longer recognize a *Bivens* cause of action. *See Rowland*, 121 F.4th at 1242; *Johnson*, 119 F.4th at 849. Additionally,

while the Tenth Circuit made factual comparisons, it did not declare that the severity of the alleged injury was a meaningful difference, but rather held on the merits that the plaintiff received adequate care. *See Rowland*, 121 F.5th at 1243 ("[T]he prison officials did not act contrary to the doctor's recommendations for treating Mr. Rowland's hernia . . . ."). Only the Eleventh Circuit decision in *Johnson*, then, makes the broad claim that "[t]he severity, type, and treatment of Johnson's injuries differ significantly," specifying that the plaintiff "suffered severe but ultimately non-lethal physical injuries to his body that were eventually treated by the defendants." 119 F.4th at 859. This case is not analogous, as Mr. Watanabe never received surgery for his fractured coccyx, nor had he "received treatment from a specialist" by the time of oral argument. Panel Op. 7, 17, 20.

Moreover, the Tenth and Eleventh Circuit decisions contradicted *Stanard* without mentioning the case, even though *Stanard* was decided first. And those decisions ignored the majority of circuits that have reached the merits on *Bivens* cases even when the severity differed from the facts in *Carlson*. *See Cross v. Buschman*, No. 22-3194, 2024 WL 3292756, at *1–2 (3d Cir. July 3, 2024) (holding *Bivens* remedy available where plaintiff sued prison doctor who failed to treat diabetes); *Carlucci v. Chapa*, 884 F.3d 534, 538–39 (5th Cir. 2018) (holding a *Bivens* cause of action existed where federal officials denied dental care); *Vaughn v. Bassett*, No. 22-10962, 2024 WL 2891897, at *1–3 (5th Cir. June 10, 2024) (holding that delayed care for facial fractures could proceed under *Bivens* step one); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023) (assessing the

14

merits of a *Bivens* claim alleging deliberate indifference to plaintiff's small bowel obstruction and abdominal infection). This Court therefore did not create a circuit split or deepen it by correctly upholding *Carlson*, the *Abbasi* factors, and the overall *Bivens* inquiry as good law.

Finally, Defendant errs in comparing this case to *Marquez v. Rodriguez*, 81 F.4th 1027 (9th Cir. 2023). In *Marquez*, in assessing a failure-to-protect claim, this Court in dicta noted a presumed difference in the obviousness of a risk facing a transgender woman and a sex offender. 81 F.4th at 1032. This Court's discussion of the failure-to-protect claim in *Marquez* is irrelevant to comparing the severity of injury underlying a medical deliberate indifference claim. Moreover, Defendant wrongly states that Watanabe's "case concerns care in a jail . . . rather than a prison." Pet. 15. Its citation to *Marquez* notes the difference in constitutional status between pretrial detainees and convicted prisoners—but Watanabe was a convicted prisoner. Also, FDC Honolulu houses convicted prisoners serving significant federal prison sentences as well as pretrial detainees.[3] Defendant's confusion and the absence of relevant record evidence demonstrates the perils in addressing arguments for the first time at the petition for rehearing stage.

## CONCLUSION

This Court should deny Defendant's Petition.

---

[3] *See* Nelson Daranciang, New Jailhouse Ready for First Inmates, Honolulu Star Bulletin (June 13, 2001),
https://archives.starbulletin.com/2001/06/13/news/story9.html

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: January 10, 2025

*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Plaintiff-Appellant Kekai Watanabe

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s):** No. 23-15605

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition

for rehearing en banc/response to petition is *(select one)*:

[x] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,064**.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature**        /s/ Samuel Weiss        **Date**        1/10/2025
*(use "*s/[typed name]*" to sign electronically-filed documents)*